# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# CHICAGO DISTRICT

| | |
|---|---|
| DOMINIC GWINN,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, and DAVID O'NEAL BROWN,<br><br>       Defendants. | **CASE NO.:  1:23-cv-01823** |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS CITY OF CHICAGO AND DAVID O'NEAL BROWN

EVAN A. ANDERSEN
GA Bar Number: 377422 (admitted *pro hac vice*)
Evan.andersen@sriplaw.com

**SRIPLAW, P.A.**
3355 Lenox Road NE
Suite 750
Atlanta, GA 30326
470.598.0800 – Telephone
561.404.4353 – Facsimile

and

JOEL B. ROTHMAN
Georgia Bar Number: 979716
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21310 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Dominic Gwinn*

**TABLE OF CONTENTS**

I. FACTUAL HISTORY ................................................................................................ 1

II. ARGUMENT .............................................................................................................. 3

    A. **Gwinn is entitled to summary judgment on Claim I: Direct Copyright Infringement against both Defendant City of Chicago and Defendant David O'Neal Brown.** ................................................................................................................ 4

        i. Burden of Proof and elements of copyright infringement. ............................. 4

        ii. The undisputed facts show that Gwinn is the copyright owner of the valid Work. ........ 5

        iii. The undisputed facts show that Defendant City copied the Work without authorization. ................................................................................................ 7

        iv. The undisputed facts show that Defendant Brown copied the Work without authorization. ................................................................................................ 8

    B. **Gwinn is entitled to Summary Judgment on Claim II of the Complaint: Violations of 17 U.S.C. § 1202(b).** ....................................................................... 9

        i. Burden of Proof and Elements of Vicarious Liability ................................... 9

        ii. The undisputed facts show that Defendant City knowingly removed Gwinn's CMI without authorization. ........................................................................... 10

        iii. The undisputed facts show that Defendant City knew that removal of CMI would induce, enable, facilitate, or conceal infringement. ............................ 12

        iv. The undisputed facts show that Defendant City distributed copies of the Work knowing that the CMI had been removed. ............................................ 13

III. CONCLUSION ....................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................... 3, 4

*Bell v. Merchs. Bank of Ind.*,
   456 F. Supp. 3d 1046 (S.D. Ind. 2020) ............................................................... 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................................... 4

*City Slicks, Inc. v. Sheen*,
   77 F.3d 1280 (10th Cir. 1996) ............................................................................ 7

*Columbia Pictures Indus. v. Landa*,
   974 F. Supp. 1 (C.D. Ill. 1997) ................................................................... 4, 5, 7

*Columbia Pictures Industries, Inc. v. Zakarian*,
   1991 U.S. Dist. LEXIS 6975*7 (N.D. Ill. 1991) (N.D. Ill. 1991) ........................... 7

*Design Basics, LLC v. Lexington Homes, Inc.*,
   858 F.3d 1093 (7th Cir. 2017) ........................................................................... 5

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
   499 U.S. 340 (1991) ........................................................................................... 5

*Kuryakyn Holdings, LLC v. Ciro*,
   LLC, 242 F. Supp. 3d 789 (W.D. Wis. 2017) .................................................. 5-6

*Mango v. BuzzFeed, Inc.*,
   356 F. Supp. 3d 368 (S.D.N.Y. 2019) ..................................................... 12-13, 13

*Mid Am. Title Co. v. Kirk*,
   59 F.3d 719 (7th Cir. 1995) ............................................................................... 5

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) ............................................................................. 10

*NUCAP Indus., Inc. v. Robert Bosch LLC*,
   No. 15 C 02207, 2020 U.S. Dist. LEXIS 268984 (N.D. Ill. Aug. 23, 2020) ........ 10

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
   975 F. Supp. 2d 920 (N.D. Ill. 2013) ............................................................... 10

*Reeves v. Sanderson Plumbing Prods.*,
   Inc., 530 U.S. 133 (2000) ................................................................................... 4

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
   18 F.3d 502 (7th Cir. 1994) ............................................................................... 5

**Statutes**

17 U.S.C. § 102 ........................................................................................................ 6

17 U.S.C. § 106 .................................................................................................................. 5, 7, 8

17 U.S.C. § 410 ....................................................................................................................... 5

17 U.S.C. § 501 ....................................................................................................................... 7

17 U.S.C. § 504 ....................................................................................................................... 5

17 U.S.C. § 1202 ................................................................................................................... 10

17 U.S.C. § 1203 ................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................... 3

COMES NOW Plaintiff Dominic Gwinn, by and through his undersigned counsel, and files this Brief in Support of his Motion for Summary Judgment. Plaintiff Gwinn is entitled to summary judgment on his claims of direct copyright infringement by Defendant City of Chicago, direct copyright infringement by Defendant David O'Neal Brown, and violations of the Digital Millennium Copyright Act by Defendant City of Chicago. Plaintiff Gwinn's grounds for such relief are set forth in his Motion and the reasons described in this accompanying brief.

I.     **FACTUAL HISTORY**

Plaintiff Dominic Gwinn ("Gwinn") is a freelance photojournalist who has been working in the news industry for over a decade. His works appears in news outlets all over the world, including but not limited to the Associated Press, National Public Radio, the Washington Post, the Wall Street Journal, USA Today, and Germany's state-owned news service, Deutsche Welle. [DE 1] the "Complaint," at ¶ 2. Defendant City of Chicago ("Defendant City") is a municipality organized and operating under the statutes of the State of Illinois. Complaint, ¶ 4. It is authorized to operate the Chicago Police Department ("CPD"), which acts as City's agent for municipal law enforcement, and for which City is ultimately responsible. *Id*. Defendant David O'Neal Brown ("Defendant Brown"), at the times relevant to this matter, was the Superintendent of the CPD. At all times relevant to this matter, Brown was employed by CPD, for which he promulgated rules, regulations, policies, and procedures at CPD. Brown was responsible for managing all operations at CPD.

In July 2020, when historic protests were common across the United States and tensions between police officers and the public demonstrators were high, Plaintiff Gwinn explored the streets of Chicago to capture photographs and video clips of the demonstrations and the events

occurring on the streets of the city. This sometimes resulted in Gwinn finding himself in the middle of altercations between law enforcement and protestors on the streets. One such altercation occurred at Grant Park on July 17, 2020, when Gwinn captured audiovisual file "VID_20200717_192612" (the "Work") showing Chicago Police Department officers surrounded at the Columbus statute and being bombarded by bottles and other items thrown at them by the protesting crowd. [Statement of Material Facts, filed herewith ("SMF") 1].

Gwinn owns and operates an account on the social media site currently located at https://twitter.com ("Twitter") with the username @DominicGwinn. [SMF 2]. Gwinn uploaded the Work to his account on Twitter on July 17, 2020. *Id*. Gwinn's reproduction and display on his Twitter Page included an attribution to him in the form of his name and username directly adjacent to the Work. *Id*. Gwinn registered the Work with the Register of Copyrights on September 10, 2020, and was assigned the registration number PA 2-255-761. [SMF 3].

Sometime between July 17, 2020, and July 20, 2020, Defendant City accessed a copy of the Work from an Twitter.com and downloaded a copy of it. [SMF 4]. Then, sometime between July 17, 2020, and July 20, 2020, Defendant City added the Work to a new compilation video with other audiovisual footage of the July 17, 2020, events at Grant Park, Chicago (the "CPD Video"). [SMF 5]. The CPD Video did not include any attribution to Gwinn, but included a CPD logo at the beginning and end of the video. [SMF 6].

On July 20, 2020, Defendant Brown and Defendant City held a press conference to describe the violence against Chicago Police Department officers during the protests and demonstrations occurring in Chicago. [SMF 7]. At this press conference, Defendants displayed the CPD Video for the press. *Id*. After the press conference, Defendant City uploaded the CPD Video, which included the Work, onto its public account on the website at

2

https://www.youtube.com ("YouTube"). [SMF 8]. Defendant City also distributed the CPD Video to a large number of public entities and individuals through a series of email distribution lists, sending them a link through which the CPD Video could be directly downloaded. [SMF 9]. The same day, an edited version of the CPD Video was uploaded to Defendant Brown's personal Twitter account. [SMF 10][1].

Defendant City has never been authorized or licensed to reproduce, display, distribute, or make derivative works of the Work for any purpose. [SMF 11]. Defendant Brown has never been authorized or licensed to reproduce, display, distribute, or make derivative works of the Work for any purpose. [SMF 12]. In fact, neither Defendant ever contacted Gwinn regarding the Work or otherwise communicated with him directly. [SMF 13].

Defendant City is a large organization that employs hundreds of people and consists of multiple departments, including but not limited to a legal department and a media relations department. [SMF 14-15]. Defendant City understands that the purpose of an attribution on a copyrighted work is to connect a copyrighted work to its source. [SMF 16]. Despite this knowledge, Defendant City could not identify any display of the Work on Twitter that did not include Gwinn's name next to the Work, yet downloaded it anyways. [SMF 17].

II.     ARGUMENT

A court must grant summary judgment if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual issue is material if resolving the

---

[1] The edited version of the CPD Video is still publicly displayed as of the date of this filing at https://twitter.com/ChiefDavidBrown/status/1285263026304675840.

factual issue might change the suit's outcome under the governing law. *Id*. A motion for summary judgment, therefore, should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. *Id*. at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It is not necessary that the non-movant positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. *Id*. at 324-26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"Although summary judgment is ordinarily disfavored in copyright infringement cases, when the evidence is so overwhelming that a court would be justified in ordering a directed verdict at trial, it is proper to grant summary judgment." *Columbia Pictures Indus. v. Landa*, 974 F. Supp. 1, 7 (C.D. Ill. 1997) (citations omitted).

**A.** **Gwinn is entitled to summary judgment on Claim I: Direct Copyright Infringement against both Defendant City of Chicago and Defendant David O'Neal Brown.**

i. <u>Burden of Proof and Elements of Copyright Infringement</u>.

A copyright owner has certain exclusive rights in its works. These rights include the right to reproduce the copyrighted work, the right to prepare derivative works, the right to distribute

4

copies of the work to the public, and the right to display the work. *Id.*, citing 17 U.S.C. §§ 106. To prevail on a claim for direct copyright infringement, a plaintiff must establish two elements: (1) that he owns a valid copyright and (2) that the defendant copied, distributed, reproduced, and/or performed protected elements of that work. *Id.*, citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994), and *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991). Direct infringement does not require intent or any particular state of mind, although willfulness is relevant to the award of statutory damages. *Bell v. Merchs. Bank of Ind.*, 456 F. Supp. 3d 1046, 1051 (S.D. Ind. 2020) ("liability for copyright infringement exists even when the defendant was not aware and had no reason to believe that his or her acts constituted an infringement of copyright") citing 17 U.S.C. § 504(c)(2) and *Design Basics, LLC v. Lexington Homes, Inc.,* 858 F.3d 1093, 1099 (7th Cir. 2017) (ownership and copying, not knowledge or intent, are the elements of an infringement claim).

    ii.    <u>The Undisputed Facts Show That Gwinn is the Copyright Owner of the Valid Work.</u>

The Copyright Act provides that the existence of a valid Certificate of Registration issued by the U.S. Copyright Office "shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Gwinn registered the Work with the Copyright Office and was issued Certificate of Registration No. PA 2-255-761 (the "Certificate") [SMF 3]. Gwinn attached a copy of the Certificate to his Complaint as Exhibit 1. [DE 1-1]. The Certificate identifies Dominic Gwinn as the author and copyright claimant of the Work. *Id*. With this Certificate, Gwinn established *prima facie* evidence that he is the copyright owner of the Work. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (holding that certificate of copyright registration provides a rebuttable presumption of ownership of a valid copyright); *see also Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 802

5

(W.D. Wis. 2017). The burden now shifts to Defendants to present competent evidence beyond the pleadings to show that there is a genuine issue for trial regarding Gwinn's ownership. Defendants cannot meet this burden.

Gwinn asserts in the Complaint that "[a]t all relevant times Gwinn was the owner of the copyrighted Work at issue in this case," Complaint at ¶ 21, to which Defendants responded that they lacked sufficient knowledge or information to admit or deny [DE 13], the "Answer," at ¶ 21. This is the extent of the evidentiary record that Defendants produced during the discovery period related to Gwinn's ownership of the Work. Defendants produced no documents which suggest that Gwinn is not the copyright owner of the Work, and Defendants chose not to take Gwinn's deposition to ask him any questions about his ownership. Defendants cannot and will not present any evidence to rebut Gwinn's *prima facie* evidence of ownership.

Nor will Defendants be able to rebut the presumption that the Work is copyrightable material. Under the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "Works of authorship include," inter alia, "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6).

The Certificate is *prima* facie evidence of the validity and protectability of the Work. [DE 1-1]. Gwinn further states in the Complaint that the Work is "subject matter protectable under the Copyright Act." Complaint at ¶ 20. Defendants responded in their Answer that they lacked sufficient information to admit or deny. Answer at ¶ 20. This is the extent of the evidentiary record that Defendants produced during the discovery period related to the copyrightability of the Work. Defendants produced no documents which suggest that the Work

6

does not qualify for copyright protection, and Defendants chose not to take Gwinn's deposition to ask him any questions about the Work. Defendants cannot and will not present any evidence to rebut Gwinn's *prima facie* evidence of validity of the Work.

There is no evidence in this record – and Defendants cannot adduce any – to suggest, show, or prove that Gwinn is not the owner of valid copyrights in the Work. Accordingly, as Gwinn's assertions and evidence in the Complaint are undisputed, Gwinn is entitled to summary judgment on the issues of ownership and validity of the Work.

    iii.    <u>The Undisputed Facts Show That Defendant City Copied the Work Without Authorization</u>.

"Section 501(a) of the Copyright Act provides that anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 … is an infringer of the copyright. *Columbia Pictures*, 974 F. Supp. at 7 (*citing Columbia Pictures Industries, Inc. v. Zakarian*, 1991 U.S. Dist. LEXIS 6975, *7 (N.D. Ill. 1991) and 17 U.S.C. § 501(a)). *See also Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 n.2 (10th Cir. 1996) (noting that "'copying' is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright"). In other words, a violation of any of the enumerated exclusive rights in 17 U.S.C. 106 constitutes infringement, subjecting the infringer to liability.

Such is the case here, where Defendant City accessed, reproduced, displayed, and distributed the Work without authorization from Gwinn or the law to do so. Specifically, Defendant City expressly admitted without objection that it accessed the Work from Twitter [SMF 4], included the Work as part of a compilation video it created (the CPD Video) [SMF 5], and displayed that compilation video publicly at a press conference [SMF 7]. Finally, Defendant

7

City distributed the CPD Video to hundreds of individuals and entities for those entities to further reproduce, display, and distribute the Work. [SMF 9].

Defendant City repeatedly admitted that a copy of the Work was included in the CPD Video [SMF 5]. Defendants produced evidence showing the CPD Video actively and widely distributed to the public. [SMF 9, 18]. Defendant City cannot and will not be able to produce any evidence that the Work was not copied, displayed, or distributed. Gwinn's factual assertions and evidence are undisputed. Gwinn is entitled to summary judgment on the issue of whether City copied, displayed, and distributed the Work.

      iv.    <u>The Undisputed Facts Show That Defendant Brown Copied the Work Without Authorization</u>.

Defendant Brown displayed the Work without authorization from Gwinn or the law to do so. Specifically, Defendants both testified that Defendant Brown owns a personal account on twitter.com. [SMF 10]. Defendant Brown testified that his personal Twitter account was created prior to his time working with the City of Chicago, was actively used during his time at the City of Chicago, and that he retained ownership and access to it after his time working with the City of Chicago. *Id.*

Gwinn produced evidence of the Work displayed by Defendant Brown on his personal Twitter page. *Id*. Defendant Brown testified that a copy of the Work was included in the CPD Video. [SMF 5]. Brown testified that a version of the CPD Video was displayed on his Twitter page. Brown cannot and will not be able to produce any evidence that the Work was not copied, displayed, or distributed on his personal Twitter account, and Gwinn's factual assertions and evidence are undisputed. Gwinn is entitled to summary judgment on the issue of whether Defendant Brown displayed the Work.

Neither of the Defendants had authorization from Gwinn to copy, distribute, or display the Work for any purpose. [SMF 11-12]. Defendants expressly admitted that they did not have a license from Gwinn to display, distribute, reproduce, or edit the Work. [SMF 11-12]. Defendants never contacted Gwinn to seek a license for its use of the Work. [SMF 13]. Defendants never attributed Gwinn in any of their uses of the Work. [SMF 6].

Defendants produced no documents or other evidence suggesting Gwinn granted a license to either of the Defendants, either expressly or impliedly. Neither Defendant chose to depose Gwinn to ask any questions about a license for the Work. Defendants cannot and will not present any evidence to show that either had an express or implied license to copy, display, distribute, or edit the Work for any purpose or in any manner. No such evidence exists, as Gwinn never granted either of the Defendants any such license. Accordingly, Gwinn is entitled to summary judgment on the issue of whether either of the Defendants had authorization to copy, edit, display, or distribute the Work.

The evidence in the record, along with the Defendants' admissions, establishes that the Defendants copied, displayed, and distributed the Work without authorization to do so. There is no evidence in this record – and Defendants cannot adduce any – to suggest, show, or prove otherwise. Accordingly, Gwinn is entitled to summary judgment on the issue that Defendants each infringed his exclusive rights in the Work and are liable for direct copyright infringement.

**B. Gwinn is entitled to Summary Judgment on Claim II of the Complaint: Violations of 17 U.S.C. § 1202(b).**

    i.    <u>Burden of Proof and Elements of Vicarious Liability</u>

"The [Digital Millennium Copyright Act ("DMCA")] seeks to hamper copyright infringement in the digital age by protecting 'copyright management information' (CMI) in various ways. CMI, in turn, is defined as the information about the copyright that is 'conveyed in

9

connection with copies' of the work, including the title of the work, the author of the work, the name of the copyright owner, and identifying numbers or symbols referring to copyright information. Specifically, the DMCA forbids distributing false CMI, removing or altering CMI, or distributing works knowing the CMI has been removed or altered. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928 (N.D. Ill. 2013) (*citing* 17 U.S.C. § 1202).

To prove a claim under Section 1202(b)(1), Gwinn must show that Defendant City "(1) intentionally removed or altered copyright-management information (CMI) and (2) knew or had reasonable grounds to know that it would induce, enable, facilitate, or conceal copyright infringement." *NUCAP Indus., Inc. v. Robert Bosch LLC*, No. 15 C 02207, 2020 U.S. Dist. LEXIS 268984, at *15 (N.D. Ill. Aug. 23, 2020), citing 17 U.S.C. § 1202(b). Under Section 1202(b)(3), rather than showing that the defendant removed the CMI, the Plaintiff must show that the Defendant distributed copies of works knowing that copyright management information had been removed or altered without authority of the copyright owner or the law, and knowing or having reasonable grounds to know, that such distribution would induce, enable, facilitate, or conceal an infringement. 17 U.S.C. § 1202(b)(3).

    ii.   <u>The Undisputed Facts Show That Defendant City Knowingly Removed Gwinn's CMI Without Authorization</u>.

When Gwinn posted his Work on his Twitter page, it was displayed directly next to his name. [SMF 2]. Gwinn's name, conveyed next to the Work as displayed online, constitutes CMI. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (holding that a copyright owner's name appearing near the image qualified as CMI under Section 1202), and *Agence France Presse v. Morel*, 2010 U.S. Dist. LEXIS 139103, at *26 (S.D.N.Y. Dec. 23, 2010) (finding username on Twitter to constitute CMI under Section 1202).

10

The Defendants admitted that they accessed the Work through Twitter. [SMF 4]. But Neither Defendant provided any evidence that the Work appeared anywhere on Twitter without Gwinn's name directly to the Work. [SMF 17]. Instead, the Defendants pointed to an unsupported assertion that the Work was available "all over Twitter," pointing to the number of times that the Work had been re-tweeted from Gwinn's account. [SMF 2]. Re-tweeting or re-posting a post on Twitter maintains the username of the account of the original post[2], so Defendants failed to provide any evidence of the Work available without Gwwinn's name next to it.

Next, it is undisputed that all of the uses of the Work by Defendants failed to include any attribution to Gwinn whatsoever. Defendant City expressly admitted that the CPD Video shown at the press conference did not include an attribution to Gwinn [SMF 6]. Defendants failed to provide any evidence of a display or reproduction of the Work that did include an attribution to Gwinn. Defendant City knew and understood the importance of an attribution [SMF 16]. Defendant City testified that it had attributed third parties for use of materials in videos previously. *Id*. Accordingly, the record is clear that Defendant City knew what it was doing in leaving the attribution off of the Work in the CPD Video, and chose to present it that way. Rather than Gwinn's attribution, Defendant City added its own attribution logo to the CPD Video. [SMF 6]. Defendant City intentionally removed Gwinn's attribution from the Work, instead placing their own logo immediately after the Work in the CPD Video so that third-parties

---

[2] *See* https://help.twitter.com/en/using-x/repost-faqs, "Reposts look like normal posts **with the author's name and username next to it**, but are distinguished by the Repost icon and the name of the person who reposted the post" (emphasis added). *See also* https://web.archive.org/web/20200720025825/https://help.twitter.com/en/using-twitter/retweet-faqs, an archived version of the Twitter page from July 20, 2020 showing the same language ("Retweets look like normal Tweets **with the author's name and username next to it**") (emphasis added).

11

understood that the CPD Video came from the City of Chicago. *Id*. Defendant City made the intentional choice to cite to the City of Chicago, rather than Gwinn, despite knowing that he was the copyright owner.

The evidence in this matter establishes without dispute that Gwinn's name appeared next to the Work on Twitter, where Defendant City accessed it. The evidence in this matter further establishes without dispute that Defendants failed to maintain that attribution to Gwinn with their display and distributions of the Work as part of the CPD Video. Finally, the evidence establishes without dispute that Defendant's removal of Gwinn's name was intentional. Defendants failed to provide any evidence to dispute any of these factual assertions, and so cannot and will not present any evidence to show that they either obtained the Work through an unattributed source. Defendants cannot and will not present any evidence to show that they maintained Gwinn's attribution with their uses of the Work. Accordingly, Gwinn is entitled to summary judgment on the issue of whether Defendants knowingly removed Gwinn's CMI without authorization.

    iii.    <u>The undisputed facts show that Defendant City knew that removal of CMI would induce, enable, facilitate, or conceal infringement.</u>

Defendant City is not a small group of a few employees that may or may not have understood the result of removing Gwinn's attribution. Instead, Defendant City is a large organization consisting of hundreds of employees and many separate departments. [SMF 14-15]. In fact, Defendant City has both a separate legal department and a separate media relations department with which any of the CPD officer could consult. *Id*. Both legal and media teams can be expected to understand copyright law, licensing, and attributions, especially considering they deal with media on a regular basis. A party's training can provide evidence that they should have known about what happens with the removal of CMI. *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) ("Hayes testified that he understood from his training and

experience that he was required to get permission to use photographs. Therefore, he should have reasonably known that altering the gutter credit to include a false attribution to Fisher's law firm would have wrongfully implied that BuzzFeed had permission to use the Photograph, thus concealing its infringement"). As stated above, Defendant City understood what the purpose of an attributions was, and had employees with legal training in intellectual property matters. [SMF 16]. Defendant City testified that it knew that an attribution would be important for letting people know the source of the attributed work. *Id*. Despite this knowledge, Defendant City failed to attribute Gwinn and instead chose to add its own attribution to the Work and the CPD Video. [SMF 6].

The evidence in this matter establishes without dispute that Defendant City understood or had reason to understand that removal of Gwinn's CMI would induce, enable, facilitate, or conceal an infringement. Defendants failed to provide any evidence to dispute this. Accordingly, Gwinn is entitled to summary judgment on the issue of whether Defendants knew or had reason to know that removal of CMI would induce, enable, facilitate, or conceal infringement.

    iv.    <u>The Undisputed Facts Show That Defendant City Distributed Copies of The Work Knowing That the CMI Had Been Removed.</u>

As stated *supra*, section B(ii), Defendant City knew that it removed Gwinn's CMI in the CPD Video. It also produced direct evidence that it distributed the CPD Video after knowing that it had removed Gwinn's CMI to a long list of third-party entities and individuals. [SMF 9]. The distribution happened in two ways, by publication on Defendant City's social media accounts [SMF 8, 10], and through an email distribution list where the recipients were pointed to a link to download the CPD Video directly [SMF 9].

The evidence in this matter establishes without dispute that Defendant City distributed the CPD Video containing Gwinn's unattributed Work, knowing that the attribution had been

13

removed. Defendants failed to provide any evidence to dispute any of these factual assertions, and so cannot and will not present any evidence to show that they never distributed the Work to third parties knowing that the attribution had been removed. Accordingly, Gwinn is entitled to summary judgment on the issue of whether Defendants distributed the Work knowing that its CMI had been removed.

The undisputed evidence in this matter establishes that Defendant City intentionally removed or altered Gwinn's copyright-management information from the Work. It further shows that Defendant City removed the CMI knowingly, and that it then distributed the Work to third parties. Accordingly, Gwinn is entitled to summary judgment on the issue that Defendant City violated Sections 1202(b)(1) and 1202(b)(3) of the Digital Millennium Copyright Act, and is liable for the damages stated in 17 U.S.C. 1203.

### III. CONCLUSION

For all of the foregoing reasons and on the basis of the undisputed material facts set forth in Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on his claims of direct copyright infringement against Defendant City and against Defendant Brown, as well as on his claims of violation of Section 1202(b) against Defendant City.

DATED: April 24, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/Evan A. Andersen*
　　　　　　　　　　　　　　　　　　　EVAN A. ANDERSEN
　　　　　　　　　　　　　　　　　　　GA Bar Number: 377422 (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Evan.andersen@sriplaw.com

　　　　　　　　　　　　　　　　　　　**SRIPLAW, P.A.**
　　　　　　　　　　　　　　　　　　　3355 Lenox Road NE
　　　　　　　　　　　　　　　　　　　Suite 750
　　　　　　　　　　　　　　　　　　　Atlanta, GA 30326

470.598.0800 – Telephone
561.404.4353 – Facsimile

JOEL B. ROTHMAN
Georgia Bar Number: 979716
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21310 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

Yanling Jiang
Yi Bu
**JiangIP LLC**
33 West Jackson Boulevard, Ste 200
Chicago, IL 60604
630-733-9483
Email: yanling@jiangip.com
Email: ybu@jiangip.com

*Counsel for Plaintiff Dominic Gwinn*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing *Plaintiff's Rule 56.1(a)(2) Statement Of Material Facts In Support Of His Motion For Summary Judgment* upon the following counsel of record by means of the Court's electronic case filing system:

>Joseph F. Schmidt
>Sophie E. Honeyman
>**TAFT STETTINIUS & HOLLISTER LLP**
>111 E. Wacker Dr., Ste. 2600
>Chicago, Illinois 606061
>(312) 527-4000
>jschmidt@taftlaw.com
>shoneyman@taftlaw.com

Dated: April 24, 2024                          Respectfully submitted,

                                               */s/ Evan A. Andersen*
                                               EVAN A. ANDERSEN

16