IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC GWINN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-1823 |
| | ) | |
| v. | ) | Hon. Jeremy C. Daniel |
| | ) | |
| CITY OF CHICAGO *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S NOTICE OF ELECTION OF STATUTORY DAMAGES**

Joseph F. Schmidt (ARDC # 2492180)
Sophie E. Honeyman (ARDC # 6343417)
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 606061
(312) 527-4000
jschmidt@taftlaw.com
shoneyman@taftlaw.com

*Counsel for Defendants City of Chicago and David O'Neal Brown*

Defendants City of Chicago (the "City") and David O'Neal Brown ("Brown"), by and through their undersigned counsel at Taft Stettinius & Hollister LLP, dispute they are liable on Plaintiff's claims and reserve all rights on appeal. Nonetheless, without waiving such rights, and pursuant to the Court's March 31, 2025 Order (Dkt. 55), Defendants respond to Plaintiff's Notice of Election of Statutory Damages (Dkt. 56) as follows:

### A. Maximum Statutory Damages Are Not Appropriate on Count I.

The Copyright Act authorizes statutory damages, in the Court's broad discretion, ranging from $750 to $30,000 "with respect to any one work." 17 U.S.C. § 504(c)(1). The Court may increase the award up to $150,000 if the plaintiff proves the infringement was willful, and may decrease the award to $200 if the defendant proves its infringement was innocent. *Id.* § 504(c)(2). Notably, the statutory maximum of $150,000 for willful infringement is typically "reserved for the most egregious forms of infringement." *Energizer Brands, LLC v. Camelion Battery Co. Ltd.*, 2017 WL 6813689, at *2 (N.D. Ill. Oct. 10, 2017); *Reilly v. Commerce,* 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016).

Here, Plaintiff cannot establish that Defendants' infringement was willful or reckless such to justify the maximum award of $150,000. First and foremost, the Court's Order did not find that Defendants' infringement was willful or reckless, let alone egregious. Instead, the Court underscored that Defendants' "use of the Work was non-commercial, and there is no evidence to suggest the defendants were not acting in good faith at the June 20 press conference." (Dkt. 55 at 8). These findings negate any suggestion that Defendants acted willfully or with reckless disregard. Moreover, Plaintiff has not cited any evidence to support such a finding. Plaintiff merely states that Defendants obtained the Work and used it without Plaintiff's authorization. (Dkt. 56 at 2). This is not enough. If this was the standard, then all infringements would be willful. In reality, Plaintiff admitted that the Work did not contain a copyright notice, title, watermark, or author name within the framing of the Work as uploaded to Twitter, (Dkt. 33 ¶¶ 6-7), illustrating how it was not obvious that Plaintiff's Tweet constituted copyrighted material and, therefore, Defendants' infringement was neither willful nor

1

reckless. *See Martin v. City of Indianapolis*, 4 F. Supp. 2d 808, 811 (S.D. Ind. 1998). As such, deterrence is not an issue that should factor into the damages calculation here. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229-30 (7th Cir. 1991). Defendants' use was not willful or reckless, and the City's purported budget is not justification alone to impose the maximum award, despite Plaintiff's contentions otherwise.

This is not the type of case where, for example, Plaintiff asked Defendants to cease their activities and Defendants continued to infringe and profit from Plaintiff's copyright. *See, e.g.*, *Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 712 (N.D. Ill. 2014). Rather, Defendants did not profit from using the Work and genuinely believed they were entitled to use the Work in the Compilation pursuant to the news reporting prong of the fair use defense, especially since the Compilation was shown by the police department "in the interest of public safety." *See* (Dkt. 32 at 11). Plaintiff has even conceded that Defendants removed the Work from the City's YouTube page as soon as Plaintiff contacted Defendants about it.[1] (Compl. ¶ 24 n.1). This evidence further shows that Defendants were not aware of the infringing activity. If anything else was true, Defendants would not have used Plaintiff's Work.

Instead, the Court should assess statutory damages in the amount of three times the cost of the licensing fee Defendants would have paid Plaintiff—a reasonable and appropriate methodology in the Seventh Circuit and elsewhere. *Id.* at 1229; *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988); *Reilly*, 2016 WL 6837895, at *9. Here, it is undisputed that Plaintiff sought a licensing rate of $250 for the Work. (Dkt. 55 at 2); (Dkt. 33 ¶ 9). An award of statutory damages of three times that amount, or $750, as to Count I is fair, within the permissible range established by Congress, supported by caselaw, will act as an appropriate deterrent, and will not constitute an impermissible windfall to Plaintiff. This is especially reasonable since Plaintiff has not shown that he suffered any loss. *See Malibu Media, LLC v. Brenneman*, 2013 WL 6560387, at *3 (N.D.

---

[1] The evidence shows that Plaintiff knew of Defendants' use of the Work on July 20, 2020 but did not object to the use until September 22, 2020. (Dkt. 33 ¶¶ 48, 51).

Ind. Dec. 13, 2013) ("[S]tatutory damages should not be turned into a windfall where, as here, the Plaintiff has suffered only minimal damages."); *Reilly,* 2016 WL 6837895, at *9 ("[T]he statutory award should bear 'some relation to actual damages suffered.'") (citations omitted). Indeed, while the Court stated that Plaintiff "had several potential licensing deals in progress on June 20, 2020, all of which disappeared after the defendant's press conference," (Dkt. 55 at 11), the evidence shows that Plaintiff's failure to license the Work occurred *before* the Press Conference, not as a result of it. *See* (**Exhibit A**).[2] Accordingly, statutory damages on Count I should be limited to $750 total.

### B. Maximum Statutory Damages Are Not Appropriate on Count II.

The DMCA authorizes statutory damages, in the Court's discretion, ranging from $2,500 to $25,000 per violation. 17 U.S.C. § 1203(c)(3)(B). In determining the appropriate amount to award, the Court may consider several factors, including the circumstances of the violation. *Design Basics LLC v. Clayton Homes of Lafayette Inc.,* 2020 WL 9668708, at *8 (N.D. Ind. Jan. 9, 2020). The amount awarded should "avoid[] duplicating compensation for similar conduct" addressed under a claim for copyright infringement. *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019). Here, Plaintiff's request for $25,000 per violation is inappropriate considering the circumstances of the violation and Defendants' fair use defense, which Plaintiff ignores.

It is important to recognize that whether a Tweet constitutes CMI was an issue of first impression for the Court. (Dkt. 55 at 13). The City had no reason to believe that the Tweet from which the Work was downloaded constituted CMI, especially because Plaintiff has conceded that the Work uploaded to Twitter did not include any identifying information or watermark within the framing of the Work, even though Plaintiff had used

---

[2] The Protest occurred, Plaintiff recorded the Work, and Plaintiff uploaded the Work to Twitter on Friday, July 17, 2020. (Dkt. 33 ¶¶ 1-4). The Press Conference in which Defendants used the Work occurred on Monday, July 20, 2020. (*Id.* ¶ 13). Plaintiff received seven requests to use the Work on July 17, 2020; two requests to use the Work on July 18, 2020; and one request to use the Work on July 20, 2020, although it is unknown whether this request occurred prior to the Press Conference. (Dkt. 33-8); (Ex. A). Each request was either rejected by Plaintiff outright or the requester declined to pay the licensing fee. (Dkt. 33 ¶¶ 11-12).

watermarks for content he posted on Twitter previously. (Dkt. 33 ¶¶ 6-7). Importantly, the evidence does not conclusively establish that the Work, as downloaded from Twitter, contained any CMI to begin with, nor that the City actually removed any such CMI. At best, the evidence suggests that the City downloaded a video from Twitter and used the video exactly as downloaded—without any CMI attached. There is no evidence to suggest that when a video is downloaded from Twitter, the user's Twitter handle and caption are downloaded with the video in the same way that the information is displayed in the Tweet itself. Although the Court stated that "the City admits that it accessed the Work from Twitter and added the work to the Compilation without attribution to Gwinn," (Dkt. 55 at 15), this does not mean that the City actually removed CMI from the Work. *See Bell v. Milwaukee Bd. of Sch. Directors*, 2022 WL 18276966, at *7 (E.D. Wis. Dec. 21, 2022) ("[T]he lack of CMI on a copy of a work does not imply that CMI was affixed to the original and was later removed without permission of the author or the law."). In fact, Plaintiff's copyright deposit of the Work does not show Plaintiff's Twitter handle or any other identifying information. *See* (**Exhibit B** (true and accurate copy of Plaintiff's deposit of the Work with the U.S. Copyright Office)).[3] This evidence demonstrates that, when a video is downloaded from a Tweet, the purported CMI does not download along with it, and thus there is no evidence that the City removed CMI from the Work. This justifies limiting statutory damages on Count II to the minimum award of $2,500 per violation.

### C. The Court Should, in Its Discretion, Decline to Award Attorneys' Fees Because Defendants' Fair Use Defense was Well-Supported and Asserted in Good Faith.

Under both the Copyright Act and the DMCA, the decision to award attorneys' fees and costs "lies within the sole and rather broad discretion of the Court." *Chi-Boy,* 930 F.2d at 1230; 17 U.S.C. §§ 505, 1203(b)(5). In determining whether to award attorneys' fees and in what amount, courts may consider (1) "the frivolousness of the claims or

---

[3] Defendants requested the copyright deposit of the Work in discovery, but Plaintiff refused to produce it. Defendants subsequently ordered the deposit from the Copyright Office, but did not receive it until after summary judgment briefing had concluded. Defendants intend to file a motion to vacate or amend the judgment based on this newly received evidence.

defenses asserted by the non-prevailing party," (2) "that party's motivations in pursuing its claims or defenses," (3) "the objective unreasonableness (both in the factual and in the legal components of the case) of those claims or defenses," and (4) "the need for compensation or deterrence." *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 857 (N.D. Ill. 2019) (citation omitted).

Here, Defendants' fair use defense was not frivolous nor objectively unreasonable, and Defendants' motivations were based in good faith. Indeed, the Court acknowledged several factors that weighed in Defendants' favor: that Defendants' "use of the Work was non-commercial," (Dkt. 55 at 8); that "there is no evidence to suggest the defendants were not acting in good faith at the June 20 press conference," (*id.*); and that the Work is "more factual than creative," (*id.* at 9). The Court also found that the fourth fair use factor, market effect, was "neutral." (*Id.* at 11). Further, the Court did not appear to consider Defendants' additional argument that furthering the public interest weighed in favor of fair use. *See* (Dkt. 32 at 10-11). Defendants' representatives testified that, because the Protest was an "extreme situation[]," the Work was used and the Compilation was shown "in the interest of public safety." (*Id.* at 11). The information depicted in the Work related to matters of high public concern, which broadens the scope of fair use. Nimmer § 1.10(c)(2). In addition, Defendants' arguments presented the Court with issues of first impression, and therefore cannot be said to have been frivolous or unreasonable. The Court should decline to award Plaintiff attorneys' fees and costs.

## **CONCLUSION**

The statutory damages amounts Plaintiff seeks are inappropriate and unsupported by the evidence. Instead, the Court should, in its broad discretion, assess statutory damages in the amounts of $750 on Count I and $2,500 per violation on Count I, and decline to award Plaintiff's attorneys' fees and costs. Defendants respectfully request an evidentiary hearing to determine facts relating to willfulness and reckless disregard, the non-commercial use of the Work, the market and value for Plaintiff's Work, whether the Work contained CMI, and whether the City removed CMI from the Work.

DATED: May 9, 2025                                    Respectfully submitted,

**CITY OF CHICAGO and DAVID O'NEAL BROWN**

By: */s/ Sophie E. Honeyman*
One of Their Attorneys

Joseph F. Schmidt (ARDC # 2492180)
Sophie E. Honeyman (ARDC # 6343417)
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 606061
(312) 527-4000
jschmidt@taftlaw.com
shoneyman@taftlaw.com

*Counsel for Defendants City of Chicago and David O'Neal Brown*

6

**CERTIFICATE OF SERVICE**

  The undersigned, an attorney, hereby certifies that on May 9, 2025, she caused the foregoing ***Response to Plaintiff's Notice of Election of Statutory Damages*** to be filed with the Clerk of the United States District Court for the Northern District of Illinois, a copy of which will be served on all counsel of record by the Clerk's CM/ECF system.

*/s/ Sophie E. Honeyman*
