IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC GWINN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-1823 |
| | ) | |
| v. | ) | Hon. Jeremy C. Daniel |
| | ) | |
| CITY OF CHICAGO *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**THE CITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 60(b)(2) MOTION TO VACATE AND AMEND THE COURT'S ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT ON COUNT II**

Defendant City of Chicago (the "City"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 60(b)(2), hereby respectfully requests that the Court reconsider, vacate, and amend its March 31, 2025 Order granting summary judgment in Plaintiff's favor on Count II, (Dkt. 55), on the grounds that certified records from the United States Copyright Office—which the City received only after summary judgment briefing had concluded—reveal that Plaintiff's tweet is not part of the copyrighted Work and, further, the Work itself does not contain CMI. Because the Work (the video footage) does not contain CMI, the City cannot be liable for removing or altering CMI under 17 U.S.C. § 1202(b). In support, the City further states as follows:

### I. INTRODUCTION

Plaintiff owns a copyright in a video recording. Plaintiff posted the video footage to Twitter, and the Court found that "the tweet qualifies as CMI." (Dkt. 55 at 14). However, newly-obtained evidence from the United States Copyright Office shows that the *video footage* is the copyrighted Work, *not* the tweet, and the copyrighted Work does not include the tweet or any information contained therein, such as Plaintiff's Twitter handle and username. This is not a case where, for example, Defendants ripped out a page

1

of a book that contained a copyright notice. Rather, in this case, the video footage Defendants obtained from Twitter did not download with Plaintiff's Twitter handle or username, nor anything else that could qualify as CMI. Without any such CMI being attached to the copyrighted Work, as shown by the certified records Defendants recently obtained from the U.S. Copyright Office, there is no possibility the City could have intentionally removed CMI as is necessary to find a violation of 17 U.S.C. § 1202(b).

## II. BACKGROUND

### A. The Protest, the Work, and the Compilation.

At the center of this case is a 102-second cellphone video taken by Plaintiff Dominic Gwinn during an historic protest in the summer of 2020 (the "Work"). (Dkt. 33 (Defendants' statement of material facts in support of their motion for summary judgment ("DSMF")) ¶ 4). Plaintiff recorded the Work on July 17, 2020, and posted the Work on Twitter via the handle @DominicGwinn later that day without any accessibility restrictions, watermarks, or copyright notices. (*Id.* ¶¶ 4-7); *see also* (Dkt. 55 at 2) ("Gwinn then posted the Work to his Twitter account."). To be clear, the Work does not include Plaintiff's tweet; the Work is solely the video footage. Plaintiff could have included a watermark or other attribution on the Work itself as he has done in the past, *see* (DSMF ¶ 7), but he did not.

At some point between July 17 and July 20, 2020, the City "accessed a copy of the Work from an account on Twitter.com and downloaded a copy of it." (Dkt. 34-2 (Plaintiff's statement of material facts in support of his motion for summary judgment) ¶ 4). There is no evidence that Defendants downloaded the Work directly from Plaintiff's tweet. Rather, "it is not known from which Twitter page the video was pulled because the video was posted all over social media." (Dkt. 34-6 at 5 (the City's response to Plaintiff's request for admission No. 5)). Then, on July 20, 2020, Defendants used the Work as part of a larger Compilation shown at a CPD Press Conference. (DSMF ¶¶ 13, 17, 36, 42). At all

2

times, Defendants believed their use of the Work was a fair use pursuant to 17 U.S.C. § 107. *See, e.g.*, (Dkt. 32; Dkt. 42; Dkt. 49).[1]

Plaintiff filed a copyright application for the Work on July 28, 2020, which the U.S. Copyright Office granted on September 10, 2020, under registration number PA 2-255-761. (DSMF ¶¶ 49-50). Although Plaintiff was aware of Defendants' use of the Work on July 20, 2020, Plaintiff did not notify Defendants of any purported copyright issues until September 22, 2020. (*Id.* ¶¶ 48, 51). While Plaintiff has framed his arguments to suggest that the tweet was part of the Work, there is no evidence that the tweet was included in the Work for which Plaintiff sought and owns a copyright. Further, there is no evidence that, when a video is downloaded from a tweet, the information contained in the tweet downloads alongside the video.

### B. The Complaint and Discovery.

On March 23, 2023, Plaintiff filed a complaint against Defendants, alleging copyright infringement (Count I) and removal of copyright management information ("CMI") from the Work (Count II). (Dkt. 1).[2] The instant motion concerns Count II, under which,

> [n]o person shall, without the authority of the copyright owner or the law—
>
> > (1) intentionally remove or alter any copyright management information,
> >
> > (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law,
> >
> > . . .
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

---

[1] For purposes of this motion, the City does not dispute the Court's finding that Defendants did not make fair use of the Work, but Defendants nonetheless reserve all rights on appeal.
[2] This case was originally before the Honorable Nancy L. Maldonado before being reassigned to the Honorable Jeremy C. Daniel on July 10, 2024. (Dkt. 53).

Adamant they did not alter or remove CMI from the Work when using the Work in the Compilation, Defendants sought to determine whether the Work actually contained any CMI in the first place. A few of Defendants' requests for production ("RFPs") and Plaintiff's responses thereto are relevant here, true and accurate copies of which are attached hereto as **Exhibit A**.

First, Defendants requested "[a] copy of the application that plaintiff filed in the U.S. Copyright Office for the 'Work' that resulted in Copyright Reg. No. PA 2-255-761." (Ex. A at RFP No. 1). Plaintiff responded that "Plaintiff is not in possession of any documents responsive to this Request." (*Id*.). No documents responsive to RFP No. 1 were ever produced by Plaintiff.

Second, Defendants requested "[c]opies of all documents and communications sent by plaintiff to the U.S. Copyright Office in connection with plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." (*Id.* at RFP No. 3). Again, Plaintiff responded that "Plaintiff is not in possession of any documents responsive to this Request." (*Id*.). No documents responsive to RFP No. 3 were ever produced by Plaintiff.

Third, Defendants requested "[c]opies of all documents and communications from the U.S. Copyright Office which refer or related to plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." (*Id.* at RFP No. 4). Plaintiff identified only "GWINN 0002 – 0003" in response, (*Id*.), which consists of two emails dated July 28, 2020 acknowledging that Plaintiff submitted a copyright registration claim. A true and accurate copy of GWINN 0002 – 0003 is attached hereto as **Exhibit B**. At no point in this litigation has Plaintiff provided a copy of the official copyright registration or certification for the Work.

Finally, and most importantly, Defendants requested "[a] copy of the 'Work' that was filed with or deposited in the U.S. Copyright Office in connection with plaintiff's application for the 'Work' that resulted in Copyright Reg. No. 2-255-761." (Ex. A at RFP

4

No. 2). Plaintiff identified only "GWINN 0001" in response. (*Id.*).[3] However, Plaintiff's response to RFP No. 3 appears to contradict this response, since Plaintiff asserted that he did not possess any "documents and communications sent by plaintiff to the U.S. Copyright Office in connection with plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." *See* (*id.* at RFP No. 3). As a result, it was not clear that GWINN 0001 was, in fact, submitted to the Copyright Office as the Work for which Plaintiff sought registration. Critically, GWINN 0001 does not contain any CMI—there is no title, author, copyright holder, or other identifying information conveyed in connection with a copy of the work, let alone Plaintiff's Twitter handle or username. *See* (Dkt. 35).

Based upon Plaintiff's discovery responses and document production, Defendants had no way to verify that GWINN 0001 was the same footage that Plaintiff submitted for copyright registration—especially since GWINN 0001 does not contain CMI, whether in the form of Plaintiff's Twitter handle or otherwise. In other words, Plaintiff offered no evidence whatsoever that the Work deposited with the Copyright Office contained any CMI prior to Defendants' use. Defendants therefore requested a certified copy of the Work deposited for copyright registration from the U.S. Copyright Office directly in February 2024. A true and accurate copy of Defendants' request to the U.S. Copyright Office is attached hereto as **Exhibit C**.

C. **The Court's Summary Judgment Order.**

The parties filed cross-motions for summary judgment on April 24, 2024, and briefing concluded on June 14, 2024. *See* (Dkts. 31-52). At this time, the Copyright Office had not yet responded to Defendants' request for a certified copy of the Work submitted for registration. On March 31, 2025, the Court granted summary judgment in Plaintiff's favor on Count II as to the City.[4] (Dkt. 55). The Court reasoned that Plaintiff's "username

---

[3] Defendants previously uploaded a true and accurate copy of GWINN 0001 as a digital media exhibit at **Docket No. 35**.
[4] *See* (Dkt. 55 at 15) ("Brown escapes liability under the double-scienter requirement [of Count II], because there is no evidence in the record that he played any role in creating the Compilation and thus could not have removed CMI.").

5

and actual name appearing at the top of the tweet containing the Work is 'information conveyed in connection with' the Work," and thus "the tweet qualifies as CMI." (*Id*. at 14). The Court then found that, because "the City admits that it accessed the Work from Twitter and added the Work to the Compilation without attribution to Gwinn, . . . . the City stripped the Work of CMI when its employees inserted the Work into the Compilation, and intentionally performed these actions." (*Id*. at 15-16).

### D. The Newly-Obtained Evidence.

On July 29, 2024—after the parties' summary judgment motions had been fully briefed and were pending—Defendants received a response from the Copyright Office, a true and accurate copy of which is attached hereto as **Exhibit D**. The response consisted of a package containing (1) an official certification of PA 2-255-761 with a flash drive containing the copyrighted Work (Ex. D at 3); (2) a copy of deposit of PA 2-255-761 (*id*. at 4); and (3) a receipt of payment in the amount of $974 (*id*. at 5). Defendants uploaded a true and accurate copy of the copyrighted Work contained on the flash drive from the Copyright Office as a digital media exhibit at **Docket No. 58**. True and accurate screenshots of the copyrighted Work are attached hereto as **Exhibit E**. This newly-obtained evidence—namely, certified records from the U.S. Copyright Office and the Library of Congress—shows that the Tweet is not part of the Work. Indeed, the copyrighted Work does not include Plaintiff's Twitter handle or name, nor any other CMI. Defendants, therefore, could not have removed CMI from the Work.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(2) authorizes the Court to relieve a party from an order in light of "newly discovered evidence." Motions under Rule 60(b)(2) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1), and are "addressed to the sound discretion of the district court," *Planet Corp. v. Sullivan*, 702 F.2d 123, 125 (7th Cir. 1983). Such newly discovered evidence must have been in existence at the time the order was entered. *Peacock v. Bd. of School Comm'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir.

1983). Further, "the movant must demonstrate that the newly discovered evidence is admissible and credible, material and controlling and 'clearly would have produced a different result if presented before the original judgment.'" *Censke v. U.S.*, 314 F.R.D. 609, 611 (N.D. Ill. 2016) (citations omitted).

## IV. ARGUMENT

### A. Newly-Obtained Evidence from the U.S. Copyright Office Shows that the Copyrighted Work Does Not Include Any CMI, and thus the City Could Not Have Removed CMI in Violation of 17 U.S.C. § 1202(b).

In granting Plaintiff summary judgment on Count II against the City, the Court found that Plaintiff's "username and actual name appearing at the top of the tweet containing the Work is 'information conveyed in connection with' the Work," and "[t]herefore, the tweet qualifies as CMI." (Dkt. 55 at 14). The Court thus held that, because "the City admits that it accessed the Work from Twitter and added the Work to the Compilation without attribution to Gwinn," the City intentionally "stripped the Work of CMI when its employees inserted the Work into the Compilation." (*Id.* at 16). But there is a critical distinction missing from this analysis: the City did not use the *tweet* and then remove Plaintiff's name, handle, and text. Instead, the City used the *video*. And newly-obtained evidence from the U.S. Copyright Office—that was in existence but was not provided to Defendants until after summary judgment briefing had concluded—shows that the deposit copy of the video does not contain CMI. *See Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) ("[T]he scope of the copyright is limited by the deposit copy."). Plaintiff's Twitter handle and username were not on the deposit copy and do not attach to the video footage upon download. As such, the City cannot be liable under 17 U.S.C. § 1202(b) because there was no CMI for the City to remove.

The Digital Millennium Copyright Act ("DMCA") prohibits the intentional removal or alteration of any CMI, as well as the distribution of CMI while knowing the CMI had been removed or altered. 17 U.S.C. § 1202(b). The DMCA does not, however, apply to the

7

omission of CMI. *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999).

Defendants argued on summary judgment that the City downloaded a video from an unknown Twitter account and used the video exactly as downloaded—without any CMI attached. Indeed, when a video is downloaded from Twitter, the user's Twitter handle and username are not downloaded with the video in the same way that the information is displayed in the tweet itself. Although the Court found that Plaintiff's Twitter handle and username qualified as CMI, and that "the City admits that it accessed the Work from Twitter and added the work to the Compilation without attribution to Gwinn," (Dkt. 55 at 15), this does not mean that the Work itself contained CMI, nor that the City removed any CMI from the Work. *See Bell v. Milwaukee Bd. of Sch. Directors,* 2022 WL 18276966, at *7 (E.D. Wis. Dec. 21, 2022) ("[T]he lack of CMI on a copy of a work does not imply that CMI was affixed to the original and was later removed without permission of the author or the law."); *see also Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 903 (D. Ariz. 2019) (granting summary judgment for defendants where defendants "received the images without the signature and copyright symbol on them" and therefore could not have removed CMI). Indeed, Plaintiff's discovery responses and production did not allow Defendants to verify whether the Work, as deposited with the Copyright Office for registration, contained the CMI Plaintiff alleged, namely, Plaintiff's Twitter handle and username. Without this critical evidence, Defendants were unable to prove to the Court that the Work downloaded and used by Defendants did not include any CMI upon download and, therefore, the City could not have removed CMI from the Work. Defendants thus requested the necessary records regarding the Work from the Copyright Office directly, at their own expense of $974, months prior to filing for summary judgment. (Ex. C; Ex. D at 5).

Defendants received the requested evidence from the Copyright Office only after summary judgment briefing had concluded and the parties' cross-motions were pending, although the records were in existence at all times relevant to this litigation. *See Peacock*,

8

721 F.2d at 214 (newly discovered evidence must have been in existence at the time the order was entered). This newly-obtained evidence is admissible, credible, material, controlling, and would have caused a different finding as to Count II had it been made available to Defendants in discovery. *Censke*, 314 F.R.D. at 611 (citations omitted).

The certified records from the U.S. Copyright Office confirm that Plaintiff did not copyright his *tweet*. Rather, Plaintiff copyrighted the *video*, but the Copyright Office records show that the video does not include Plaintiff's Twitter handle or username, nor anything else that could constitute CMI. *See* (Dkt. 58 (digital media exhibit); Ex. E); *see also Skidmore*, 952 F.3d at 1063 ("[T]he scope of the copyright is limited by the deposit copy."). In fact, the certification received from the Copyright Office explicitly states that "deposits submitted electronically bear no identifying marks." (Ex. D at 3). With affirmative evidence to corroborate that the Work does not include CMI, nor Plaintiff's Twitter handle or username, there is no possibility that the City removed any such CMI from the Work in violation of 17 U.S.C. § 1202(b). It would be a different story if the City had taken a screenshot of Plaintiff's tweet and cropped out Plaintiff's handle and username, but that's not what happened. "Allowing a plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation against parties who have tried to tread carefully to avoid copyright infringement." *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928-29 (N.D. Ill. 2013).

The instant situation is comparable *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022), where none of the photos at issue contained any watermark, copyright mark, or other CMI. *Id.* at 1064.[5] The only identifiable CMI was found on Wikimedia, where the plaintiff's name was listed directly below each photograph. *Id.* The *Logan* court determined that the placement of the plaintiff's name beneath the photos was "sufficiently close to qualify as CMI." *Id.* The defendant had then embedded the

---

[5] While *Logan* was before the court on a motion to dismiss, its facts and analysis are comparable such that the Court may nonetheless consider *Logan* for its persuasive value. *See* (Dkt. 55 at 14).

photos onto a separate platform without the CMI that was conveyed sufficiently close to the photos, but not on them. *Id*. The plaintiff's theory was "that embedding the photos itself evidences [the defendant's] intent to remove [the plaintiff's] CMI from his photos." *Id*. The *Logan* court rejected this argument, reasoning that "embedding itself cannot establish that a defendant 'intentionally removed or altered' a plaintiff's CMI" because, "[u]nlike editing a plaintiff's watermark out of a photo, automatically omitting CMI by embedding a photo out of the full context of the webpage where the CMI is found cannot itself plead intentionality as required by the DMCA." *Id*. (citing § 1202(b)(1); *Kelly*, 77 F. Supp. 2d at 1122 ("[R]emoving Plaintiff's images from the context of Plaintiff's Web sites where their CMI was located, and converting them to thumbnails in Defendant's index failed to show that Defendant's actions were intentional, rather than merely an unintended side effect.") (cleaned up)). *See also Tremblay*, 716 F. Supp. 3d at 779 ("The DMCA 'does not prohibit merely omitting CMI from an infringing work.'") (citing *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022)); *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) (finding "the plain language of [§ 1202(b)] encompasses only removal and alteration," and does not extend to "omissions" of CMI).

Here, the Copyright Office's records establish that the copyrighted video footage does not contain any watermark, copyright mark, or other CMI, and that the only identifiable CMI for Plaintiff's Work was contained in Plaintiff's tweet, namely, Plaintiff's handle and username. Like in *Logan*, the CMI at issue here is not on the work itself but is conveyed close by, and Twitter, like Wikimedia, the only CMI is located on a separate website page that did not automatically transfer when the work was downloaded and used. Like in *Logan*, the CMI was just omitted as a consequence of the way in which the CMI was provided. Plaintiff's theory is that the City violated the DMCA by embedding the Work out of the full context of the tweet where the CMI can be found and into the Compilation. As the *Logan* court held, however, this cannot form the basis of Plaintiff's claim that the City intentionally removed CMI from the Work. *See Logan*, 636 F. Supp.

3d at 1064; *see also Kelly*, 77 F. Supp. 2d at 1122. Where CMI is omitted as an automatic result of embedding content from an online post, the defendant cannot be found to have intentionally removed CMI in violation of the DMCA. That is the case here, and, therefore, the City did not violate section 1202(b).

It is critical to recognize that the *video* is the Work, not Plaintiff's tweet, and Plaintiff obtained a copyright registration for the *video*, not the tweet. According to the newly-obtained certified records from the U.S. Copyright office, there is no CMI on the Work as registered; the only identifiable CMI for Plaintiff's Work was Plaintiff's handle and username as found in the tweet itself. *See Personal Keepsakes*, 975 F. Supp. 2d at 929 ("[The plaintiff] is not asserting that its website was copied; its claims pertain to the content of its poems. But the only alleged CMI is on [the plaintiff's] website, not the poems or phrases themselves. It reasonably follows no CMI information was removed from the poems."). When Defendants used the Work—the video, not the tweet—the City could not have removed CMI, much less removed CMI intentionally, since CMI was not attached to the Work as registered. But a violation of 17 U.S.C. § 1202(b) requires the removal or alteration of CMI. That did not happen here for the simple reason that no CMI was attached to the video as downloaded, which is supported by the newly-obtained evidence from the Copyright Office. Therefore, in light of this newly-obtained, credible, and material evidence, the Court should, respectfully, vacate and amend its March 31, 2025 Order granting summary judgment in Plaintiff's favor on Count II, (Dkt. 55), and should instead find that the City did not remove or alter CMI.

## V.  CONCLUSION

For the reasons set forth above, and pursuant to Rule 60(b)(2), the City of Chicago respectfully asks the Honorable Court to enter an Order (1) vacating its March 31, 2025 Order granting summary judgment in Plaintiff's favor and against the City on Count II; (2) finding that, as revealed by the newly obtained evidence, the Work itself does not contain any CMI and thus the City did not remove or alter CMI from the Work in violation of 17 U.S.C. § 1202(b); (3) amending its Order to grant summary judgment in the City's

11

favor and against Plaintiff on Count II; and (4) granting the City all further relief the Court deems just.

DATED: July 15, 2025

Respectfully submitted,

**CITY OF CHICAGO and DAVID O'NEAL BROWN**

By: */s/ Sophie E. Honeyman*
One of Their Attorneys

Joseph F. Schmidt (ARDC # 2492180)
Sophie E. Honeyman (ARDC # 6343417)
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 606061
(312) 527-4000
jschmidt@taftlaw.com
shoneyman@taftlaw.com

*Counsel for Defendants City of Chicago and David O'Neal Brown*

173141352v5

12