**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CASE NO.: 1:23-CV-01823-JD**

DOMINIC GWINN,

                Plaintiff,

v.

CITY OF CHICAGO, and DAVID O'NEAL
BROWN,

                Defendants.

## DECLARATION OF EVAN A. ANDERSEN IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTIONS IN LIMINE

I, Evan A. Andersen, declare and say:

1.      I am an attorney duly licensed to practice before this Court, and I am counsel for Plaintiff Dominic Gwinn ("Gwinn") in the above-captioned matter. I make this Declaration, which is filed in support of Plaintiff's Response in Opposition to Defendants' Motions in Limine, and I could and would testify competently to the matters set forth herein.

2.      Prior to working for SRIPLAW, P.A., I represented Plaintiff in this matter for pre-litigation settlement discussions through my firm Evan Andersen Law, LLC.

3.      While representing Plaintiff, I communicated with Christina Chung, who was the Assistant Corporation Counsel for the City Of Chicago's Department of Law.

4.      Attached as Exhibit 1 to this declaration is a true and accurate copy of pre-suit email communications I had with Ms. Chung between October 27, 2020, and May 27, 2021.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 18, 2025, at Atlanta, Georgia.


/s/ Evan A. Andersen
Evan A. Andersen

Exhibit 1

 Outlook

---

## RE: Gwinn Copyright Infringement Claim

**From** Evan Andersen <evan@pixeliplaw.com>

**Date** Thu 5/27/2021 8:03 PM

**To** Christina Chung <Christina.Chung@cityofchicago.org>

---

📎 5 attachments (3 MB)
CNN Request for Footage 07-17-2020 2.jpg; AJ Plus Request For Footage 07-20-2020.jpg; FOX Request for Footage 07-17-2020 1.jpg; Daily Mail Requst for Footage 07-17-2020.jpg; NBC Chicago Request for Footage 07-17-2020 2.jpg;

**-Settlement Discussions-**

Christina,

Thank you for your patience as I looked into the issue of license fees for unlimited distribution, or transfers of copyright. Unfortunately, there is not a generally accepted amount for these kinds of transactions specifically because they would be so cost prohibitive. I spoke with representatives at a few licensing companies who explained that while they were willing to provide licensing guidelines for limited uses and distribution, because the unlimited distribution of a work would essentially foreclose any ability for the copyright owner to further license that work, they would leave any such negotiation up to the copyright owner. In other words, the price for the sale of such broad rights, or rights to the work as a whole, would be determined on a case-by-case basis by each individual copyright owner, and was generally very significant.

Here, we are dealing with a unique and valuable video clip which caught the attention of multiple news outlets and politicians as protests and police interactions with the public were at a high national interest level. Should we need to litigate, I'm confident that any expert opinion on the value of this unlimited distribution would be as described. CPD disseminated the Video at the specific moment in time that it was at its most valuable, and took away any opportunity for Mr. Gwinn to earn a living based on his work, even though he had been the one to put himself into the dangerous position of capturing the Video. CPD gained from stealing from him and took away any ability he would have had to make any revenue from licenses to the media outlets that ultimately used his Video, crediting CPD. As you can see, there was a lot of interest in the use of his Video, but that stopped after CPD distributed it for free. It was then used by many of these outlets anyways without attribution to Mr. Gwinn because they thought CPD provided it for free. Had he been contacted by these and others that ultimately used the Video, he could have made sure he was paid appropriately for the resulting uses.

That said, the personal value to Mr. Gwinn of this Video is as stated to you previously. Our previous offer takes into account what Mr. Gwinn had to do to create the Video, as well as the value at the time it was taken by CPD for its own uses. As stated earlier, $50,000 for this kind of use would not be unreasonable. The statutory damages available to Mr. Gwinn would apply a 3-5x multiplier on this amount.

Please let me know if CPD will accept our initial offer, or otherwise provide a counteroffer to me that I can take to Mr. Gwinn for his review.

-Evan

---

Evan A. Andersen, Esq.
Evan Andersen Law, LLC

[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, March 29, 2021 6:17 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan,

Thank you for your email earlier explaining the potential cost differential between a single use license, which you explained may be in the hundreds of dollars per license, versus an unlimited distribution, which you explained may be closer to the tens of thousands per license. Can you please provide documentation corroborating these costs? In addition, I previously requested that you provide copies of all communications between Mr. Gwinn and any organizations who had "previously asked [Mr. Gwinn] for permission to use the Video then decided not to when he asked them to pay a licensing fee," as referenced in your initial claim letter.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Monday, March 29, 2021 4:28 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

    [Warning: External email]


**-Settlement Discussions-**

Christina,

Following up on my email below.   Please let me know if CPD will accept Mr. Gwinn's offer to resolve this matter, which is still on the table.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com

404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Evan Andersen
**Sent:** Thursday, March 18, 2021 5:26 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

**-Settlement Discussions-**

Christina,

The problem with providing those licensing amounts is that they are not comparable to the usage by CPD, and any comparison between them would be unfair to the loss of value that occurred when CPD decided to distribute the footage without restriction.  A single use license and an unlimited distribution license couldn't be any different. While single use licenses may be in the hundreds of dollars per license, unlimited distribution, like I said earlier, easily reaches to the tens of thousands per license, especially for rare and unique footage as was captured by Mr. Gwinn.  If you want me to gather industry standard pricing for the kind of distribution performed by CPD, I can work on that – but you must understand that this pricing will be much more applicable to the issue at hand than what the value of a single-use license would have been.

-Evan

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, March 10, 2021 6:31 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:

Thank you for your email. I understand your client's position, and it will be taken under consideration as we review Mr. Gwinn's settlement demand.

However, I still need additional information regarding Mr. Gwinn's fees. While CPD is willing to continue settlement discussions, it cannot respond to your client's demand until we fully evaluate your client's claims. Understanding what your client typically charges for a single license is a part of that analysis. We are also requesting supporting documentation to substantiate those fees. Your initial letter noted that "organizations that had previously asked [Mr. Gwinn] for permission to use the Video then decided not to when he asked them to pay a licensing fee." Please provide copies of all such communications for our review. Once we have received them, we will respond to your client's demand.

Thank you,
**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, March 9, 2021 12:05 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung –

While I appreciate that CPD would like to potentially pay a license fee for a "single and limited use of the footage," that is simply not what happened here. Had CPD used the footage once, and failed to pay a fee for it, that would have been the scope of the conversation that we would be having, and the numbers we are talking about would likely be significantly less. But CPD took Mr. Gwinn's footage, offered it to and distributed it to third party media outlets without any restrictions, leading to further downstream uses including political displays and advertisements. This distribution gutted any chance for Mr. Gwinn to work to sell licenses to his unique footage, as no outlet would ever pay for it if they could just use it for free from CPD. This widespread, unlimited, and unauthorized distribution is the core of why Mr. Gwinn is so upset at what CPD did, and why we have engaged CPD from the start on the full scope of the unauthorized usage and distribution.

Accordingly, these settlement discussions cannot revolve around a "single and limited use of the footage," as CPD's use was neither singular nor limited. We are hopeful that CPD will take responsibility for the full scope of its conduct.

Please let me know if CPD will accept Mr. Gwinn's offer to resolve this matter, which is still on the table.

-Evan Andersen

---

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

---

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Friday, March 5, 2021 5:47 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:


Apologies if my last email was unclear. We cannot move forward with providing a substantive response to your offer until we receive an answer regarding Mr. Gwinn's alleged license fees, plus any supporting documentation. While I understand that $50,000 would be a comparable license fee for a "full buyout" of the footage, what I had requested earlier was clarification regarding what Mr. Gwinn typically charges for a "single and limited use of the footage." Please advise.


Thank you,

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, March 2, 2021 7:14 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]


-Settlement Discussions-

Ms. Chung,

Checking in on the status of your investigation. We are looking forward to moving forward with the conversation.

As for the license fees that he lost from CPD's use and distribution of the Video, Mr. Gwinn does not have a comparable license that would essentially allow CPD to distribute it to whomever they wanted, and for whatever

purpose they wanted. That kind of unrestricted third-party distribution really only comes through a buyout of the copyrighted work, which would be substantially higher than any single and limited use of the footage that he would normally grant for this kind of work. $50,000, which would be a third of the statutory damages available, is not an unreasonable number for a full buyout of something like this footage (noting that a 3-5x multiplier of the lost license fee is common in establishing the amount of statutory damages). But as I mentioned in my earlier email, even if this actual damage number is difficult or impossible to calculate, statutory damages remain available to compensate Mr. Gwinn and dissuade CPD from this kind of behavior in the future.

Mr. Gwinn's offer remains on the table. Please let me know if CPD will accept it to fully resolve this matter.

-Evan Andersen

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, January 20, 2021 5:25 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim


Mr. Andersen:


We are still working on providing a substantive response to your January 6 email. However, I did have a brief follow-up question. Your email alleges that lost license fees should have been paid to Mr. Gwinn and constitute his actual damages; however, you do not specify what Mr. Gwinn's license fees were. Can you please clarify?


**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Thursday, January 14, 2021 1:40 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up to see when we may expect to receive a response.

-Evan

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Thursday, January 7, 2021 3:05 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Anderson:

Thank you for your email. We will review and get back to you.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, January 6, 2021 11:33 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Happy New Year, and thank you for your letter dated December 16, 2020. Unfortunately, your letter does not resolve this matter. Specifically, my client strongly disagrees with your fair use analysis and notes that regardless

of whether CPD's actions brought it any profit, Mr. Gwinn has been directly harmed by CPD's unlawful display and distribution of his Video.  Your assertions will be addressed in turn.

My client is the author of the Video.  If you have some reason to believe he is not, please send me that information and I will review it.  But regardless of whether you believe that his name next to the video constitutes CMI, the statutory definition is clear, and does not require that a watermark be placed on the work itself.  Instead, Congress chose specific language, that the information be "conveyed in connection with" the work, which Mr. Gwinn's name certainly was.  Accordingly, his name appearing next to his initial display of the work fits the statutory definition of CMI under 17 USC secs 1202(c)(1, 2, 3, and 7).  Certainly CPD, accessing the Video from his Twitter page, had some notice as to a person they could ask as to ownership rights.  Yet CPD refused to do so, leading to a long line of downstream uses that attributed CPD rather than Mr. Gwinn.

The damages suffered are not limited to profits or revenues made by the infringer on the infringing activity.  First and foremost, it is well established that the lost license fee that should have been paid to Mr. Gwinn for the use and unlimited distribution of the Video prior to the infringement constitutes actual damages.  *On Davis v. The Gap Inc.*, 246 F.3d 152, 169 (2nd Cir. 2000).  Further, the unrestrained and unpaid distribution of the Video undermined the value of Mr. Gwinn's Video, and his goodwill and negotiating leverage with licensees, all of which cause Mr. Gwinn to suffer irreparable harm. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (Explaining that the loss of the value of works to the copyright owner, the loss of the copyright owner's goodwill, and the loss of negotiating leverage are all the types of irreparable harm that cannot readily be remedied with damages).  As Mr. Gwinn lost the opportunity to further license the Video to all of the downstream users, the actual damages get exponentially worse as you continue to follow the trail of the continued uses.  The damages are real.  But even though they may be difficult to calculate precisely, that is not a reason to discount liability.  In fact,  courts have made it clear that statutory damages may be awarded "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or the profits reaped by the defendant."  *Shapkin/Crossroads Publications, Inc. v. Legacy Home Video, Inc.*, 122 F.3d 1073 (9th Cir. 1997).

Further, the purpose of awarding damages under the Copyright Act is not merely to make the plaintiff whole.  "[W]hile certainly serving to provide some compensation for defendant's infringement, statutory damages also serve a deterrent purpose, discouraging wrongful conduct by imposing a high enough penalty so that defendants will realize that it is less expensive to comply with the law than to violate it."  Patry on Copyright, sec. 22:174.  *See also, F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (noting that deterrence is important "even for uninjurious and unprofitable invasions of copyright . . . [to] vindicate the statutory policy of discouraging infringement").  Accordingly, statutory damages here will take into account more than only the actual damages at issue, and will look at what it will take to dissuade CPD from acting like this in the future.

As for the registration, While we were waiting for your response, the Copyright Office responded to Mr. Gwinn with his Certificate of Registration for the Video.  It is attached for your records.  As you can see, the Effective Date of Registration allows for Mr. Gwinn to claim statutory damages on any infringement that occurred after he posted it to Twitter.

Finally we reach your fair use argument, which glosses over the factors in a dangerous way which would suggest that CPD and other similarly situated parties can trample over the rights of copyright owners in such a broad manner that any news reporting would essentially be fair use.  No court would agree with this interpretation of the four factors.

For example, your analysis of the first factor is that CPD was performing news reporting and did not profit from it.  But this leaves out the central question of the first factor, as to whether the use was transformative.  It is well established that the classification of a use as "news reporting" is not enough on its own to satisfy a fair use analysis.  *See, e.g. Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561, 105 S. Ct. 2218, 2231, 85 L. Ed. 2d 588 (1985) (explaining that although "news reporting" appears as an example in the fair use statute, it is an element of the full analysis rather than a presumptive category of fair use).  Instead, the first prong of the fair use inquiry asks whether copying "permissibly `transforms' and thus `complements' the original, as opposed to creating a `substitute' that `supersedes' the original." *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL

3368893, at *9 (N.D. Ill. July 8, 2014); *accord Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Here, CPD did not add something new. Instead, it used the copyrighted Video in the same way those who purchased licenses typically would use them—to show the news event and comment on the footage—and did so "without paying the customary price." *Harper & Row*, 471 U.S. at 562. CPD's usage and distribution of the unedited Video for the same purpose that Mr. Gwinn was working to license right for is a substitute that supersedes Mr. Gwinn's licensing efforts rather than complimenting his work. This factor weighs heavily against fair use.

The third factor here also weighs heavily against fair use, as CPD displayed and distributed the heart of the work, showing the actual specific events of the police officers being attacked by thrown items from the crowd. This kind of use, despite using only a small part of the entire video, does not support a finding of fair use. *Los Angeles News Service v. Tullo*, 973 F. 2d 791, 798 (9th Cir. 1992) ("[c]opying even a small portion of a copyrighted work may exceed the boundaries of fair use if the material taken is the "heart" of the work"), citing *Harper & Row*, 471 U.S. at 564-65.

Finally, the fourth factor weighs heavily against fair use as well. Rather than the narrow view you described, this factor requires courts to investigate whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the copyrighted work. *Storm Impact, Inc. v. Software of Month Club,* 13 F. Supp. 2d 782, 789 (N.D.Ill., July 29, 1998). The Seventh Circuit has said that this factor is "usually" "the most important." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). Here, not only would widespread distribution to media outlets have a adverse impact on journalists' ability to further license their copyrighted works, but in this specific example, CPD's unauthorized and broad distribution of the Video devastated Mr. Gwinn's ability to license it, as multiple uses including news reporting, congressional hearing presentations and more all occurred without any payment to Mr. Gwinn for his work. Those end users didn't think they needed to pay for the footage because CPD distributed it to them for their own use.

All-in-all, three of the four factors weigh heavily against a finding of fair use. This argument simply will not stand in court.

As you did not respond to or provide a counter offer to my client's offer to resolve this matter, it is still on the table. Please let me know if CPD will accept this offer to resolve the matter without the need for litigation.

-Evan Andersen

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, December 16, 2020 6:41 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:

Thanks for your patience as we completed our review. Please see the attached response.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Friday, December 11, 2020 10:26 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up again.  It is quickly approaching two months since I first heard from you, and we have not yet received a substantive response.

-Evan

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, November 30, 2020 10:17 AM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringment Claim

Mr. Andersen:

I hope you had a happy and safe Thanksgiving. I aim to get a response to you within the next two weeks.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, November 24, 2020 11:49 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up again to see when we may expect to receive a response.

-Evan Andersen

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, November 16, 2020 4:56 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringment Claim

Mr. Andersen:

Thank you for your email. I have been tied up with some pressing discovery deadlines and was also out of the office for a portion of last week, but am working on providing a response to you as soon as possible.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, November 11, 2020 1:43 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up to see when we may expect to receive a response.

-Evan Andersen

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Tuesday, October 27, 2020 1:08 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Gwinn Copyright Infringment Claim

Mr. Anderson:

We are in receipt of your September 22, 2020 letter regarding your client's copyright claims. I recently was assigned to this matter and am reviewing now, and will provide a written response to your letter in due course.

Thank you,

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
30 N. LaSalle Street, Suite 1400
Christina.Chung@cityofchicago.org

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.



# ljdigital
@LJDigital





Hey Dominic, I am with CNN. I was wondering if you would be willing to give us permission to use the video of the bottles being thrown at police in Chicago-- please let me know your licensing process or compensation cost. Thank you!

Fri 8:31 PM

You accepted the request

$250, standard rate.

Fri 9:23 PM ✓



Thanks! What is your contact information?

Sat 8:35 AM

dominicgwinn@gmail.com, 402-324-9466

401-324-9466

Sorry just woke up.

Sat 8:51 AM ✓

  Start a new message  


@fox32news



Hi Dominic. Reaching out to see if we can get your permission to use on air and online the video you posted of objects being hurled at Chicago police during the protest at Grant Part tonight? We would of course credit you. Hope to hear from you soon and stay safe.

Fri 7:53 PM

How much $?

Fri 7:54 PM ✓

Standard rate is $250. We can start from there if you're still interested.

Fri 7:57 PM ✓



Appreciate the response Dominic. We will pass for now. Stay safe out there.

Fri 8:05 PM

  Start a new message  



# marco stendardo
@NBC5Marco



Dominic, may NBC Chicago/Telemundo use your video of police getting hit with bottles and fireworks on our platforms with a credit to you? Thanks for any consideration.

Sat 12:53 PM

You accepted the request

Standard rate is $250. I start negotiating from there.

Sat 12:56 PM ✓

   Start a new message  



# Kembe
@th3_slice





Hey, I'm a producer with @ajplus could we use some of your footage of the protests at Grant Park?

Mon 2:13 PM

You accepted the request

Standard rate $250

Mon 2:14 PM ✓

   Start a new message  

Case: 1:23-cv-01823 Document #: 79-1 Filed: 08/18/25 Page 20 of 20 PageID #:1223





Hello, My name is Esther and I am a photo editor with the Daily Mail. I would love to grab some videos or photos you have of the protests going on in Chicago right now to use in an article. Do we have your permission to use? Thank you!

Fri 8:30 PM

You accepted the request

Absolutely not.

Fri 9:24 PM ✓



No worries, thanks for a speedy response!

Fri 9:32 PM

I'm a professional. Thank you.

Fri 9:32 PM ✓



Yes, I am aware thanks so much for covering! #blacklivesmatter ✊🏼✊🏿 🙂

  Start a new message