IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC GWINN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-1823 |
| | ) | |
| v. | ) | Hon. Jeremy C. Daniel |
| | ) | |
| CITY OF CHICAGO *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**THE CITY OF CHICAGO'S REPLY IN SUPPORT
OF ITS RULE 60(b)(2) MOTION TO VACATE AND AMEND**

The City's Motion, premised on newly obtained, certified records from the U.S. Copyright Office, presents the legal question of whether § 1202(b) of the Digital Millennium Copyright Act ("DMCA") imposes the additional obligation to *add* CMI to a work that otherwise does not have any. In this copyright action, Plaintiff did not attach a copy of the copyrighted work at issue to his complaint. Then, despite Defendants' timely discovery requests, Plaintiff refused to produce various documents regarding the registration of the work with the United States Copyright Office, including a copy of the copyrighted work, the application for registration, and documents and communications sent in connection with the copyright registration (the "Copyright Records"). As such, Defendants had no choice but to seek the Copyright Records straight from the Copyright Office immediately upon the close of discovery. Defendants did not receive the Copyright Records from the Copyright Office until after summary judgment briefing had concluded and the parties' cross-motions were pending. Defendants did not want to waste the Court's resources, especially given that the case had been recently reassigned, if the CMI issue was not going to come into play. Once the Court entered its summary judgment order and the case headed to trial, the City promptly—and well within the time limitation set forth by Rule 60(b)(2)—brought its Motion to Vacate and Amend.

1

As Defendants explained to the Court at the July 23, 2025 presentment hearing (the "Hearing") (for which Plaintiff's counsel did not appear, *see* (Dkt. 67)), Defendants are not contesting the Court's ruling that Plaintiff's Twitter handle and username constitute CMI (the "Twitter CMI"). Rather, the City's Motion presents the legal issue of interpreting § 1202(b) in the context of downloading video footage directly from Twitter, since when a video is downloaded from a tweet, the Twitter CMI does not download with or attach to the video. In other words, the Twitter CMI ceases to be conveyed in connection with the work outside of the very narrow context of a tweet. This is merely a consequence of audiovisual works and Twitter's functionality—not a violation of the DMCA. To hold otherwise would be to impose the additional obligation on a user of a copyrighted work to affirmatively *add* CMI to the work when the user receives a copyrighted work without any CMI. Such an obligation does not exist under the plain language of the DMCA. The Copyright Records—the certified evidence of what constitutes the work at issue which should have been produced by Plaintiff prior to the close of discovery—illustrate how the footage exists outside of the context of the tweet and how the standalone video footage does not contain the Twitter CMI or any other CMI that the City could have allegedly altered or removed in violation of the DMCA.

Nonetheless, Plaintiff opposes the Motion. The City addresses each of Plaintiff's arguments in turn below.

### A. **The City Did Not Possess the Copyright Records Prior to Summary Judgment Briefing Because Plaintiff Refused to Produce Them.**

Plaintiff first argues that "the City knew about and possessed the evidence since even before this case was filed and well before the summary judgment was entered." (Dkt. 73 ("Resp.") at 5). This misrepresents the facts of this case and demonstrates Plaintiff's misunderstanding of a litigant's discovery obligations.

In his Rule 26(a)(1) disclosures, Plaintiff identified "[d]ocuments regarding the registration of the Work with the United States Copyright Office." (**Exhibit A** at 4). Subsequently, Defendants requested, among other documents, "[a] copy of the

2

application that plaintiff filed in the U.S. Copyright Office for the 'Work' that resulted in Copyright Reg. No. PA 2-255-761" and "[c]opies of all documents and communications sent by plaintiff to the U.S. Copyright Office in connection with plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." (Dkt. 63-1 at RFP Nos. 1, 3). For both requests, Plaintiff responded that "Plaintiff is not in possession of any documents responsive to this Request." (*Id*.). No responsive documents were ever produced by Plaintiff, despite what was initially disclosed pursuant to Rule 26(a)(1). Defendants also requested "[a] copy of the 'Work' that was filed with or deposited in the U.S. Copyright Office in connection with plaintiff's application for the 'Work' that resulted in Copyright Reg. No. 2-255-761." (*Id.* at RFP No. 2). While Plaintiff identified "GWINN 0001" in response, Plaintiff's responses to RFP Nos. 1 and 3 directly contradict this assertion. As a result, it was not clear that GWINN 0001 was, in fact, submitted to the Copyright Office as the Work for which Plaintiff sought registration, especially since Plaintiff has continually misrepresented what actually constitutes the work at issue throughout this litigation.

Indeed, Plaintiff did not attach the copyrighted work at issue as an exhibit to his complaint for copyright infringement and removal of copyright management information ("CMI"). *See* (Dkt. 1 ("Compl.")). Plaintiff initially told the Court the video was titled "VID_20200717_192612" and presented the following "screenshot of the Work:"



3

(*Id.* ¶ 14). But this isn't an accurate screenshot of the Work, as supported by the Copyright Records (which Plaintiff refused to provide to Defendants in discovery). The real work at issue does not include the text "VID_20200717_19612" on the video footage, nor is this the name of the video footage that was submitted for copyright registration. *See* (Dkt. 63-4 (title of the work is actually "CHICAGO POLICE ATTACK AT GRANT PARK COLUMBUS STATUE, 07-17-2020"); Dkt. 63-5 (screenshots of the certified copyright deposit revealing no text on the video footage itself)). Plaintiff then framed the Work as the tweet through which Plaintiff published the Work to Twitter:



(Compl. ¶ 16). But, again, this does not truly and accurately establish the work at issue, nor the scope of the copyright, nor whether the Twitter CMI is conveyed anywhere else but within the confines of this singular tweet. Plaintiff's failure to attach the copyrighted work to the complaint or produce the copyrighted work in response to Defendants' discovery requests, coupled with Plaintiff's misleading characterization of the work throughout this litigation, combine to directly refute Plaintiff's assertion that "[t]he City

4

also had actual knowledge that no part of Gwinn's Twitter post was deposited with the Work." (Resp. at 6).

Plaintiff argues the Copyright Office records do not constitute new evidence because it "was not new at the time the City received the copy of the Work from the U.S. Copyright Office." (Resp. at 5). Plaintiff misses the point. First, newly discovered evidence must have been in existence at the time the order was entered. *Peacock v. Bd. of School Comm'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir. 1983). That is the case here. Second, the City was not in possession of the Copyright Office records prior to summary judgment solely because of Plaintiff's refusal to produce them in response to Defendants' discovery requests and pursuant to Plaintiff's obligations under Rule 26(a)(1) and Rule 26(e). Plaintiff's sole citation to *Madero v. McGuinness*, 2025 WL 965133, 2025 U.S. Dist. LEXIS 60492 (N.D. Ill. Mar. 31, 2025), also misses the mark. In *Madero*, the plaintiff received the evidence at issue "eight days after he filed his complaint" and "years before" summary judgment was granted. 2025 WL 965133, at *3. The evidence at issue in *Madero* was also produced and Bates-stamped by the defendant. *Id.* at n.4. Here, Defendants timely requested the Copyright Records in discovery and Plaintiff refused to produce them throughout discovery. Defendants then promptly sought the materials from the Copyright Office directly (at a significant out-of-pocket cost). Defendants did not receive the materials from the Copyright Office, at no fault of their own, until after summary judgment briefing had concluded. As Defendants' explained at the Hearing, Defendants awaited the Court's summary judgment order as not to waste any judicial resources in the event that the Copyright Office records did not come into play and thus filing a motion to vacate and amend would not be necessary. (Tr. of Hearing, at 3).

Plaintiff also argues that Defendants could have asked Plaintiff about the Copyright Records if they had taken Plaintiff's deposition, and that Defendants "chose not to engage in discovery." (Resp. at 6). This argument is meritless. Defendants did not "choose not to engage in discovery." Defendants timely served multiple sets of requests for production, interrogatories, and requests for admissions on Plaintiff, and timely

5

responded to Plaintiff's requests for production and interrogatories. It is Plaintiff who refused to produce relevant documents in response to discovery requests and pursuant to his obligations under Rule 26. Moreover, Plaintiff's willingness to sit for a deposition does not obligate Defendants to pursue that discovery method. Rather, "[a] party is free to make reasonable use of the various discovery devices provided by Rules 26 through 37 as he sees fit." *Kainz v. Anheuser-Busch, Inc.*, 15 F.R.D. 242, 248 (N.D. Ill. 1954); *cf. Imbody v. C & R Plating Corp.*, 2010 WL 567317, at *5 n.2 (N.D. Ind. Feb. 12, 2010); *see also PCM Leasing, Inc. v. BelGioioso Cheese, Inc.*, 2019 WL 4567576, at *3-4 (N.D. Ill. July 11, 2019) (no requirement for a party to depose witnesses); *Willis v. Sears Holdings Mgmt. Corp.*, 2012 WL 3915333, at *6 (N.D. Ill. Sept. 7, 2012) (party not required to take deposition to find out information required to be produced). It is the plaintiff's burden to prove its case and to supplement its discovery, and Plaintiff's argument seeks to impermissibly shift these burdens to Defendants.

Despite Plaintiff's contentions otherwise, Defendants do not argue that CMI must be included with the Copyright Office materials. As explained to the Court at the Hearing, Defendants "are not questioning the Court's ruling that plaintiff's Twitter handle and username constitutes CMI." (Tr. of Hearing, at 4). Rather, the Motion presents "the legal question of interpreting Section 1202(b) in the context of downloading a video directly from Twitter." (*Id.*). The Copyright Office records—which Plaintiff disclosed pursuant to Rule 26(a)(1), which Defendants requested in discovery, and which is the sole evidence establishing the scope of the copyright at issue—support Defendants' position that, when a video is downloaded directly from Twitter, the Twitter CMI does not download with it.

**B. The City Exercised Due Dilligence to Obtain the Copyright Office Records Prior to Summary Judgment.**

Plaintiff argues that "[t]he City failed to exercise due diligence by delaying its request for deposit materials until after discovery closed and by failing to depose Gwinn to address alleged uncertainties." (Resp. at 7). This argument is unfounded and again demonstrates a misunderstanding of parties' discovery obligations.

6

First, Plaintiff cannot in good faith argue that Defendants failed to exercise due diligence. The City did not "delay its request for deposit materials until after discovery closed" as Plaintiff contends. As explained above, Defendants made several timely discovery requests for the Copyright Records. When Plaintiff failed to produce any Copyright Records—despite disclosing their existence in his initial disclosures—Defendants immediately sought the Copyright Records from the Copyright Office directly at their own expense. And, to be clear, Plaintiff's "duty to supplement is automatic," and Defendants "were not obligated to make supplemental discovery requests." *United States v. Dish Network, LLC*, 2016 WL 29244, at * (C.D. Ill. Jan. 4, 2016); *see also Gonzalez v. Rodgers*, 2011 WL 5040673, at *7 (N.D. Ind. Oct. 24, 2011) ("Defendants are not obligated to provide supplemental discovery requests to trigger [the plaintiff's] duty to supplement."). The bottom line is that Defendants diligently sought the Copyright Records; Plaintiff refused to produce them.

Plaintiff's sole reliance on *Kough v. Teamsters' Local 301 Pension Plan*, 2008 WL 351859, 2008 U.S. Dist. LEXIS 10037, at *6 (N.D. Ill. Feb. 8, 2008), is not persuasive. In *Kough*, the Rule 60(b)(2) movant failed to request the evidence at issue, thus leading the court to note that "it seems as though the information would have been eminently discoverable by Plaintiff, had he diligently sought it." 2008 WL 351859, at *2. Here, Defendants did in fact request the Copyright Records in various ways throughout discovery, but Plaintiff refused to produce them without justification. And, given that requesting the records from the Copyright Office directly came at a cost of $974.00, it's obvious why Defendants waited for Plaintiff to fulfil his discovery obligations and produce the records during discovery as required. When discovery closed and Plaintiff had still not provided any Copyright Records, Defendants immediately sought the records from the Copyright Office.

Plaintiff again asserts that "[t]he City chose not to depose Gwinn." (Resp. at 7). But, as already explained, this argument is without merit. *See Kainz*, 15 F.R.D. at 248 ("A party is free to make reasonable use of the various discovery devices provided by Rules 26

7

through 37 as he sees fit."); *Imbody*, 2010 WL 567317, at *5 n.2; *PCM*, 2019 WL 4567576, at *3-4; *Willis*, 2012 WL 3915333, at *6 (party not required to take deposition to find out information required to be produced). It is the plaintiff's burden to prove its case and to supplement its discovery, and Plaintiff's argument again seeks to impermissibly shift these burdens to Defendants. Moreover, Plaintiff could not have certified the records through deposition testimony—that could only happen by producing the true and accurate records deposited with the Copyright Office, which is exactly what Defendants requested from Plaintiff in discovery.

Plaintiff claims "there is simply no excuse for the City's failure to seek [the Copyright Records] sooner." (Resp. at 8). This distorts reality. There is no excuse for Plaintiff's failure to provide critical evidence within his possession that was requested by Defendants during discovery. Defendants were diligent. *See, e.g.*, *Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir. 1986) (movant "must show that her lack of knowledge was not due to her lack of diligence"). The Court should reject Plaintiff's attempts to distract from the fact that Defendants sought the Copyright Records from Plaintiff directly in discovery. Plaintiff refused to produce them, but Defendants were nonetheless diligent.

### C. The Deposit Materials are Not Merely Cumulative or Impeaching.

Plaintiff argues that "[t]he deposit materials are merely cumulative and provide no new information beyond what was already disclosed by Gwinn." (Resp. at 8). First, as explained above, the Copyright Records were not in Defendants' possession during discovery, despite Plaintiff's contentions otherwise. *See* (Resp. at 8). The Court should reject Plaintiff's attempted rewriting of the history of this case. It is dishonest and nothing more than a dilatory tactic.

Second, the Copyright Records cannot be said to be merely cumulative or merely impeaching. *See Fields v. City of Chi.*, 981 F.3d 534, 555 (7th Cir. 2020) (affirming "that although the evidence could be impeaching, it could not be considered *merely* impeaching") (emphasis in original). Sure, they could be considered cumulative and could be used for impeachment of Plaintiff, but that is not all. The Copyright Records establish

8

the scope of the copyright that is the center of this lawsuit, help rebut Plaintiff's DMCA theory, negate any alleged willfulness by Defendants, and, further, expose the misrepresentations and omissions as to the work at issue that have permeated the discovery and summary judgment processes in this case. These are adequate grounds for a Rule 60(b)(2) motion. *See id.* (collecting cases); *see also* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2859, n.13 (Rule 60(b)(2) appropriate "when the newly discovered evidence calls into question the validity of the judgment by directly refuting the underpinnings of the theory which prevailed") (collecting cases).

Plaintiff again tries to district the Court by incorrectly asserting that there are no differences between the Copyright Records and GWINN 0001. As explained at the Hearing, because of Plaintiff's failures to attach a copy of the actual work to his complaint or to provide the certified materials requested, Defendants "were unable to know the scope of the copyright that applies to the video footage" at issue. (Tr. of Hearing, at 3). These certified records support Defendants' argument that the Twitter CMI is not conveyed in connection with the video when the video is viewed outside the very narrow circumstances of the tweet itself. This is a function of Twitter, not a DMCA violation.

Moreover, Plaintiff's contentions regarding "similar evidence" should be rejected. Plaintiff cites *FTC v. GT, Inc.*, 249 F.R.D. 305 (N.D. Ill. 2008), which is unpersuasive as it was before the court on reconsideration of the defendants' motion to release frozen funds pursuant to the Federal Trade Commission Act. The *FTC* court noted that the consequences of the new evidence were irrelevant to the underlying issue of whether the defendants were "entitled to the interest from the funds." *Id*. at 310. Here, the certified Copyright Records are relevant to the issue of whether the video footage actually contains CMI outside the context of the tweet. Beyond that, it is the only evidence in this case that can adequately establish the copyrighted work at issue and the scope of the copyright. The Court should recognize that Plaintiff has been intentionally misleading as to what constitutes the work at issue, as explained above. Plus, recall that Plaintiff asserted he was "not in possession of any documents responsive to" Defendants' requests for "[a] copy of

9

the application that plaintiff filed in the U.S. Copyright Office for the 'Work' that resulted in Copyright Reg. No. PA 2-255-761" and "[c]opies of all documents and communications sent by plaintiff to the U.S. Copyright Office in connection with plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." (Dkt. 63-1 at RFP Nos. 1, 3). The Copyright Records are critical to this case for several reasons; they are not merely cumulative or merely impeaching.

> D. **The Copyright Records are Material and Support Defendants' Argument that Plaintiff's Twitter CMI Does Not Attach to the Video Footage when Viewed Outside of the Tweet.**

Plaintiff argues, without any authority in support, that the Copyright Records are "not material to the claims in this case." (Resp. at 9). This is a shocking assertion. The Copyright Records are plainly material to this copyright case because "the scope of the copyright is limited by the deposit copy." *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020). Moreover, a copyright registration is "a prerequisite for bringing a 'civil action for infringement' of the copyrighted work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022). "To obtain copyright registration, the author of a work must submit to the Register or Copyrights a copy of the work and an application." *Id*. Copyright registration records are thus clearly material. Plaintiff, however, asserted in discovery that he was "not in possession of any documents responsive to" Defendants' requests for "[a] copy of the application that plaintiff filed in the U.S. Copyright Office for the 'Work' that resulted in Copyright Reg. No. PA 2-255-761" and "[c]opies of all documents and communications sent by plaintiff to the U.S. Copyright Office in connection with plaintiff's copyright application for the 'Work' and Reg. No. PA 2-255-761." (Dkt. 63-1 at RFP Nos. 1, 3). The Copyright Records are material because they affirmatively show that the video footage does not contain any additional CMI outside of Plaintiff's Twitter handle and username. Defendants explained this to the Court at the Hearing which Plaintiff did not attend. (Tr. of Hearing, at 4-5).

The Copyright Records are material and raise the question of whether § 1202(b) imposes an obligation to *add* CMI to a work that otherwise does not have any. The DMCA prohibits the intentional removal or alteration of any CMI, as well as the distribution of CMI while knowing the CMI had been removed or altered. 17 U.S.C. § 1202(b). The DMCA does not, however, apply to the omission of CMI. *See, e.g.*, *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) ("The DMCA 'does not prohibit merely omitting CMI from an infringing work.'"); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part and rev'd in part on other grounds*, 280 F.3d 934 (9th Cir. 2002) ("[R]emoving Plaintiff's images from the context of Plaintiff's Web sites where their CMI was located, and converting them to thumbnails in Defendant's index failed to show that Defendant's actions were intentional, rather than merely an unintended side effect.") (cleaned up)); *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) (finding "the plain language of [§ 1202(b)] encompasses only removal and alteration," and does not extend to "omissions" of CMI). Further, the DMCA does not require a user of a copyrighted work to add CMI if the work does not contain any; it only protects CMI from falsification, removal, or alteration if CMI is provided in the first place. *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1199 (C.D. Cal. 2007). Plaintiff has not presented any persuasive authority to the contrary.

Defendants argued on summary judgment that the City downloaded a video from an unknown Twitter account and used the video exactly as downloaded—without any CMI attached. Indeed, when a video is downloaded from Twitter, the user's Twitter handle and username are not downloaded with the video in the same way that the information is displayed in the tweet itself. Although the Court found that Plaintiff's Twitter handle and username qualified as CMI and that "the City admits that it accessed the Work from Twitter and added the work to the Compilation without attribution to Gwinn," (Dkt. 55 at 15), this does not mean that the Work itself contained CMI, nor that the City removed any CMI from the Work. *See Bell v. Milwaukee Bd. of Sch. Directors,* 2022 WL 18276966, at

11

*7 (E.D. Wis. Dec. 21, 2022) ("[T]he lack of CMI on a copy of a work does not imply that CMI was affixed to the original and was later removed without permission of the author or the law."); *see also Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 903 (D. Ariz. 2019) (granting summary judgment for defendants where defendants "received the images without the signature and copyright symbol on them" and therefore could not have removed CMI). The City used the work exactly as downloaded—without CMI. The Copyright Records are material to show that the City did not violate § 1202(b).

### E. The Copyright Office Records Would Have Produced a Different Result by Allowing Defendants to Demonstrate to the Court how CMI Does Not Attach to Video Footage when Viewed Outside of the Framing of the Tweet.

Finally, Plaintiff argues that the Copyright Records "would not change the outcome" because the Copyright Records do "not change the fact that Gwinn's username appeared in connection with the Work, or that the City removed that attribution from the Work when it reproduced, displayed, and distributed it without authorization to do so." (Resp. at 11). Plaintiff is wrong. The Copyright Records are material and help show that there is a material dispute of fact as to whether the City "stripped the Work of CMI when its employees inserted the Work into the Compilation" and whether these actions were intentional. *See* (Dkt. 55 at 16).

If Defendants had taken a screenshot of Plaintiff's tweet containing the video footage, then had cropped that screenshot to exclude Plaintiff's username and handle, *that* conduct would constitute the intentional removal of CMI in violation of § 1202(b). That is not what happened here. The evidence shows that the City downloaded the video from an unknown Twitter account (not necessarily Plaintiff's tweet) and used the video exactly as downloaded—without CMI attached or conveyed in connection with the video. The City has argued repeatedly that there is no evidence to suggest that a Twitter user's name and handle remain attached to video footage when footage is downloaded from a tweet. The Copyright Records support this argument, as the deposit shows the registered work standing alone outside the context of the tweet. At the very least, the Copyright

12

Records pose a genuine dispute of material fact as to whether the video footage as downloaded from Twitter contained any CMI such that the Defendants could have intentionally removed or altered CMI in violation of § 1202(b). The sole reason Defendants were not in possession of the relevant, material, and admissible Copyright Records during discovery is because Plaintiff unjustifiably refused to produce them.

Plaintiff splits hairs over the definition of embedding without acknowledging the factual similarities between this case and *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022). *Logan* is useful here because, in addition to the other similar facts, the embedding procedure discussed therein is analogous to how Defendants downloaded the video footage from Plaintiff's tweet. Like in *Logan*, the omission of the Twitter CMI by downloading the video footage out of the full context of the tweet cannot establish a DMCA violation. *See id.* at 1064 ("Unlike editing a plaintiff's watermark out of a photo, automatically omitting CMI by embedding a photo out of the full context of the webpage where the CMI is found cannot itself plead intentionality as required by the DMCA."); *see also id.* (citing *Kelly*, 77 F. Supp. 2d at 1122 ("[R]emov[ing] Plaintiff's images from the context of Plaintiff's Web sites where their [CMI] was located, and convert[ing] them to thumbnails in Defendant's index . . . [failed to] show[] [that] Defendant's actions were intentional, rather than merely an unintended side effect . . .")). The Copyright Records help illustrate to the Court the way the video footage exists outside the context of the tweet after download, just like the *Logan* defendants established how the plaintiff's photographs existed outside of Wikimedia after being embedded. The Copyright Records are critically important to this case and, if Plaintiff had produced them in discovery as requested, would have altered the outcome of Count II.

## CONCLUSION

Defendants understand that relief under Rule 60(b)(2) is an extraordinary remedy. But it is a warranted remedy here. Plaintiff has continually mischaracterized and misrepresented to the Court exactly what constitutes the work at issue in this copyright case. By refusing to produce the Copyright Records despite being in Plaintiff's possession,

13

Plaintiff inhibited Defendants' arguments at summary judgment and prevented the true context of the case from being adequately explored.

The City did not intentionally remove or alter any CMI from the video footage it downloaded because the downloaded footage did not contain the Twitter CMI or any other CMI. The City did not and could not have violated § 1202(b) under these circumstances, and thus the City respectfully asks the Court to grant its Motion to Vacate and Amend, (Dkt. 62).

DATED: August 20, 2025　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**CITY OF CHICAGO and DAVID O'NEAL BROWN**

　　　　　　　　　　　　　　　　　　　　By: */s/ Sophie E. Honeyman*
　　　　　　　　　　　　　　　　　　　　One of Their Attorneys

Joseph F. Schmidt (ARDC # 2492180)
Sophie E. Honeyman (ARDC # 6343417)
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr., Ste. 2600
Chicago, Illinois 606061
(312) 527-4000
jschmidt@taftlaw.com
shoneyman@taftlaw.com

*Counsel for Defendants City of Chicago and David O'Neal Brown*

175247715v1

14