# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

## CASE NO.: 1:23-CV-01823-JD

DOMINIC GWINN,

                Plaintiff,

v.

CITY OF CHICAGO AND DAVID O'NEAL
BROWN,

                Defendants.

_____

## PLAINTIFF'S POST-TRIAL MOTION FOR ATTORNEY'S FEES AND COSTS OF LITIGATION PURSUANT TO 17 U.S.C. §§ 505 AND 1203 AND PRE-JUDGMENT INTEREST AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Facts .......................................................................................................................... 2

III.    ARGUMENT ............................................................................................................ 3

   a.   Standard for Awards of Attorneys' Fees ................................................................ 3

   b.   Gwinn is the Prevailing Party. ............................................................................... 4

   c.   The *Fogerty* Factors Support an Award of Attorney's Fees to Gwinn. ............... 5

      1.    Frivolousness or The Degree of Success in the Litigation ............................. 5

      2.    Motivation in Filing or Contesting the Action ............................................... 5

      3.    Objective Unreasonableness ........................................................................... 9

      4.    Compensation and Deterrence ...................................................................... 10

   d.   The Requested Fees are Appropriate Under the Lodestar Analysis. .................... 11

IV.     Gwinn is Entitled to Pre-Judgment Interest due to the City's Willful Violations of Federal
        Law. ......................................................................................................................... 13

V.      Conclusion ............................................................................................................... 15

Pursuant to 17 U.S.C. §§ 505 and 1203, Fed. R. Civ. P. 54(d) and Local Rule 54.3, Plaintiff DOMINIC GWINN ("Gwinn") respectfully submits this Memorandum of Law in support of his motion for an award of attorney's fees and costs in this action.

## I. INTRODUCTION

The Copyright Act provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The work at issue in this case was registered on September 10, 2020, with an effective date of July 28, 2020 and therefore qualifies for an award of attorneys' fees because the "registration [was] made within three months after the first publication of the work." 17 U.S.C. § 412(2).

The DMCA provides that "[i]n an action brought under [section 1202], the court . . . (4) in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof; (5) in its discretion may award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 1203(b)(4) and (5). Registration is not required for an award of fees under the DMCA.

Gwinn prevailed on summary judgment. (DE 55). At a trial on damages, the jury determined that the defendants acted willfully both in infringing Gwinn's copyright and in violating the DMCA, and awarded plaintiff a total of $147,500, well above the minimums and into the range of willful statutory damages. (DE 96).

The law requires this court to make a particularized assessment to determine whether to award fees based on the totality of circumstances. That assessment considers frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance

considerations of compensation and deterrence. All four factors favor an award of attorneys' fees

to Gwinn. Gwinn should also be awarded pre-judgment interest at the prime rate on the Jury's

award from the date the infringement began on July 20, 2020, through the date of the judgment.

## II.        FACTS

On July 17, 2020, at approximately 7:00 p.m., Gwinn captured a video in Grant Park

depicting a violent clash between protestors and the Chicago Police Department. Protestors

threw frozen water bottles, sharpened poles, and fireworks at officers. Gwinn positioned himself

in harm's way to document the events. CPD retreated and soon returned with pepper spray and

sprayed everyone including Gwinn.

Three days later, on July 20, 2020 at 10:00 am, Superintendent David O'Neal Brown held

a press conference about the incident where a compilation video was shown. The compilation

included virtually the entirety of Gwinn's Work. The City never requested authorization from

Gwinn. The City then distributed Gwinn's Work to over 430 media contacts by email and also

uploaded Gwinn's work to the CPD's official YouTube, Facebook, and X (formerly Twitter)

accounts. Gwinn's Work was also posted on the Superintendent's personal Twitter account

where it can still be seen at https://x.com/ChiefDavidBrown/status/1285263026304675840.

Gwinn registered the copyright in his Work and retained Evan Andersen as counsel. See,

*Declaration of Evan A. Andersen*, attached as Exhibit 1 (the "Andersen Decl.") at ¶ 3.  On

September 22, 2020, Andersen, who practiced as "Pixel IP," sent a six-page notice and demand

letter to the City laying out Gwinn's claims. *Id*. at ¶ 4.  The City responded on December 16,

2020. *Id*. at ¶ 5.  While the City admitted it lacked permission from Gwinn to use the Work, it

questioned whether the display of Gwinn's name and username on Twitter established

ownership, and claimed the City was entitled to a defense of fair use despite Gwinn's continued efforts to clarify the law on these unsupported positions. *Id.* at ¶ 6.

So began what eventually turned into almost three years of fruitless negotiation with the City, at the end of which Gwinn filed suit in March of 2023. *Id*. During litigation the City continued to maintain the same positions as previously. The City failed to engage in meaningful discovery and provided no evidence in support of its defenses.

Pursuant to the Court's order to meet and confer before summary judgment, on April 2, 2024, Gwinn's counsel again detailed – through written correspondence – why the City's legal theories were inapplicable and unsupported. *Id*. at ¶ 9. The City offered no meaningful response, no factual explanation, and little legal authority supporting its position.

Following the close of discovery, on April 24, 2024, both Gwinn and the City moved for summary judgment. On March 31, 2025, the Court granted Gwinn's motion for summary judgment on his claims against the City for (1) copyright infringement and (2) violations of the DMCA. On September 16, 2025, a jury trial on the issue of damages commenced. (DE 95). The following day, the jury returned a verdict in favor of Gwinn, finding that the City's infringement was willful and that the City was not innocent but willful, with respect to its DMCA violations, and awarded Gwinn a total of $147,500 in damages. (DE 96). The jury awarded statutory damages in the amount of $107,500 for Gwinn's copyright infringement claim, and $40,000 for Gwinn's § 1202 claims. The total verdict of $147,500 is roughly *30 times* the highest amount defendants offered prior to litigation.

### III.     ARGUMENT

#### a.     Standard for Awards of Attorneys' Fees

The Copyright Act permits an award of "reasonable attorney's fees to the prevailing

party" in copyright infringement cases in the district court's discretion. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). A discretionary award of attorney's fees may be awarded the prevailing party under claims for violations of 17 U.S.C. § 1202. 17 U.S.C. § 1203(b)(5).

District courts must make a particular case-by-case assessment to determine whether to award fees based on the totality of circumstances.[1] *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016). Whether to award fees is determined by considering four factors: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirstaeng*, citing *Fogerty*, 510 U.S. at 534, n. 19 (1994). While all four factors are relevant, "substantial weight" should be given to "the objective (un)reasonableness of [the] losing party's litigating position." *Kirtsaeng*, 579 U.S. at 210. "'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations . . . identified.'" *Fogerty*, 510 U.S. at 534, quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436-437 (1983).

### b. Gwinn is the Prevailing Party.

Here, because the Court entered judgment against the City on all counts of the Complaint and the legal relationship between the parties changed, Gwinn is the prevailing party in this matter. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) ("to qualify as a prevailing party, a plaintiff must demonstrate a change in the legal relationship between itself and the defendant arising from the resolution of the lawsuit").

---

[1] "[D]istrict courts may consider any factor that advances the Copyright Act's purposes." *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 631 (7th Cir. 2023).

c. **The *Fogerty* Factors Support an Award of Attorney's Fees to Gwinn.**

1. **Frivolousness or The Degree of Success in the Litigation**

Actual success in an infringement action involves establishing the defendant's liability. See *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't,* 447 F.3d 769, 787 (9th Cir. 2006) (affirming an award of fees under the appropriate factors and noting that a "plaintiff will ordinarily be regarded as the prevailing party if he succeeds . . . in establishing the defendant's liability, even if the damages awarded are nominal or nothing"). Gwinn established the defendants' liability even before trial on summary judgment. (DE 55).

Taking on the Chicago Police Department took guts. The degree of Gwinn's success here easily satisfies this factor. Even a nominal jury award satisfies this factor. See, e.g., *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) (reversing a denial of fees and awarding fees to the prevailing plaintiff who received the minimum statutory damage amount of $750 for non-willful copyright infringement). "Importantly, 'the loser's conduct need not be "sanctionable" for the winner to be entitled to attorney's fees.'" *Life Face on Web,* 77 F.4th at 634 (quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008)).

2. **Motivation in Filing or Contesting the Action**

This factor looks at whether the losing party's motivation in filing or contesting the action was questionable. *Live Face on Web*, 77 F.4th at 634. Gwinn's motivation was straightforward: Gwinn was motivated to enforce and protect his exclusive rights in his creative work and to ensure that powerful entities–like the City of Chicago–cannot run roughshod over the rights of independent journalists without consequence. The Copyright Act's protections from infringement are designed to encourage creative expression, reward authors, and promote

innovation. Gwinn's motives were consistent with the purposes of copyright.

Gwinn's motives were also consistent with the purposes of the DMCA. 17 U.S.C. § 1202(b) prohibits the removal CMI—the title, author, copyright holder, and other identifying information about a work—conveyed in connection with a copy of the work. This Court analogized Gwinn's CMI on his Tweet to "gutter credit" because both are "information conveyed in connection with copies" of a work. *Gwinn v. City of Chi.*, No. 23 CV 1823, 2025 LX 17472, 2025 U.S.P.Q.2D (BNA) 567, 2025 WL 9640892025, 2025 U.S. Dist. LEXIS 60499 at *17, ECF 55 at 14 (N.D. Ill. Mar. 31, 2025) (citing *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) and *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020)) and observing that "[n]othing requires the CMI be affixed to, as opposed to appearing near, a copy of a work," and that "courts considering the issue have held that photo credits printed near a photograph (known as 'gutter credits') qualify as CMI.") Gwinn's motive was to protect his attribution so that he would be recognized as the creator of the work, not CPD.

The City could have settled early and reasonably. Instead, the City multiplied the litigation. Why the City fought so hard on this and other points is unknown.[2] The City took the position that all four fair use factors supported its fair use defense. (ECF 32 at 6-10). The City also added a fifth factor: public interest. (ECF 32 at 10-11).

This Court disagreed. As to the first factor, "the reasons for, and nature of, the copier's use of an original work," this Court determined that the work was "news footage of the events of June 17, 2020" and that "its purpose and character was to inform an audience about the events it depicts," which was the same purpose CPD and Brown used the work, to "inform, report, and

---

[2] For example, the motion for reconsideration the City filed at ECF 62 was unnecessary and a waste of the Court's time. The motion misunderstood the facts by claiming that Gwinn "did not copyright the tweet itself," but rather registered the video. The video was the point.

provide official commentary" on the events depicted in the Work. ECF 55 at 6.

As to the second factor, this Court found that Gwinn's factual work weighed in favor of fair use. ECF 55 at 9. While Gwinn took at different position, Gwinn agreed that the work was "more factual than creative." ECF 47 at 9.

On the third factor concerning the amount of the work used, this Court found that the defendants' use "of all but six seconds of Gwinn's footage" "weighs against a finding of fair use." ECF 55 at 9. The City disagreed claiming the use of all of Gwinn's footage "was wholly reasonable given the purpose of such use, which was to educate the public, provide official police commentary, and offer transparency and news reporting on dangerous protesting trends." ECF 32 at 9. This Court however correctly noted that "[w]hen the purpose of the use and the purpose of the work are the same, as they are here, there is no justification for making an entire copy of the work, and this factor cuts against fair use." ECF 32 at 10.

The City's position on the fourth factor—market effect—was "that no market even existed for Plaintiff's Work." ECF 32 at 10. Here is where the City's hypocrisy becomes apparent. During voir dire one potential juror after another was asked where they obtained their news, and one after another answered "from social media." Where did Gwinn post the work? Social media, specifically Twitter. Where did CPD post its appropriated compilation video? Social media. Where did Gwinn's potential licensees contact him to ask about licensing? Social media. Where could you find Gwinn's work after CPD sent it freely to its 430 media contacts? Social media. And where can it still be found? All over social media, including on former Commissioner Brown's Twitter feed.

On summary judgment, this Court found the fourth factor neutral due to a lack of evidence from either side:

> Neither side places before the Court follow-up evidence as to why none of the
> potential licenses turned into executed licenses. Without an evidence-based
> explanation, the Court is left with post hoc argumentation—that because
> Gwinn's failure to license came after the press conference, his failure to license
> is because of the press conference. The defendants have also failed to
> demonstrate their case: without additional evidence, a lack of sales by Gwinn
> could demonstrate a lack of market for the Work, or the complete destruction
> of that market by the defendants' copying. Because the parties' arguments are
> made in the absence of evidence, the Court is unable to judge who is correct.
> The Court thus finds that this factor is neutral.

ECF 55 at 11.

At trial, Gwinn told the story of market impact clearly. He referenced the "around 430,
maybe a little more, maybe a little less" media outlets that the City sent his work to including
"Fox affiliates here in Chicago, CNN, ABC, NBC, WGN, CBS, and those are just some of the
ones I can remember off my head," all of which contacted Gwinn about licensing prior to the
Chicago Police Department press conference. None of those outlets needed to purchase a license
because CPD gave them the work for free. Those media outlets used Gwinn's work, but none of
them attributed the work to Gwinn, rather all gave attribution to CPD.

Gwinn explained the market impact to the Judge and Jury:

> Aside from having to sue the Chicago Police Department, which is not
> something I would have ever thought I would have to do, let alone recommend
> for anybody, it negatively impacted my ability to do my work, not just my
> mental health, the stress that is involved in carrying on a five year copyright
> case against one of the largest police departments in America.
>
> I am kind of forced to just do this because no one else has ever had to do this,
> no other journalist has had to put themselves in the position that I am in. This
> is my work, this is what I do, this is how I make a living. I have to be there,
> whether it is dangerous or not dangerous, there is what I do for my work, and
> the Chicago Police Department stole it.
>
> I can't put this in my portfolio. I can't tell people that this is one of the
> quintessential things that went around the world that I took. This is something
> that I can't tell my clients, editors, sources, that not only do I know how to do
> my job, but you have seen my work before. And as a result of that, people
> might say that I am lying, and then I have to go and I have to produce a

copyright document, I have to produce the original work. No one wants to be that guy that says, actually, I did this. You sound like a jerk.[3]

The jury did the math. Willfully copying and distributing Gwinn's work to 430 media outlets deprived Gwinn of over a hundred thousand dollars in licensing revenue. Willfully stripping out Gwinn's attribution deprived Gwinn of the credit for the work he deserved to get.

What could have been a career-defining work, providing both financial return and professional recognition, was rendered commercially worthless. Gwinn's authorship was erased, his credit ignored, and his opportunity to build his reputation as a freelance journalist irreparably damaged. The City's motivation was improper, exploitative, and fundamentally inconsistent with the purposes of the Copyright Act.

### 3.        Objective Unreasonableness

The City's litigation posture was objectively unreasonable. Prior to filing suit, Gwinn's counsel presented the City with a detailed explanation of why its conduct violated the Copyright Act and the DMCA, along with supporting case law. The City responded by continuing to pursue fair use and innocent infringement. This Court's ruling against the City stopped further fair use defense arguments, but the innocent infringement arguments continued all the way through the jury's verdict. There were no facts supporting innocent infringement, the City did minimal discovery and therefore found no facts supporting innocence in discovery, and no facts materialized thereafter.

The City's claim of innocence was contradicted by the fact that the City had direct notice of Gwinn's authorship and lack of authorization, yet it used, displayed, and distributed Gwinn's Work without permission anyway. The City received notice from Gwinn himself soon after the infringement began but the City ignored it. The jury ultimately found the infringement was

---

[3] Quotation is from the rough transcript of the afternoon of day one of the trial.

willful – an explicit rejection of the City's claimed innocence.

The City's conduct in avoiding settlement efforts further underscores its unreasonableness. On multiple occasions, Gwinn offered to settle pre-suit, but the City never made a reasonable offer. After losing on summary judgment as to liability, the City had the opportunity to make a reasonable offer that reflected its exposure. Instead, it waited until five days before trial to make an offer that was below the range of willfulness for statutory damages. The jury's ultimate award of $147,500 was just 1% less than Gwinn's pre-suit demand to the City, and nearly identical to Gwinn's offer from his initial letter almost five years prior to the trial. City's unreasonable positions caused the parties to spend resources on the litigation.

Even after trial, the City's conduct demonstrated unreasonableness. Defendant David O'Neal Brown continues to display Gwinn's Work on his personal X account to this day, despite the jury's verdict and judgment. The City took no action to ensure removal of the infringing material from Defendant David O'Neal Brown's X account. When a municipality with a full legal department ignores judicial rulings, disregards established case law, and maintains meritless defenses through trial, its conduct cannot be described as anything other than objectively unreasonable. This factor weighs heavily in favor of awarding fees.

### 4. Compensation and Deterrence

The compensation and deterrence factor "cares not only about the deterrent effects of awarding fees, but the effects of *not* awarding fees, too." *Live Face on Web,* 77 F.4th at 635. The City should be deterred from future reliance on baseless defenses, ignoring clear precedent, and continuing to infringe even after notice, summary judgment, and a jury verdict. With a full legal department at its disposal, the City could have quickly determined that its defenses were unsupportable, yet it chose instead to press forward and force Gwinn to shoulder years of

unnecessary litigation. Its refusal to cease infringing – even now– underscores the risk that, absent a fee award, the City and others like it will continue to treat creative works as free for the taking. A strong message must be sent that willful blindness and post-verdict infringement will not be tolerated.

Awarding attorneys' fees "enables people to vindicate or defend their rights where it would otherwise be uneconomical to do so." *Fogerty*, 510 U.S. at 529. That principle applies squarely here. Gwinn, an independent freelance journalist, spent more than five years litigating this case against the third-largest city in America. Even after prevailing at every stage, he cannot be made whole without a fee award. Section 505 exists precisely to avoid such inequitable results, ensuring that copyright holders can defend their work without fear that litigation costs will swallow their recovery. Such is the case here.

### d. The Requested Fees are Appropriate Under the Lodestar Analysis.

A "reasonable fee" is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious… case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Determining a reasonable fee begins with calculating the product of "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This product has come to be known as the "lodestar." *Pienta v. Village of Schaumburg*, No. 81 C 1355, 1986 U.S. Dist. LEXIS 26524, at *2 (N.D. Ill. April 18, 1986). Courts operate under a "strong presumption" that the lodestar "represents a reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Gwinn's attorneys' qualifications and time expended are set forth in the accompanying Andersen Declaration.

a.  Joel Rothman is the managing partner of SRIPLAW with 35 years of experience including dozens of jury trials. Mr. Rothman graduated Cardozo School of Law in 1991. Mr. Rothman is a member of the trial bar of this district. Mr. Rothman is a former prosecutor and has tried dozens of cases to jury verdicts. Mr. Rothman is also an accomplished appellate attorney who appeared before the U.S. Supreme Court in on behalf of the petitioner in the copyright case *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U. S. 296 (2019). Mr. Rothman founded SRIPLAW in 2012. His billable rate prior to 2025 was $595 per hour. In 2025, Mr. Rothman's billable rate increased to $650 per hour. Rothman spent 176.7 hours on this case as detailed in the billing statements submitted.

b.  Evan A. Andersen graduated from the Wake Forest University School of Law in 2008. He worked both with a small copyright boutique firm and in his own solo practice focused on copyright law from 2009 through 2022. He joined SRIPLAW as a partner in 2022 and leads the copyright litigation group. His billable rate from 2020 through January 2022 at his own solo firm was $400 per hour. From January 2022 through January 2025, his billable rate at SRIPLAW was $450 per hour. In 2025, Mr. Andersen's billable rate increased to $550 per hour. Andersen spent 396.9 hours on this case in the primary role as detailed in the billing statements submitted.

c.  Anthony J. Underwood graduated law school St. Thomas University School of Law in 2023. He practiced with a firm in Miami, Florida for one year before joining SRIPLAW in November 2024. His billable rate is $375 per hour.

Underwood spent 109.4 hours on this case in a support role leading up to and including trial as detailed in the billing statements submitted.

d. Christina Tcacisina is a paralegal who worked with SRIPLAW during part of the pendency of this case. She is a professional paralegal with seven years of experience, and her billing rate was $200.00 per hour.

e. Kelsey Davis is a paralegal who graduated from University of Mississippi School of Law in 2023. She is a professional paralegal with two years of experience as well as summer experience during her time in law school. She joined SRIPLAW as a paralegal in June 2025. Her billable rate is $250 per hour. The paralegal time included on the itemized billing statement for Gwinn's case totaled 25.9.

Andersen Decl. at ¶ 13. Fees for paralegal services are generally recoverable when attorney's fees are sought. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008).

As the parties were forced to obtain judgment through a jury verdict at trial, the tasks set forth on the attached billing statement are all appropriate for this litigation, and the hours spent performing the tasks are all reasonable.

The total lodestar amount is **$357,726.00.** Andersen Decl. at ¶ 11.

Additionally, Gwinn has incurred taxable costs totaling $5,203.67. Gwinn requests recovery of these costs, in addition to the attorneys' fees listed above.

**IV. GWINN IS ENTITLED TO PRE-JUDGMENT INTEREST DUE TO THE CITY'S WILLFUL VIOLATIONS OF FEDERAL LAW.**

"Prejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) (citing *Gorenstein Enterprises, Inc. v. Quality Care U.S.A., Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). Prejudgment interest serves to make the plaintiff whole and to deter defendants from delaying

13

payment. Courts recognize a strong presumption favoring prejudgment interest in cases involving willful violations of federal law because, without it, compensation is incomplete and defendants have an incentive to delay. See *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2022 U.S. Dist. LEXIS 52798, at *8-9 (N.D. Ill. Mar. 24, 2022) (awarding prejudgment interest on jury's verdict of statutory damages for copyright infringement).

There is no reason not to award prejudgment interest here, as a failure to do so would prevent Gwinn from being made whole, and would also make an adverse verdict against the City an attractive means of doing business if there is a long period of time from the wrongdoing to the verdict, such as occurred here. *See R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2005 U.S. Dist. LEXIS 3069, 2005 WL 293512, at *1 (N.D. Ill. Feb. 8, 2005) (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985)).

Gwinn expressly requested prejudgment interest in his Complaint. (DE 1 at 11). The jury found that the City's infringement was willful. (DE 96). These findings trigger the presumption that prejudgment interest is appropriate and necessary to ensure full compensation for the harm suffered. Awarding prejudgment interest also advances the remedial purposes of the Copyright Act by promoting timely, good-faith resolution of disputes. The City repeatedly refused to negotiate in good faith, rejecting multiple reasonable pre-suit offers that closely matched the jury's ultimate award after more than five years of litigation. Its delay imposed unnecessary cost and hardship on Gwinn, the very inequity prejudgment interest is designed to remedy.

Gwinn seeks prejudgment interest at the Prime Rate as calculated in the declaration of Evan Andersen. The amount of prejudgment interest from July 20, 2020, until the date of this motion is $47,012.09. For the Court's guidance in entering judgment, at the current Prime Rate of 7.25%, the interest on $147,500 accrues at approximately $29.29 per day, calculated using

14

simple interest.

## V.     CONCLUSION

Attorney's fees and costs under 17 U.S.C. §§ 505 and 1203 should be awarded plaintiff along with prejudgment interest.

DATED: October 8, 2025       Respectfully submitted,

*/s/ Evan A. Andersen*
EVAN A. ANDERSEN
Bar Number: GA 377422
evan.andersen@sriplaw.com
ANTHONY J. UNDERWOOD
Bar Number: 1056640 (FL) 041350 (TN)
anthony.underwood@sriplaw.com

**SRIPLAW, P. A.**
3355 Lenox Road NE, Suite 750
Atlanta, GA 30326
470.598.0800 – Telephone
561.404.4353 – Facsimile

And

JOEL B. ROTHMAN
Bar Number: FL 98220
joel@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road, Suite 100
Boca Raton, GA 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Dominic Gwinn*