**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CASE NO.: 1:23-cv-01823-JD**

DOMINIC GWINN,

                Plaintiff,

v.

CITY OF CHICAGO AND DAVID O'NEAL
BROWN

                Defendants.

_____

**<u>DECLARATION OF EVAN A. ANDERSEN</u>**

I, Evan A. Andersen, declare and say:

1.      I am a partner in the law firm of SRIPLAW, P.A., and counsel of record for

Plaintiff DOMINIC GWINN ("Gwinn") in this action. I previously practiced as a solo

practitioner before I joined SRIPLAW. When I joined SRIPLAW I brought this case with me to

this law firm.

2.      I submit this declaration in support of Plaintiff's Motion for Prejudgment Interest,

Attorney's Fees, and Costs. I have personal knowledge of the facts stated herein, and I could and

would testify competently to those facts if called as a witness.

3.      Gwinn engaged me to represent him on July 24, 2020. Attached hereto as **Exhibit**

**1** is the engagement letter between Gwinn and my prior firm. After I joined SRIPLAW, Gwinn

signed a new engagement letter with my new firm. Attached hereto as **Exhibit 2** is the

engagement letter between Gwinn and SRIPLAW.

4.      On September 22, 2020, I sent a letter on Gwinn's behalf to the City of Chicago

in an attempt to resolve Gwinn's infringement claim. A true and correct copy of that letter is

attached hereto as **Exhibit 3**. My letter detailed the circumstances of the infringement and the work at issue. My letter ended with a demand that I believed at that time reasonably estimated the City's liability.

5.      On December 16, 2020, Chirstina Chung, Assistant Corporation Counsel of the City responded to my letter. A true and correct copy of the City's response is attached hereto as **Exhibit 4**. In the letter, the City denied liability and refused to make any offer relying instead on a fair use argument to absolve itself of all liability.

6.      Over the next two years, I attempted numerous times to get Ms. Chung and the City to recognize that the City was liable for infringement and DMCA violations. Our correspondence was extensive. True and correct copies of those communications are attached hereto under **Exhibit 5** and indexed for the Court's convenience.

7.      Throughout the course of the parties' settlement discussions, the City maintained that its use of Mr. Gwinn's Work constituted fair use, further claimed that any infringement was innocent, and maintained that the Gwinn's damages would be reduced based on the City's innocence. My correspondence with the City repeatedly explained the facts and law showing why the City's positions were unreasonable and not supported by the facts or the law.

8.      The City never offered Gwinn any more than $5,000 in settlement prior to filing suit. In discussions with Gwinn prior to filing suit he authorized me to demand $149,000 in settlement which was the lowest amount Mr. Gwinn would accept pre-suit. The City did not accept or respond to that demand.

9.      After the lawsuit was filed I continued to pursue settlement with the City in good faith but the City refused to engage in any further discussions regarding resolution. For example, in the Joint Status Report filed on January 22, 2024 [DE 25], Gwinn notified the Court that he

was willing to refer the case to a magistrate judge for a settlement conference. But Defendants refused to the conference stating that they did not "believe it would be productive at this time." On April 2, 2024, before the parties filed their motions for summary judgment, I sent a detailed letter to the City's counsel explaining why the City's positions on fair use and innocent infringement were not supported by the facts or the law. A true and correct copy of that letter is attached hereto as **Exhibit 6**. The City rejected my arguments and filed its motion for summary judgment without making any counteroffer.

10.     Even after this Court granted Gwinn's motion for summary judgment and rejected the motion for summary judgment filed by the City, the City made no further efforts to resolve this case and waited until the eve of trial in September 2025 to offer $30,000 in settlement. Gwinn rejected the offer and did not authorize a counter.

11.     Attached hereto as **Exhibit 7** is SRIPLAW's invoice in this matter that details the work I did as a solo practitioner and also the done by SRIPLAW and its employees in connection with this matter.

12.     Considerable time was spent investigating the factual circumstances of the matter, attempting to negotiate with the City of Chicago, and litigating this matter through summary judgment and a trial on damages.

13.     The following personnel worked on this case:

   a.   Joel B. Rothman. Mr. Rothman graduated Cardozo School of Law in 1991. Mr. Rothman is a member of the trial bar of this district. Mr. Rothman is a former prosecutor and has tried dozens of cases to jury verdicts. Mr. Rothman is also an accomplished appellate attorney who appeared before the U.S. Supreme Court in on behalf of the petitioner in the copyright case *Fourth Estate Public Benefit*

*Corp. v. Wall-Street.com, LLC*, 586 U. S. 296 (2019). Mr. Rothman founded SRIPLAW in 2012. His billable rate prior to 2025 was $595 per hour. In 2025, Mr. Rothman's billable rate increased to $650 per hour. Rothman spent 176.7 hours on this case as detailed in the billing statements submitted.

b.  Evan A. Andersen graduated from the Wake Forest University School of Law in 2008. He worked both with a small copyright boutique firm and in his own solo practice focused on copyright law from 2009 through 2022. He joined SRIPLAW as a partner in 2022 and leads the copyright litigation group. His billable rate from 2020 through January 2022 at his own solo firm was $400 per hour. From January 2022 through January 2025, his billable rate at SRIPLAW was $450 per hour. In 2025, Mr. Andersen's billable rate increased to $550 per hour. Andersen spent 396.9 hours on this case in the primary role as detailed in the billing statements submitted.

c.  A.J. Underwood graduated law school St. Thomas University School of Law in 2023. He practiced with a firm in Miami, Florida for one year before joining SRIPLAW in November 2024. His billable rate is $375 per hour. Underwood spent 109.4 hours on this case in a support role leading up to and including trial as detailed in the billing statements submitted.

d.  Christina Tcacisina is a paralegal who worked with SRIPLAW during part of the pendency of this case. She is a professional paralegal with seven years of experience, and her billing rate was $200.00 per hour.

e.  Kelsey Davis is a paralegal who graduated from University of Mississippi School of Law in 2023. She is a professional paralegal with two years of experience as

well as summer experience during her time in law school.  She joined SRIPLAW as a paralegal in June 2025.  Her billable rate is $250 per hour.

14.     Following the lodestar method of multiplying the per hour billing rate times the number of hours expended on the matter, the total amount of attorney's fees are **$357,726.00**.

15.     These fees are reasonable because they reflect the market rate for services of similar quality and nature in the local area.

16.     The proposed amount of prejudgment interest based on the Prime Rate calculated on the principal amount of $147,500.00 for the period from July 20, 2020 through the date of this motion is $47,012.09. For the Court's guidance in entering judgment, at the current Prime Rate of 7.25%, the interest on $147,500 accrues at approximately $29.29 per day, calculated using simple interest.

17.     Additional interest rate analysis can be provided to the Court at its request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on October 8, 2025.


                                        */s/ Evan A. Andersen*
                                        EVAN A. ANDERSEN

# Exhibit
# 1



### AGREEMENT FOR CONTINGENCY FEE LEGAL REPRESENTATION ("AGREEMENT")

**Dominic Gwinn** (referred to from this point on as "you" or "Client") and Evan Andersen Law, LLC (referred to from this point on as "we" "our" or "us") agree that we will represent you for any and all claims resulting from (or related to):

**Copyright Infringement (and related claims) of approximately one video by the Chicago Police Department (and possibly by other people or entities as future investigation may indicate)**

This Agreement will not take effect, and we will have no obligation to provide legal services, until you return a signed copy of this Agreement. You agree that at this point no other attorney or law firm is representing you in this claim. In addition, you have told us about any lawyers you may have hired and dismissed previously on this claim. We agree to represent you in your claim for damages as long as we believe your claim is viable. We may, but are not required to, represent you in litigation or for a lawsuit, but we first must agree to a new contract at a different and higher contingency rate. If you need other legal work unrelated to the above-identified claim, you must agree to a separate agreement with us to do that legal work. Only your above-identified damages claim is covered in this contract. This Agreement does not include defending you against, or representing you in any claims that may be asserted against you as a cross-claim or counter-claim in your case. By sending a cease & desist/demand letter for your claim, the opposing party may attempt to preempt your claim and file a declaratory judgment action in court. Please note that our firm may, but is not obligated to represent you in that action.

**You agree to pay to us as fee for this representation thirty-three and one-third percent (33 1/3%) of the gross amount (before anything is deducted) we recover for you for your claim.** This rate set forth above is not set by law, but is negotiable between an attorney and client. The gross amount recovered also shall include the reasonable value of any non-monetary proceeds.

You agree to assign us a lien (that is, admit that we have a legal right to pursue collection) against any money that is recovered or that may be recovered based on our handling of the claim. If we believe that you have a legitimate claim and that recovery of money for damages is likely, we may pay up front any costs involved in proceeding with your claim, such as travel (lodging; coach-level air fare; mid-sized rental car, taxi, and/or mileage; fuel; parking; and food stipend of $30/day, etc.), fees for mediators, copying records, and the like. **We will obtain consent from you before committing to or incurring any expenses beyond the costs to mail any letters.**

If you dismiss us or if we withdraw from representation, you still are responsible for reimbursing us for any out-of-pocket costs we have incurred for your claim, even if you do not recover any money in damages. If you dismiss us and you receive money damages or financial awards of any kind as a result of our work, we are entitled to all fees owed under this contract in an amount that is proportional to other efforts expended to recover those damages or awards.

CONTRACT FOR LEGAL REPRESENTATION
Evan Andersen Law, LLC
Page 2

If in our best judgment at any stage in the process we believe that a recovery is unlikely, you will be advised of this as soon as possible. We agree to do our best to obtain everything to which you are properly entitled. However, we cannot predict what the outcome will be and do not promise you any particular result or dollar amount of compensation.

For us to do our best for you, we need you to do for us:

- •     We need to know at all times where you can be reached.
- •     We need for you to always tell us the whole truth.
- •     We need for you to provide us with any documents we request from you.
- •     We need for you to follow any other reasonable instructions or requests

We agree not to compromise or settle your claim unless the compromise or settlement is first approved by you. You agree not to settle or enter into any negotiation for a settlement or resolution of your claim without the written consent of us. If you insist on negotiating on your own behalf, we will have the right to withdraw from representing you. We will give you an honest opinion at all times of the reasonableness of any offers made to you. If we tell you that the settlement offer you have received is a good one and you should accept it, and you refuse to take our advice, we will have the right to withdraw from continuing to represent you. You have the right at any time to provide us with written notice that you do not wish us to continue to represent you.

**A lawsuit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

**In the event of a loss, you may be liable for the opposing party's attorney's fees and costs.**

You also give us power of attorney to deposit any settlement or recovery into a trust account and make reasonable disbursements from that deposit.

Note that the Attorney/Client Privilege is a law that protects communications between attorneys and their clients to keep them confidential. This privilege encourages openness and honesty between attorneys and their clients because attorneys cannot reveal (and cannot be forced to reveal) attorney/client communications. This privilege becomes especially important in the litigation context because privileged communications, whether written or oral, are not disclosed to the opposing party. A waiver of the privilege may occur even though the client does not intend to waive the privilege. For example, if the client carelessly allows the information to be disclosed to others (*such as by telling friends, spouse, posting information on the Internet*) confidentiality will be lost, and a waiver will occur. Once the privilege has been waived, it is treated as a waiver for all purposes and an opposing party can force us to share our private communications. Please keep information about your matter confidential.

NOTICE TO PRESERVE DOCUMENTS AND DATA

Because litigation about your claim is possible, you now have a duty to preserve all evidence that may be relevant to your claim while this matter is pending. This duty of preservation extends to, but is not limited to, data files, e-mails, calendars, telephone logs, access lists, and logs that are located on your computer networks, e-mail servers, mainframes, individual computer workstations, and external drives, or are located on any of those devices within your control but not owned by you, such as your web host. This duty also extends to your employees and agents, so you should notify them immediately.

CONTRACT FOR LEGAL REPRESENTATION
Evan Andersen Law, LLC
Page 3

Sanctions for violating any of the foregoing duties can be severe and include monetary sanctions, adverse inferences in evidentiary rulings, and the entry of judgments by default. The above duties must be satisfied during any settlement or other discussions that we may have in case the matter proceeds further to litigation.

NOTICE TO CLIENT OF FIRM RECORD RETENTION & DESTRUCTION POLICY

At all times, all records and documents in our possession relating to your representation (including but not limited to those that exist in paper and electronic formats) are subject to the firm's Record Retention and Destruction Policy. Strict compliance with this policy is necessary to fulfill the firm's legal and ethical duties and obligations and to ensure that information and data relating to you and the legal services we provide are maintained in strict confidence at all times during and after the engagement. All client matter files are subject to these policies and procedures

At your request, at any time during the representation you may access or receive copies of any records or documents in our possession relating to the legal services being provided to you, excluding certain firm business or accounting records. We reserve the right, however, to retain originals or copies of any such records or documents as needed during the course of the representation.

Pursuant to the terms of our Record Retention and Destruction Policy, no further work will be performed on your behalf and your file will be closed at the completion of your legal matter. Your file then will be placed in storage and retained for seven (7) years, after which it will be destroyed. This includes all records and documents, regardless of format.

While we will apply our best efforts to maintain confidentiality and security over all file records and documents placed in storage, please be advised that our firm specifically disclaims any responsibility for claimed damages or liability arising from damage or destruction to such records and documents, whether caused by accident, natural disasters such as flood, fire, or wind damage, terrorist attacks, or the negligence of third-party providers engaged by our firm to store and retrieve records, to the extent allowed by law.

I/WE HAVE READ AND UNDERSTAND THIS CONTRACT AND AGREE TO ABIDE BY WHAT IT SAYS.

Dated: ___07/24/2020_____, 2020.    _____
                                        CLIENT


                                        /s/ *Evan A. Andersen*
                                        _____
                                        EVAN A. ANDERSEN, FOR
                                        EVAN ANDERSEN LAW, LLC

# Exhibit 2



Evan Andersen
Partner
Direct: 407.598.0800
evan.andersen@sriplaw.com

### A̲G̲R̲E̲E̲M̲E̲N̲T̲ ̲F̲O̲R̲ ̲C̲O̲N̲T̲I̲N̲G̲E̲N̲C̲Y̲ ̲F̲E̲E̲ ̲L̲E̲G̲A̲L̲ ̲R̲E̲P̲R̲E̲S̲E̲N̲T̲A̲T̲I̲O̲N̲ ̲("A̲G̲R̲E̲E̲M̲E̲N̲T̲")

**Dominic Gwinn** (referred to from this point on as "you" or "Client") and the SRIPLAW, P.A. (referred to from this point on as "we" "our" or "us") agree that we will represent you for any and all claims resulting from (or related to):

**Copyright Infringement (and related claims) of one video by Chicago Police Department (and possibly others as future investigation may indicate)**

as well as any additional claims mutually agreed-to in writing. This Agreement will not take effect, and we will have no obligation to provide legal services, until you return a signed copy of this Agreement. You agree that at this point no other attorney or law firm is representing you in this claim. In addition, you have told us about any lawyers you may have hired and dismissed previously on this claim. We agree to represent you in your claim for damages as long as we believe your claim is viable. We may, but are not required to, represent you in litigation or for a lawsuit, up to the point at which the court enters a judgment. If you do not agree with the court's judgment and wish to appeal, we are not required to represent you in the appeal. We may represent you for an appeal, but you must agree to a new contract with us first. If you need other legal work unrelated to the above-identified claim, you must agree to a separate agreement with us to do that legal work. Only your damages claim is covered in this contract. This Agreement does not include defending you against, or representing you in any claims that may be asserted against you as a cross-claim or counter-claim in your case. By sending a cease & desist/demand letter for your claim, the opposing party may attempt to preempt your claim and file a declaratory judgment action in court. Please note that our firm is not obligated to represent you in that action.

**You agree to pay to us as fee for this representation thirty-three and one-third percent (33 1/3%) of the gross amount (before anything is deducted) we recover for you for your claim before a lawsuit is filed. If you request and we agree with you** that filing a lawsuit is necessary and we recover money for you for your claim after a lawsuit is filed, we will receive 45% (instead of 33 1/3%) ("Contingency Fee") of the gross amount we recover. The rates set forth above are not set by law, but are negotiable between an attorney and client. The gross amount recovered also shall include the reasonable value of any non-monetary proceeds.

You agree to assign us a lien (that is, admit that we have a legal right to pursue collection) against any money that is recovered or that may be recovered based on our handling of the claim. If we believe that you have a legitimate claim and that recovery of money for damages is likely, we may pay up front any costs involved in proceeding with your claim, such as travel (lodging; coach-level air fare; mid-sized rental car, taxi, and/or mileage; fuel; parking; and food stipend of $30/day, etc.), fees for expert witnesses, copying records, court costs, and the like. We will obtain consent from you before committing to or incurring any expenses of over $100 each. You understand that a deposit for costs

CALIFORNIA
8730 Wilshire Boulevard
Suite 350
Beverly Hills, CA 90211

GEORGIA
12 Powder Springs St.
Suite 200
Marietta, GA 30064

FLORIDA
21301 Powerline Rd.
Suite 100
Boca Raton, FL 33433

TENNESSEE
818 18th Ave. S.
10th Floor
Nashville, TN 37203

NEW YORK
125 Maiden Lane
Suite 5C
New York, NY 10038

Main: 561.404.4350  |  Fax: 561.404.4353  |  www.sriplaw.com  |  info@sriplaw.com

April 1, 2022
Page 2

may be required before an expenditure is made by us and/or that you may be required to reimburse us within 30 days after an expenditure is made by us. We will hold deposits in a trust account. You authorize us to use that deposit to pay the costs, disbursements and other expenses incurred under this Agreement. Any remaining expenses we have paid or are obligated to pay with respect to your claim will be reimbursed to us out of your share of the money recovered by settlement or judgment.

We may employ technical experts and/or investigators as deemed necessary for your case. We are authorized to associate co-counsel on this matter for a percentage of the gross amount we recover, to be taken from our share of the recovery and without additional fee to you, such firm to accept joint responsibility for representing you.

If you dismiss us or if we withdraw from representation, you still are responsible for reimbursing us for any out-of-pocket costs we have incurred for your claim, even if you do not recover any money in damages. If you dismiss us and you receive money damages or financial awards of any kind as a result of our work, we are entitled to all fees owed under this contract in an amount that is proportional to other efforts expended to recover those damages or awards. In the event that any court awards attorney's fees after a lawsuit is filed, we will reduce the amount of Contingency Fee by 45% of the dollar amount awarded for attorney's fees. For example, if a court awards $1000 in attorney's fees, we will reduce the amount of the Contingency Fee by $450. In the event that any court awards costs of litigation after a lawsuit is filed, the amounts awarded will be dispersed to whomever initially paid for those costs.

If in our best judgment at any stage in the process we believe that a recovery is unlikely, you will be advised of this as soon as possible. We agree to do our best to obtain everything to which you are properly entitled. However, we cannot predict what the outcome will be and do not promise you any particular result or dollar amount of compensation.

For us to do our best for you, we need you to do for us:

- We need to know at all times where you can be reached.
- We need for you to appear when requested at conferences, depositions, and in court.
- We need for you to always tell us the whole truth.
- We need for you to provide us with any documents we request from you.
- We need for you to follow any other reasonable instructions or requests

We agree not to compromise or settle your claim unless the compromise or settlement is first approved by you. You agree not to settle or enter into any negotiation for a settlement or resolution of your claim without the written consent of us. If you insist on negotiating on your own behalf, we will have the right to withdraw from representing you. We will give you an honest opinion at all times of the reasonableness of any offers made to you. If we tell you that the settlement offer you have received is a good one and you should accept it, and you refuse to take our advice, we will have the right to withdraw from continuing to represent you. You have the right at any time to provide us with written notice that you do not wish us to continue to represent you.

| CALIFORNIA | GEORGIA | FLORIDA | TENNESSEE | NEW YORK |
|---|---|---|---|---|
| 8730 Wilshire Boulevard Suite 350 Beverly Hills, CA 90211 | 12 Powder Springs St. Suite 200 Marietta, GA 30064 | 21301 Powerline Rd. Suite 100 Boca Raton, FL 33433 | 818 18th Ave. S. 10th Floor Nashville, TN 37203 | 125 Maiden Lane Suite 5C New York, NY 10038 |

Main: 561.404.4350 | Fax: 561.404.4353 | www.sriplaw.com | info@sriplaw.com

April 1, 2022
Page 3

**A lawsuit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution of abuse of process. In the event of a loss, you may be liable for the opposing party's attorney's fees and costs.**

You also give us power of attorney to deposit any settlement or recovery and make reasonable disbursements from that deposit.

Note that the Attorney/Client Privilege is a law that protects communications between attorneys and their clients to keep them confidential. This privilege encourages openness and honesty between attorneys and their clients because attorneys cannot reveal (and cannot be forced to reveal) attorney/client communications. This privilege becomes especially important in the litigation context because privileged communications, whether written or oral, are not disclosed to the opposing party. A waiver of the privilege may occur even though the client does not intend to waive the privilege. For example, if the client carelessly allows the information to be disclosed to others (*such as by telling friends, spouse, posting information on the Internet*) confidentiality will be lost, and a waiver will occur. Once the privilege has been waived, it is treated as a waiver for all purposes and an opposing party can force us to share our private communications. Please keep information about your matter confidential.

NOTICE TO CLIENT OF FIRM RECORD RETENTION & DESTRUCTION POLICY

At all times, all records and documents in our possession relating to your representation (including but not limited to those that exist in paper and electronic formats) are subject to the firm's Record Retention and Destruction Policy. Strict compliance with this policy is necessary to fulfill the firm's legal and ethical duties and obligations and to ensure that information and data relating to you and the legal services we provide are maintained in strict confidence at all times during and after the engagement. All client matter files are subject to these policies and procedures

At your request, at any time during the representation you may access or receive copies of any records or documents in our possession relating to the legal services being provided to you, excluding certain firm business or accounting records. We reserve the right, however, to retain originals or copies of any such records or documents as needed during the course of the representation.

Pursuant to the terms of our Record Retention and Destruction Policy, no further work will be performed on your behalf and your file will be closed at the completion of your legal matter. Your file then will be placed in storage and retained for seven (7) years, after which it will be destroyed. This includes all records and documents, regardless of format.

While we will apply our best efforts to maintain confidentiality and security over all file records and documents placed in storage, please be advised that our firm specifically disclaims any responsibility for claimed damages or liability arising from damage or destruction to such records and documents, whether caused by accident, natural disasters such as flood, fire, or wind damage, terrorist attacks, or

| CALIFORNIA | GEORGIA | FLORIDA | TENNESSEE | NEW YORK |
|---|---|---|---|---|
| 8730 Wilshire Boulevard Suite 350 Beverly Hills, CA 90211 | 12 Powder Springs St. Suite 200 Marietta, GA 30064 | 21301 Powerline Rd. Suite 100 Boca Raton, FL 33433 | 818 18th Ave. S. 10th Floor Nashville, TN 37203 | 125 Maiden Lane Suite 5C New York, NY 10038 |

Main: 561.404.4350 | Fax: 561.404.4353 | www.sriplaw.com | info@sriplaw.com

April 1, 2022
Page 4

the negligence of third-party providers engaged by our firm to store and retrieve records, to the extent allowed by law.

I/WE HAVE READ AND UNDERSTAND THIS CONTRACT AND AGREE TO ABIDE BY WHAT IT SAYS.

Dated: ____4/11_____, 2022.        _____
                                           CLIENT


                                           /s/ *Evan A. Andersen*
                                           _____
                                           EVAN A. ANDERSEN, FOR
                                           SRIPLAW, P.A.

| CALIFORNIA | GEORGIA | FLORIDA | TENNESSEE | NEW YORK |
|---|---|---|---|---|
| 8730 Wilshire Boulevard Suite 350 Beverly Hills, CA 90211 | 12 Powder Springs St. Suite 200 Marietta, GA 30064 | 21301 Powerline Rd. Suite 100 Boca Raton, FL 33433 | 818 18th Ave. S. 10th Floor Nashville, TN 37203 | 125 Maiden Lane Suite 5C New York, NY 10038 |

Main: 561.404.4350  |  Fax: 561.404.4353  |  www.sriplaw.com  |  info@sriplaw.com

# Exhibit 3



*For Settlement Purposes Only, Subject to F.R.E. 408*

September 22, 2020

**VIA Priority Mail with Delivery Confirmation**
**and E-Mail (CLEARPATH@chicagopolice.org)**
David O. Brown, Superintendent
Chicago Police Department
Public Safety Headquarters Building
3510 South Michigan Avenue
Chicago, IL 60653

        Re:   Dominic Gwinn's Copyright Infringement Claims

***If either you or the Chicago Police Department are represented by an attorney, please forward this letter immediately to that attorney and provide the attorney's name and contact information to me.***

Dear Mr. Brown,

Dominic Gwinn has retained this firm for representation in the matter of your and the Chicago Police Department's (together "you," or "your") infringement of copyrights as you previously have used my client's video shown below (the "Video") without permission.



Specifically, you have displayed the Video without authorization of my client or the law at least at the following locations: https://www.youtube.com/watch?v=QtxLhprBpDk, and https://www.youtube.com/watch?v=RT8fJB7ZuFc, and then distributed it to multiple different parties for their further and unlimited display and distribution.

Examples of your uses are shown in part below:





As can be seen at 7:20 of the first link above, it was your intent to distribute the videos presented to the press, which you then did, resulting in an almost viral distribution of the footage including uses by organizations that had previously asked my client for permission to use the Video then decided not to when he asked them to pay a licensing fee. My client does not have any granted licenses, either written or oral, that include your reproduction, display, or distribution of the Video. Therefore, these uses of the Video without authorization of my client or the law constitute copyright infringement. The infringements are clear; the only question is the extent of damages to be paid.

### MY CLIENT'S RIGHTS PURSUANT TO U.S. COPYRIGHT LAW

United States Copyright Law grants exclusive rights to the copyright owner of an image for use of that image, including the rights to:

- reproduce the copyrighted work;
- prepare derivative works based on the copyrighted work;
- distribute copies of the copyrighted work to the public; and/or
- display the image.

<u>See</u> 17 USC §§ 106 and 501.  When those rights are infringed, the copyright owner is entitled to recover damages suffered as a result of the infringement, regardless of whether you acted knowingly or intentionally.  See 17 USC §504.  Those actual damages here are the lost license fee that should have been paid for the commercial use of the Video, as well as any profits from your company that are attributable to the unauthorized display of the Video.

However, Since Mr. Gwinn timely registered the copyright to the Video with the U.S. Copyright Office (registration number pending), he may elect either to receive the actual damages caused by and the profits earned from the infringement or statutory damages of up to $150,000 for willful infringement for each copyrighted work.  <u>See</u> 17 USC §504(b) and (c).

"Willfulness" has a particular meaning under copyright law.  Specifically, "willfulness" means that the infringer either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights.  <u>Brown v. McCormick</u>, 87 F.Supp.2d 467, 482 (D.Md.2000).  Your display and distribution of the Video while having actual knowledge about the identity of the copyright owner was, at minimum, action with a reckless disregard for my client's rights.  Accordingly, your infringement is presumed to be willful.  Mr. Gwinn is therefore entitled to enhanced statutory damages for your willful copyright infringement.  He is also entitled to receive any legal fees and costs from the infringer.  <u>See</u> 17 USC §505.

Additionally, this infringement is particularly troublesome because Mr. Gwinn was aware of the valuable nature of the Video when he created it and was making a significant effort to manage his rights in the display and distribution of the Video.  Your unauthorized display combined with a seemingly unlimited distribution has caused him to lose almost all control over his own copyrighted work, which has now appeared in other news reports, commercials, and political hearings, all without my client's permission, and without him receiving any compensation for those widespread uses.

You, your officers, and third parties performing work for you remain liable for this infringement until it is resolved.

### MY CLIENT'S RIGHTS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT

In addition, Mr. Gwinn posted copyright management information with the Video in the form of an attribution next to his display of the Video on his Twitter page at https://twitter.com/DominicGwinn/status/1284285480587206658.  The attribution of his name can be seen here:



Your reproduction of the Video removed this attribution from the Video in violation of 17 USC §1202(b), which states that:

> No person shall, without the authority of the copyright owner or the law, intentionally remove or alter any copyright management information knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

The damages for violating 17 USC §1202 alone start at $2,500 and go to $25,000 per violation, in addition to any fines for copyright infringement.  17 USC §1203(c)(3)(b).

MY client is therefore entitled to combined damages – actual or statutory damages for copyright infringement, and statutory damages for the removal of his copyright management information.

Finally, as you had reason to know that you did not have authorization to distribute the Video to third parties, but actively did so anyways, you will likely be held joint and severally liable for any downstream infringement or DMCA violations resulting from your unauthorized distributions of the Video as a contributory infringer.  This opens you up to a significant amount of future liability.

### SUMMARY OF MY CLIENT'S CLAIMS AND DEMANDS

Accordingly, Mr. Gwinn demands that you:

1. Cease any further use of the Video; and
2. Provide an accounting of all of your displays and distributions of the Video.

Copyright infringement is a strict liability offense: you are responsible for any infringing act regardless of your intent. While you may stop using the Video or your unauthorized derivative works of it, you remain liable for your past infringements.

### NOTICE TO PRESERVE DOCUMENTS AND DATA

You are on notice that litigation is likely regarding your actions concerning the Video.  Other than stopping any further use of the Video, you are now obligated and have a duty to preserve all evidence that may be relevant to the dispute discussed above and that may be the subject of pending litigation. This duty of preservation extends to, but is not limited to, data files, e-mails, calendars, telephone logs, access lists, and logs that are located on your computer networks, e-mail servers, mainframes, individual computer workstations, and external drives, or are located on any of those devices within your control but not owned by you, such as your web host.  Specifically, but not exclusively, you are on notice that you must preserve all evidence of all of your uses of the Video. This duty extends to your employees and agents.  We request that you notify your employees and agents of this retention request immediately.

Sanctions for violating any of the foregoing duties can be severe and include substantial monetary sanctions, adverse inferences in evidentiary rulings, and the entry of judgments by default.  We remain hopeful that we can resolve this dispute short of litigation.  The above duties, however, must be satisfied during any settlement or other discussions that we may have.

EVAN ANDERSEN LAW, LLC  |  3495 Buckhead Loop NE, #260147, Atlanta, GA 30326  |  WWW.PIXELIPLAW.COM

### OFFER TO SETTLE MY CLIENT'S CLAIMS

Mr. Gwinn is willing to provide you an opportunity to settle claims against you and end this matter immediately if you send certified funds in the amount of $150,000 payable to the following:

> Evan Andersen Law, LLC, Trust Account
> 3495 Buckhead Loop NE, #260147
> Atlanta, GA 30326

within ten (10) days of your receipt of this letter. Please note that this amount represents an offer of settlement but does not reflect the damages that our Client can and will seek in a court proceeding, including attorneys' fees pursuant to 17 USC 505 and 1203. Rather, this settlement offer reflects what our Client will accept if no further actions against you are necessary. If you do not accept this offer, our Client reserves the right to seek the maximum available damages under the law, which far exceed this amount.

Be advised that if you are unwilling to resolve this matter as noted above, Mr. Komarechka may initiate formal litigation at any time without further notice to you. If you carry business insurance, now may be an appropriate time to contact your carrier to determine whether my Client's claims are covered under your policy. This letter is without prejudice to my Client's rights and claims, which are expressly reserved.

We appreciate your prompt attention to this matter.

/s/ *Evan A. Andersen*

Evan A. Andersen, Esq.
Phone: 404.496.6606
Email: evan@pixeliplaw.com

Exhibit

4



DEPARTMENT OF LAW

CITY OF CHICAGO

December 16, 2020

**VIA EMAIL**

Evan Andersen
Evan Andersen Law, LLC
3495 Buckhead Loop NE #360147
Atlanta, Georgia 30326

Re:    Dominic Gwinn's Copyright Infringement Claims

Dear Mr. Andersen:

Our office represents the Chicago Police Department ("CPD"). We are in receipt of your September 22, 2020 letter regarding your client, Dominic Gwinn's ("Mr. Gwinn") alleged copyright infringement claims against CPD.

As you are already aware, during Summer 2020, mass protests occurred throughout Chicago and across the nation. On July 17, 2020 a large protest took place in Grant Park ("Protest"). Although the Protest began peacefully, as the day progressed, protestors converged where several CPD officers had gathered by a statue of Christopher Columbus located at the southern end of the park, and unknown individuals threw fireworks, frozen water bottles, and other projectiles at the officers. As a result, 49 CPD officers sustained injuries, including 18 CPD officers who sought treatment at local hospitals.

On July 17, 2020, at approximately 7:34PM, Mr. Gwinn posted a 1 minute and 43 second video on Twitter ("Video"), which shows water bottles, fireworks, and other projectiles being thrown at a group of CPD officers gathered at the base of the statue. On July 20, 2020, CPD Superintendent David Brown held a press conference regarding the Protest. As part of the press conference, CPD prepared and displayed a 6 minute and 4 second video depicting the Protest ("Compilation"). The Compilation primarily constituted aerial video footage captured by various CPD surveillance cameras; however, it also included the 1 minute and 43 second footage from Mr. Gwinn's Video ("Use").

The purpose of the press conference was to provide CPD with an opportunity to address the Protest, including the actions taken against CPD officers at the Protest, public safety concerns regarding attempts to topple the Columbus statue during the Protest, and CPD's tactics for

2 NORTH LASALLE STREET, SUITE 540, CHICAGO, ILLINOIS 60602

Evan Andersen Law, LLC
December 16, 2020
Page 2 of 4

handling protest activities moving forward. In displaying the Compilation to members of the press, as well as later making the Compilation available online for press and the public to view, CPD sought to enable accurate news reporting of the Protest, and provide context for CPD's concerns regarding public safety and officer safety. CPD did not profit from its Use of the Video, or the distribution of the Compilation, in any way.

Turning to Mr. Gwinn's claims, although CPD acknowledges that it did not have permission to Use the Video, it denies that it is subject to any liability under the Copyright Act and/or the Digital Millennium Copyright Act. As an initial matter, Mr. Gwinn has not proven that he authored the Video. Although CPD does not dispute that the Video was posted to Mr. Gwinn's Twitter account, the mere act of posting content to a social media account does not establish the authorship of the post's content. In fact, it is not uncommon for social media users to post video, images, text, or other content authored by other individuals on social media sites. Although Mr. Gwinn alleges that the inclusion of his name and Twitter username, @DominicGwinn, in connection with the Video constituted copyright management information ("CMI") establishing Mr. Gwinn's authorship of the Video, CPD disagrees with this assertion. Twitter automatically populates the name and username on each post of a particular user's account. In a social media environment where content is constantly re-posted or posted without attribution, that is insufficient to conclusively establish content authorship, or constitute CMI. Furthermore, the Video lacks any other indicia of Mr. Gwinn's authorship, such as an attribution superimposed, watermarked, or otherwise accompanying the text captioning the Video.

Furthermore, even assuming that Mr. Gwinn can prove that he authored the Video, he has not demonstrated his entitlement to damages. First, although Mr. Gwinn alleges that he "lost license fees that should have been paid for the Commercial use of the Video" and damages for "any profits from your company that are attributable to the unauthorized display of the Video," as stated above, CPD did not receive any commercial benefit from its Use. Second, although Mr. Gwinn alleges that he timely registered the Video with the U.S. Copyright Office, which may permit him to seek statutory damages for willful infringement, as of the writing of this letter, Mr. Gwinn has not provided CPD with any details or proof of registration, including the date of registration or the registration number.

Most importantly, however, is that CPD's Use of the Video falls under the Fair Use Doctrine. As you are likely aware, the Copyright Act carves out certain exceptions to a copyright owner's exclusive right to control a copyrighted work, under the Fair Use Doctrine:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, **news reporting**, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

Evan Andersen Law, LLC
December 16, 2020
Page 3 of 4

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

After examining the four Fair Use factors as a whole, CPD has a strong affirmative defense. First, as stated above, the Use falls under a classic fair use exception – news reporting. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985). In addition, CPD did not profit in any way from the Use. Second, unlike fictional work, which goes to the heart of copyright protection, the Video was more factual or informational in nature, which favors fair use. *New Era Publications Int'l v. Carol Pub. Grp.*, 904 F.2d 152, 157 (2d Cir. 1990) Third, although CPD did use the entire length of the Video, that does not necessarily preclude a finding of fair use. Particularly in the case of fair use for news reporting, courts have noted that a faithful reproduction serves "the interest of accuracy, not piracy." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg LP*, 756 F.3d 73, 85 (2d Cir. 2014). Finally, it not clear that CPD's Use affected the potential value of the Video in any way. Indeed, your letter notes that unidentified organizations had already previously requested permission to use the Video prior to the City's Use and had declined to do so when Mr. Gwinn requested payment for a licensing fee.

Accordingly, CPD denies that its Use of the Video was improper, and asserts that its Use of the Video falls under the Fair Use Doctrine. Notwithstanding any of the foregoing, without admitting liability, and reserving all of its rights and defenses, CPD has ceased its Use of the Video as of October 22, 2020. In response to Mr. Gwinn's Demand that CPD provide an accounting of all its displays and distributions of the Video, CPD states that it previously posted the versions of the Compilation which included the Video on the following platforms: YouTube, Facebook, and Twitter. As of October 22, 2020, CPD has either removed the post containing the Video or altered the post such that the Video is not included.

We trust that this resolves the matter and addresses Mr. Gwinn's concerns. Thank you.

Sincerely,

Christina Chung
Assistant Corporation Counsel
City of Chicago

Evan Andersen Law, LLC
December 16, 2020
Page 4 of 4


cc:     John Sabl, DOL
        Fiona A. Burke, DOL
        Ryan Nelligan, CPD

# Exhibit

# 5

# Exhibit 5 Index

Emails between Evan A. Andersen and Christina Chung

| | |
|---|---|
| Exhibit 5A | 12/16/2020 – 9/22/2020 |
| Exhibit 5B | 01/06/2021 |
| Exhibit 5C | 03/02/2021 – 01/07/2020 |
| Exhibit 5D | 03/09/2021 – 03/05/2020 |
| Exhibit 5E | 03/18/2021 – 03/10/2021 |
| Exhibit 5F | 05/27/2021 – 03/29/2021 |
| Exhibit 5G | 09/20/2021 – 06/04/2021 |
| Exhibit 5H | 01/19/2022 – 10/15/2021 |
| Exhibit 5I | 03/30/2023 - 08/18/2022 |

# Exhibit 5A

 Outlook

---

## Re: Gwinn Copyright Infringment Claim

**From** Christina Chung <Christina.Chung@cityofchicago.org>
**Date** Wed 12/16/2020 6:41 PM
**To** Evan Andersen <evan@pixeliplaw.com>

📎 1 attachment (214 KB)
December 16, 2020 Letter re Gwinn.pdf;

Mr. Andersen:

Thanks for your patience as we completed our review. Please see the attached response.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Friday, December 11, 2020 10:26 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up again.  It is quickly approaching two months since I first heard from you, and we have not yet
received a substantive response.

-Evan

---
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
---

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or
confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the
sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan

Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, November 30, 2020 10:17 AM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringment Claim

Mr. Andersen:

I hope you had a happy and safe Thanksgiving. I aim to get a response to you within the next two weeks.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, November 24, 2020 11:49 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up again to see when we may expect to receive a response.

-Evan Andersen

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, November 16, 2020 4:56 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringment Claim

Mr. Andersen:

Thank you for your email. I have been tied up with some pressing discovery deadlines and was also out of the office for a portion of last week, but am working on providing a response to you as soon as possible.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, November 11, 2020 1:43 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringment Claim

    [Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Following up to see when we may expect to receive a response.

-Evan Andersen

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Tuesday, October 27, 2020 1:08 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Gwinn Copyright Infringment Claim

Mr. Anderson:

We are in receipt of your September 22, 2020 letter regarding your client's copyright claims. I recently was assigned to this matter and am reviewing now, and will provide a written response to your letter in due course.

Thank you,

**Christina Chung**

*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
30 N. LaSalle Street, Suite 1400
Christina.Chung@cityofchicago.org

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

# Exhibit 5B

 Outlook

---

## RE: Gwinn Copyright Infringement Claim

**From** Evan Andersen <evan@pixeliplaw.com>
**Date** Wed 1/6/2021 12:33 PM
**To** Christina Chung <Christina.Chung@cityofchicago.org>

📎 1 attachment (5 MB)
PXL_20201001_174557583.jpg;

**-Settlement Discussions-**

Ms. Chung,

Happy New Year, and thank you for your letter dated December 16, 2020. Unfortunately, your letter does not resolve this matter. Specifically, my client strongly disagrees with your fair use analysis and notes that regardless of whether CPD's actions brought it any profit, Mr. Gwinn has been directly harmed by CPD's unlawful display and distribution of his Video. Your assertions will be addressed in turn.

My client is the author of the Video. If you have some reason to believe he is not, please send me that information and I will review it. But regardless of whether you believe that his name next to the video constitutes CMI, the statutory definition is clear, and does not require that a watermark be placed on the work itself. Instead, Congress chose specific language, that the information be "conveyed in connection with" the work, which Mr. Gwinn's name certainly was. Accordingly, his name appearing next to his initial display of the work fits the statutory definition of CMI under 17 USC secs 1202(c)(1, 2, 3, and 7). Certainly CPD, accessing the Video from his Twitter page, had some notice as to a person they could ask as to ownership rights. Yet CPD refused to do so, leading to a long line of downstream uses that attributed CPD rather than Mr. Gwinn.

The damages suffered are not limited to profits or revenues made by the infringer on the infringing activity. First and foremost, it is well established that the lost license fee that should have been paid to Mr. Gwinn for the use and unlimited distribution of the Video prior to the infringement constitutes actual damages. *On Davis v. The Gap Inc.*, 246 F.3d 152, 169 (2nd Cir. 2000). Further, the unrestrained and unpaid distribution of the Video undermined the value of Mr. Gwinn's Video, and his goodwill and negotiating leverage with licensees, all of which cause Mr. Gwinn to suffer irreparable harm. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (Explaining that the loss of the value of works to the copyright owner, the loss of the copyright owner's goodwill, and the loss of negotiating leverage are all the types of irreparable harm that cannot readily be remedied in damages). As Mr. Gwinn lost the opportunity to further license the Video to all of the downstream users, the actual damages get exponentially worse as you continue to follow the trail of the continued uses. The damages are real. But even though they may be difficult to calculate precisely, that is not a reason to discount liability. In fact, courts have made it clear that statutory damages may be awarded "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or the profits reaped by the defendant." *Shapkin/Crossroads Publications, Inc. v. Legacy Home Video, Inc.*, 122 F.3d 1073 (9th Cir. 1997).

Further, the purpose of awarding damages under the Copyright Act is not merely to make the plaintiff whole. "[W]hile certainly serving to provide some compensation for defendant's infringement, statutory damages also serve a deterrent purpose, discouraging wrongful conduct by imposing a high enough penalty so that defendants will realize that it is less expensive to comply with the law than to violate it." Patry on Copyright, sec. 22:174. *See also, F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (noting that deterrence is important

"even for uninjurious and unprofitable invasions of copyright . . . [to] vindicate the statutory policy of discouraging infringement"). Accordingly, statutory damages here will take into account more than only the actual damages at issue, and will look at what it will take to dissuade CPD from acting like this in the future.

As for the registration, While we were waiting for your response, the Copyright Office responded to Mr. Gwinn with his Certificate of Registration for the Video. It is attached for your records. As you can see, the Effective Date of Registration allows for Mr. Gwinn to claim statutory damages on any infringement that occurred after he posted it to Twitter.

Finally we reach your fair use argument, which glosses over the factors in a dangerous way which would suggest that CPD and other similarly situated parties can trample over the rights of copyright owners in such a broad manner that any news reporting would essentially be fair use. No court would agree with this interpretation of the four factors.

For example, your analysis of the first factor is that CPD was performing news reporting and did not profit from it. But this leaves out the central question of the first factor, as to whether the use was transformative. It is well established that the classification of a use as "news reporting" is not enough on its own to satisfy a fair use analysis. *See, e.g. Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561, 105 S. Ct. 2218, 2231, 85 L. Ed. 2d 588 (1985) (explaining that although "news reporting" appears as an example in the fair use statute, it is an element of the full analysis rather than a presumptive category of fair use). Instead, the first prong of the fair use inquiry asks whether copying "permissibly `transforms' and thus `complements' the original, as opposed to creating a `substitute' that `supersedes' the original." *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 3368893, at *9 (N.D. Ill. July 8, 2014); *accord Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Here, CPD did not add something new. Instead, it used the copyrighted Video in the same way those who purchased licenses typically would use them—to show the news event and comment on the footage—and did so "without paying the customary price." *Harper & Row*, 471 U.S. at 562. CPD's usage and distribution of the unedited Video for the same purpose that Mr. Gwinn was working to license right for is a substitute that supersedes Mr. Gwinn's licensing efforts rather than complimenting his work. This factor weighs heavily against fair use.

The third factor here also weighs heavily against fair use, as CPD displayed and distributed the heart of the work, showing the actual specific events of the police officers being attacked by thrown items from the crowd. This kind of use, despite using only a small part of the entire video, does not support a finding of fair use. *Los Angeles News Service v. Tullo*, 973 F. 2d 791, 798 (9th Cir. 1992) ("[c]opying even a small portion of a copyrighted work may exceed the boundaries of fair use if the material taken is the "heart" of the work"), citing *Harper & Row*, 471 U.S. at 564-65.

Finally, the fourth factor weighs heavily against fair use as well. Rather than the narrow view you described, this factor requires courts to investigate whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the copyrighted work. *Storm Impact, Inc. v. Software of Month Club*, 13 F. Supp. 2d 782, 789 (N.D.Ill., July 29, 1998). The Seventh Circuit has said that this factor is "usually" "the most important." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). Here, not only would widespread distribution to media outlets have a adverse impact on journalists' ability to further license their copyrighted works, but in this specific example, CPD's unauthorized and broad distribution of the Video devastated Mr. Gwinn's ability to license it, as multiple uses including news reporting, congressional hearing presentations and more all occurred without any payment to Mr. Gwinn for his work. Those end users didn't think they needed to pay for the footage because CPD distributed it to them for their own use.

All-in-all, three of the four factors weigh heavily against a finding of fair use. This argument simply will not stand in court.

As you did not respond to or provide a counter offer to my client's offer to resolve this matter, it is still on the table. Please let me know if CPD will accept this offer to resolve the matter without the need for litigation.

-Evan Andersen

Exhibit
5C

 Outlook

---

## RE: Gwinn Copyright Infringement Claim

---

**From** Evan Andersen <evan@pixeliplaw.com>

**Date** Tue 3/2/2021 8:14 PM

**To** Christina Chung <Christina.Chung@cityofchicago.org>

-Settlement Discussions-

Ms. Chung,

Checking in on the status of your investigation. We are looking forward to moving forward with the conversation.

As for the license fees that he lost from CPD's use and distribution of the Video, Mr. Gwinn does not have a comparable license that would essentially allow CPD to distribute it to whomever they wanted, and for whatever purpose they wanted. That kind of unrestricted third-party distribution really only comes through a buyout of the copyrighted work, which would be substantially higher than any single and limited use of the footage that he would normally grant for this kind of work. $50,000, which would be a third of the statutory damages available, is not an unreasonable number for a full buyout of something like this footage (noting that a 3-5x multiplier of the lost license fee is common in establishing the amount of statutory damages). But as I mentioned in my earlier email, even if this actual damage number is difficult or impossible to calculate, statutory damages remain available to compensate Mr. Gwinn and dissuade CPD from this kind of behavior in the future.

Mr. Gwinn's offer remains on the table. Please let me know if CPD will accept it to fully resolve this matter.

-Evan Andersen

---

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

---

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, January 20, 2021 5:25 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:

We are still working on providing a substantive response to your January 6 email. However, I did have a brief follow-up question. Your email alleges that lost license fees should have been paid to Mr. Gwinn and constitute his actual damages; however, you do not specify what Mr. Gwinn's license fees were. Can you please clarify?

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Thursday, January 14, 2021 1:40 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

    [Warning: External email]

-Settlement Discussions-

Ms. Chung,

Following up to see when we may expect to receive a response.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Thursday, January 7, 2021 3:05 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Anderson:

Thank you for your email. We will review and get back to you.

**Christina Chung**
*Assistant Corporation Counsel*

City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, January 6, 2021 11:33 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim


[Warning: External email]


**-Settlement Discussions-**

Ms. Chung,

Happy New Year, and thank you for your letter dated December 16, 2020. Unfortunately, your letter does not resolve this matter.  Specifically, my client strongly disagrees with your fair use analysis and notes that regardless of whether CPD's actions brought it any profit, Mr. Gwinn has been directly harmed by CPD's unlawful display and distribution of his Video.  Your assertions will be addressed in turn.

My client is the author of the Video.  If you have some reason to believe he is not, please send me that information and I will review it.  But regardless of whether you believe that his name next to the video constitutes CMI, the statutory definition is clear, and does not require that a watermark be placed on the work itself.  Instead, Congress chose specific language, that the information be "conveyed in connection with" the work, which Mr. Gwinn's name certainly was.  Accordingly, his name appearing next to his initial display of the work fits the statutory definition of CMI under 17 USC secs 1202(c)(1, 2, 3, and 7).  Certainly CPD, accessing the Video from his Twitter page, had some notice as to a person they could ask as to ownership rights.  Yet CPD refused to do so, leading to a long line of downstream uses that attributed CPD rather than Mr. Gwinn.

The damages suffered are not limited to profits or revenues made by the infringer on the infringing activity.  First and foremost, it is well established that the lost license fee that should have been paid to Mr. Gwinn for the use and unlimited distribution of the Video prior to the infringement constitutes actual damages.  *On Davis v. The Gap Inc.*, 246 F.3d 152, 169 (2nd Cir. 2000).  Further, the unrestrained and unpaid distribution of the Video undermined the value of Mr. Gwinn's Video, and his goodwill and negotiating leverage with licensees, all of which cause Mr. Gwinn to suffer irreparable harm. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (Explaining that the loss of the value of works to the copyright owner, the loss of the copyright owner's goodwill, and the loss of negotiating leverage are all the types of irreparable harm that cannot readily be remedied with damages).  As Mr. Gwinn lost the opportunity to further license the Video to all of the downstream users, the actual damages get exponentially worse as you continue to follow the trail of the continued uses.  The damages are real.  But even though they may be difficult to calculate precisely, that is not a reason to discount liability.  In fact,  courts have made it clear that statutory damages may be awarded "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or the profits reaped by the defendant." *Shapkin/Crossroads Publications, Inc. v. Legacy Home Video, Inc.*, 122 F.3d 1073 (9th Cir. 1997).

Further, the purpose of awarding damages under the Copyright Act is not merely to make the plaintiff whole.  "[W]hile certainly serving to provide some compensation for defendant's infringement, statutory damages also serve a deterrent purpose, discouraging wrongful conduct by imposing a high enough penalty so that defendants will realize that it is less expensive to comply with the law than to violate it."  Patry on Copyright, sec. 22:174.  *See also, F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (noting that deterrence is important "even for uninjurious and unprofitable invasions of copyright . . . [to] vindicate the statutory policy of discouraging

Exhibit

5D

 Outlook

## RE: Gwinn Copyright Infringement Claim

**From** Evan Andersen <evan@pixeliplaw.com>
**Date** Tue 3/9/2021 1:05 PM
**To** Christina Chung <Christina.Chung@cityofchicago.org>

**-Settlement Discussions-**

Ms. Chung –

While I appreciate that CPD would like to potentially pay a license fee for a "single and limited use of the footage," that is simply not what happened here. Had CPD used the footage once, and failed to pay a fee for it, that would have been the scope of the conversation that we would be having, and the numbers we are talking about would likely be significantly less. But CPD took Mr. Gwinn's footage, offered it to and distributed it to third party media outlets without any restrictions, leading to further downstream uses including political displays and advertisements. This distribution gutted any chance for Mr. Gwinn to work to sell licenses to his unique footage, as no outlet would ever pay for it if they could just use it for free from CPD. This widespread, unlimited, and unauthorized distribution is the core of why Mr. Gwinn is so upset at what CPD did, and why we have engaged CPD from the start on the full scope of the unauthorized usage and distribution.

Accordingly, these settlement discussions cannot revolve around a "single and limited use of the footage," as CPD's use was neither singular nor limited. We are hopeful that CPD will take responsibility for the full scope of its conduct.

Please let me know if CPD will accept Mr. Gwinn's offer to resolve this matter, which is still on the table.

-Evan Andersen

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

_____

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Friday, March 5, 2021 5:47 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:

Apologies if my last email was unclear. We cannot move forward with providing a substantive response to your offer until we receive an answer regarding Mr. Gwinn's alleged license fees, plus any supporting documentation. While I understand that $50,000 would be a comparable license fee for a "full buyout" of the footage, what I had requested earlier was clarification regarding what Mr. Gwinn typically charges for a "single and limited use of the footage." Please advise.

Thank you,

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, March 2, 2021 7:14 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung,

Checking in on the status of your investigation. We are looking forward to moving forward with the conversation.

As for the license fees that he lost from CPD's use and distribution of the Video, Mr. Gwinn does not have a comparable license that would essentially allow CPD to distribute it to whomever they wanted, and for whatever purpose they wanted. That kind of unrestricted third-party distribution really only comes through a buyout of the copyrighted work, which would be substantially higher than any single and limited use of the footage that he would normally grant for this kind of work. $50,000, which would be a third of the statutory damages available, is not an unreasonable number for a full buyout of something like this footage (noting that a 3-5x multiplier of the lost license fee is common in establishing the amount of statutory damages). But as I mentioned in my earlier email, even if this actual damage number is difficult or impossible to calculate, statutory damages remain available to compensate Mr. Gwinn and dissuade CPD from this kind of behavior in the future.

Mr. Gwinn's offer remains on the table. Please let me know if CPD will accept it to fully resolve this matter.

-Evan Andersen

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com

# Exhibit

# 5E

 Outlook

---

## RE: Gwinn Copyright Infringement Claim

---

**From** Evan Andersen <evan@pixeliplaw.com>

**Date** Thu 3/18/2021 5:26 PM

**To** Christina Chung <Christina.Chung@cityofchicago.org>

---

**-Settlement Discussions-**

Christina,

The problem with providing those licensing amounts is that they are not comparable to the usage by CPD, and any comparison between them would be unfair to the loss of value that occurred when CPD decided to distribute the footage without restriction.  A single use license and an unlimited distribution license couldn't be any different. While single use licenses may be in the hundreds of dollars per license, unlimited distribution, like I said earlier, easily reaches to the tens of thousands per license, especially for rare and unique footage as was captured by Mr. Gwinn.  If you want me to gather industry standard pricing for the kind of distribution performed by CPD, I can work on that – but you must understand that this pricing will be much more applicable to the issue at hand than what the value of a single-use license would have been.

-Evan

_____

Evan A. Andersen, Esq.
Evan Andersen Law, LLC
[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, March 10, 2021 6:31 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Mr. Andersen:

Thank you for your email. I understand your client's position, and it will be taken under consideration as we review Mr. Gwinn's settlement demand.

However, I still need additional information regarding Mr. Gwinn's fees. While CPD is willing to continue settlement discussions, it cannot respond to your client's demand until we fully evaluate your client's claims. Understanding what your client typically charges for a single

license is a part of that analysis. We are also requesting supporting documentation to substantiate those fees. Your initial letter noted that "organizations that had previously asked [Mr. Gwinn] for permission to use the Video then decided not to when he asked them to pay a licensing fee." Please provide copies of all such communications for our review. Once we have received them, we will respond to your client's demand.

Thank you,
**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, March 9, 2021 12:05 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Ms. Chung –

While I appreciate that CPD would like to potentially pay a license fee for a "single and limited use of the footage," that is simply not what happened here. Had CPD used the footage once, and failed to pay a fee for it, that would have been the scope of the conversation that we would be having, and the numbers we are talking about would likely be significantly less. But CPD took Mr. Gwinn's footage, offered it and distributed it to third party media outlets without any restrictions, leading to further downstream uses including political displays and advertisements. This distribution gutted any chance for Mr. Gwinn to work to sell licenses to his unique footage, as no outlet would ever pay for it if they could just use it for free from CPD. This widespread, unlimited, and unauthorized distribution is the core of why Mr. Gwinn is so upset at what CPD did, and why we have engaged CPD from the start on the full scope of the unauthorized usage and distribution.

Accordingly, these settlement discussions cannot revolve around a "single and limited use of the footage," as CPD's use was neither singular nor limited. We are hopeful that CPD will take responsibility for the full scope of its conduct.

Please let me know if CPD will accept Mr. Gwinn's offer to resolve this matter, which is still on the table.

-Evan Andersen

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan

Exhibit

5F

 Outlook

## RE: Gwinn Copyright Infringement Claim

**From** Evan Andersen <evan@pixeliplaw.com>
**Date** Thu 5/27/2021 8:03 PM
**To** Christina Chung <Christina.Chung@cityofchicago.org>

📎 5 attachments (3 MB)
CNN Request for Footage 07-17-2020 2.jpg; AJ Plus Request For Footage 07-20-2020.jpg; FOX Request for Footage 07-17-2020 1.jpg; Daily Mail Requst for Footage 07-17-2020.jpg; NBC Chicago Request for Footage 07-17-2020 2.jpg;

**-Settlement Discussions-**

Christina,

Thank you for your patience as I looked into the issue of license fees for unlimited distribution, or transfers of copyright. Unfortunately, there is not a generally accepted amount for these kinds of transactions specifically because they would be so cost prohibitive. I spoke with representatives at a few licensing companies who explained that while they were willing to provide licensing guidelines for limited uses and distribution, because the unlimited distribution of a work would essentially foreclose any ability for the copyright owner to further license that work, they would leave any such negotiation up to the copyright owner. In other words, the price for the sale of such broad rights, or rights to the work as a whole, would be determined on a case-by-case basis by each individual copyright owner, and was generally very significant.

Here, we are dealing with a unique and valuable video clip which caught the attention of multiple news outlets and politicians as protests and police interactions with the public were at a high national interest level. Should we need to litigate, I'm confident that any expert opinion on the value of this unlimited distribution would be as described. CPD disseminated the Video at the specific moment in time that it was at its most valuable, and took away any opportunity for Mr. Gwinn to earn a living based on his work, even though he had been the one to put himself into the dangerous position of capturing the Video. CPD gained from stealing from him and took away any ability he would have had to make any revenue from licenses to the media outlets that ultimately used his Video, crediting CPD. As you can see, there was a lot of interest in the use of his Video, but that stopped after CPD distributed it for free. It was then used by many of these outlets anyways without attribution to Mr. Gwinn because they thought CPD provided it for free. Had he been contacted by these and others that ultimately used the Video, he could have made sure he was paid appropriately for the resulting uses.

That said, the personal value to Mr. Gwinn of this Video is as stated to you previously. Our previous offer takes into account what Mr. Gwinn had to do to create the Video, as well as the value at the time it was taken by CPD for its own uses. As stated earlier, $50,000 for this kind of use would not be unreasonable. The statutory damages available to Mr. Gwinn would apply a 3-5x multiplier on this amount.

Please let me know if CPD will accept our initial offer, or otherwise provide a counteroffer to me that I can take to Mr. Gwinn for his review.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC

[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, March 29, 2021 6:17 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan,

Thank you for your email earlier explaining the potential cost differential between a single use license, which you explained may be in the hundreds of dollars per license, versus an unlimited distribution, which you explained may be closer to the tens of thousands per license. Can you please provide documentation corroborating these costs? In addition, I previously requested that you provide copies of all communications between Mr. Gwinn and any organizations who had "previously asked [Mr. Gwinn] for permission to use the Video then decided not to when he asked them to pay a licensing fee," as referenced in your initial claim letter.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

_____

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Monday, March 29, 2021 4:28 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

    [Warning: External email]

**-Settlement Discussions-**

Christina,

Following up on my email below.   Please let me know if CPD will accept Mr. Gwinn's offer to resolve this matter, which is still on the table.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com

Exhibit

5G

 Outlook

---

## Re: Gwinn Copyright Infringement Claim

**From** Christina Chung <Christina.Chung@cityofchicago.org>
**Date** Mon 9/20/2021 12:48 PM
**To** Evan Andersen <evan@pixeliplaw.com>

Hi Evan,

Nice chatting earlier today. I didn't see anything else in my notes besides what we discussed. I look forwarding to hearing from you.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Thursday, July 29, 2021 11:50 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

Hi Christina –

I am here now.  I just stepped away for a moment and missed your call.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, July 28, 2021 4:22 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Hi Evan,

Does tomorrow any time after 11 am CST work for you?

**Christina Chung**

*Assistant Corporation Counsel*

City of Chicago Department of Law

Aviation, Environmental, Regulatory & Contracts Division

2 N. LaSalle Street, Suite 540

Christina.Chung@cityofchicago.org

(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Tuesday, July 27, 2021 3:47 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

    [Warning: External email]

**-Settlement Discussions-**

Hi Christina --  Yes, let me know some dates and times that work for you.  I should be generally available.

-Evan

_____

Evan A. Andersen, Esq.

Evan Andersen Law, LLC

www.pixeliplaw.com

404.496.6606

_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Tuesday, July 27, 2021 4:28 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan,

Are you available for a call later this week to discuss your client's claims?

**Christina Chung**

Assistant Corporation Counsel
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Friday, July 2, 2021 11:01 AM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan,

The claim is currently with my client and under review. I will be out of the office next week for the holiday, but plan to meet to discuss with my client when I return. We should be able to provide a response by the end of the month.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, June 30, 2021 7:55 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim


[Warning: External email]


**-Settlement Discussions-**

Christina,

Checking in to see when we may expect to receive a response.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, June 16, 2021 11:17 AM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan,

We are still in the process of reviewing your client's claims. I am hoping we will be able to provide a response to your client's demand in the next couple of weeks. Thank you for your patience.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Wednesday, June 16, 2021 8:47 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

    [Warning: External email]

**-Settlement Discussions-**

Christina,

Following up again to see when we may expect to receive a response.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

*This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.*

---

**From:** Evan Andersen
**Sent:** Friday, June 11, 2021 7:18 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

**-Settlement Discussions-**

Christina,

Following up to see when we may expect to receive a response.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Monday, June 7, 2021 10:01 AM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Thank you for your email and for sending along the requested documentation. I will review with my client and provide response after I have discussed with my client.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Friday, June 4, 2021 3:31 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

　　[Warning: External email]

**-Settlement Discussions-**

Christina,

Following up here on my email below.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com

# Exhibit

# 5H

 Outlook

---

## RE: Gwinn Copyright Infringement Claim

**From** Evan Andersen <evan@pixeliplaw.com>
**Date** Wed 1/19/2022 3:13 PM
**To**   Christina Chung <Christina.Chung@cityofchicago.org>

---

**-Settlement Discussions-**

Christina,

Following up to see if CPD will accept Mr. Gwinn's reduced offer.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

---

**From:** Evan Andersen
**Sent:** Tuesday, January 4, 2022 1:53 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

**-Settlement Discussions-**

Christina,

I am authorized to reduce my client's offer to resolve this matter to $149,000.

Please let me know if CPD will accept this offer.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
[www.pixeliplaw.com]www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the

sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, November 17, 2021 10:23 PM
**To:** Evan Andersen <evan@pixeliplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Evan:

Apologies for the delay, I've been tied up with another matter that is scheduled for an expedited trial mid-December.

With respect to your client's demand, the City previously responded with an offer of $500 for settlement earlier this year. I'd be happy to continue discussing settlement; however, your client has not responded to our offer or provided a counter-demand.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
Aviation, Environmental, Regulatory & Contracts Division
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

**From:** Evan Andersen <evan@pixeliplaw.com>
**Sent:** Monday, November 15, 2021 10:27 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Christina,

Following up to see if CPD will accept Mr. Gwinn's offer.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606
_____

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Evan Andersen
**Sent:** Friday, October 15, 2021 4:57 PM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** Gwinn Copyright Infringement Claim

-Settlement Discussions-

Christina –

Thanks for the phone call.  Apologies for the delay in getting this to you it has been a busy fall.

Here is the law I mentioned about your fair use defense:

In *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997), the Ninth Circuit dealt with the unauthorized use of video tapes of the riots that occurred after the Rodney King verdict in 1992.  KCAL asked for a license to use the footage, which was refused, but then used the footage anyways and claimed that it was a fair use because it was a "unique and newsworthy videotape of significant public interest and concern," which was enough to get the District Court to grant summary judgment based on the fair use defense.  The Ninth Circuit reversed, however, explaining that KCAL's use of the footage without paying a licensing fee, or by using their own resources to also capture footage of the same event, was not fair as other alternatives were available and that the inherent newsworthiness of the footage was not alone sufficient to overcome the other four factors of the fair use analysis.  "Although KCAL apparently ran its own voice-over, it does not appear to have added anything new or transformative to what made the LANS work valuable—a clear, visual recording of the beating itself."  *Id*. at 1122.

In fact, the Northern District of Illinois has cited *KCAL* as an example of when news footage is taken from one source and used as news footage in another source – explaining that this kind of re-use is not transformative.  *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 WL 3368893, at *11 (N.D. Ill. July 8, 2014) ("the defendants in the cases Leveyfilm relies upon used the video and photo to report the news the plaintiffs had recorded, and by so doing, impermissibly usurped the plaintiffs' original intended uses").  The use in Levyfilm was found to be fair only because it was transformed from an art display into a news story.  *Id*.  Such is not the case here.

Mr. Gwinn recorded the footage at issue here as a newsworthy event, and had the intent to speak with organizations about licensing the footage as newsworthy footage.  CPD presented the footage as newsworthy video, and then distributed it widely to news organizations as newsworthy footage.  This is plainly not transformative use, nor would it meet the requirements of the fair use factors.

I believe Mr. Gwinn's offer of $150,000 is still on the table. Please let me know if CPD will accept this offer to resolve all claims related to CPD's distribution of the Footage.

-Evan

_____
Evan A. Andersen, Esq.
Evan Andersen Law, LLC
www.pixeliplaw.com
404.496.6606

_____
This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that Evan Andersen Law, LLC represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which we do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

# Exhibit
# 5I

 Outlook

## Re: Gwinn Copyright Infringement Claim

**From** Christina Chung <Christina.Chung@cityofchicago.org>

**Date** Thu 3/30/2023 7:48 PM

**To** Evan Andersen <evan@pixeliplaw.com>

Hi Evan,

Thanks, yes, we are willing to accept service on behalf of both.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan.andersen@sriplaw.com>
**Sent:** Friday, March 24, 2023 8:37 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

Christina –

We filed suit on behalf of Mr. Gwinn yesterday. Are you willing to waive service on behalf of the City of Chicago and Mr. Brown?

-Evan



**Evan A. Andersen**
Partner
Direct: 470-598-0800
Direct: 404-496-6606
Main Firm: (561) 404-4350
evan.andersen@sriplaw.com
www.sriplaw.com

This message is being sent by or on behalf of a lawyer and may contain information that is proprietary, privileged, or confidential. If this message was not intended for you, it was an inadvertent disclosure of the contents. Please notify the sender immediately by e-mail and delete all copies of the message. If you have not received a written indication that SRIPLAW represents you in a particular matter, you are not a client. If you respond to this e-mail concerning a legal matter for which I do not already represent you, your communication may not be treated as privileged or confidential. Thank you.

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Wednesday, August 31, 2022 6:21 PM
**To:** Evan Andersen <evan.andersen@sriplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

<u>**FOR SETTLEMENT PURPOSES ONLY**</u>

Evan:

Thanks for your patience. As previously discussed in writing and over the phone, the City denies that its Use of your client's Video was improper. (All defined terms shall have the same meaning set forth in the City's December 16, 2021 correspondence, attached.)

The city has strong legal defenses to your client's copyright claims. Chief among these is Fair Use. "The fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting . . . is not an infringement of copyright." 17 U.S.C. § 107. As you are well aware, to determine whether a use was fair, courts consider the following four factors: (1) the purpose and character of the use (i.e., whether the use was commercial or for nonprofit purposes), (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id*.

Here, we believe the first factor favors Fair Use since the Use falls under the classic Fair Use exception of news reporting. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985). In addition, City did not at all profit from the Use, which significantly distinguishes it from the *KCAL* case you rely upon. *See Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) ("Even though the fact that KCAL was reporting news weighs heavily in its favor (§ 107 itself gives news reporting as an example), the fact that LANS and KCAL are both in the business of gathering and selling news cuts the other way."). The second factor also favors fair use because, unlike fictional work, which goes to the heart of copyright protection, the Video was more factual or documentary in nature. *New Era Publications Int'l v. Carol Pub. Grp.*, 904 F.2d 152, 157 (2d Cir. 1990). Third, although City did use the entire length of the Video, that does not necessarily preclude a finding of fair use. Particularly in cases involving news reporting, courts have noted that a faithful reproduction serves "the interest of accuracy, not piracy," *see Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg LP*, 756 F.3d 73, 85 (2d Cir. 2014), which was undoubtedly the case here. Finally, it not clear that City's Use affected the potential value of the Video in any way. Your client argues that the Use lowered the market value of the Video because media organizations would not pay a license fee for the Video when they could use City's Compilation for free. It should be noted, however, that media organizations previously requested use of the Video, and then later declined to do so when Gwinn requested license fees, indicating that the Video may not have had a high market value to begin with.

Moreover, as you are likely aware, the Copyright Act provides for attorney's fees for the prevailing party, which can include a prevailing defendant. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Litigation is not without some risk of exposure for your client.

Finally, even if your client did ultimately prevail, we think it unlikely he would recover anything but the minimum possible damages, in these circumstances where the City's Use of the Video was to address important public safety concerns, and the City did not profit from the Video in any way.

Notwithstanding the infirmities of your client's legal position, in order to avoid the cost and uncertainty of litigation, the City is willing to offer your client $5,000 to resolve this matter at this time, subject to

the execution of an appropriate settlement agreement.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Christina Chung <Christina.Chung@cityofchicago.org>
**Sent:** Thursday, August 18, 2022 6:05 PM
**To:** Evan Andersen <evan.andersen@sriplaw.com>
**Subject:** Re: Gwinn Copyright Infringement Claim

Hi Evan,

Thank you for your patience. I am working on this and hope to get you an answer by next week.

**Christina Chung**
*Assistant Corporation Counsel*
City of Chicago Department of Law
2 N. LaSalle Street, Suite 540
Christina.Chung@cityofchicago.org
(312) 744-5218

---

**From:** Evan Andersen <evan.andersen@sriplaw.com>
**Sent:** Tuesday, August 16, 2022 11:10 AM
**To:** Christina Chung <Christina.Chung@cityofchicago.org>
**Subject:** RE: Gwinn Copyright Infringement Claim

[Warning: External email]

**-Settlement Discussions-**

Christina,

Mr. Gwinn is considering litigation against CPD at this time. As we have discussed, we would like to resolve this matter without needing to involve the courts. Are you able to give me CPD's best offer for Mr. Gwinn to consider prior to litigation?

-Evan



**Evan A. Andersen**
Partner
Direct: 470-598-0800
Direct: 404-496-6606
Main Firm: (561) 404-4350
evan.andersen@sriplaw.com
www.sriplaw.com

# Exhibit

# 6



**Evan A. Andersen**
Partner

Direct: +1 (470) 598-0800
evan.andersen@sriplaw.com

April 2, 2024

**VIA EMAIL (jschmidt@taftlaw.com)**
Joseph F. Schmidt
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601

        Re:     **Gwinn v. City of Chicago, et al.**
               **N.D. Ill., Civ No. 1:23-cv-01823**

Joe,

I provide the following discussion about Plaintiff's understanding of both the innocent infringement standard, as well as a fair use analysis. It is Plaintiff's hope that this discussion can promote additional efforts to reach a resolution prior to drafting of dispositive motions, as the Court requested in its January 23, 2024 Minute Order [DE 26]. You stated to me that the issue of innocent infringement has precluded the City of Chicago's willingness to further discuss early resolution of this matter. I further understand that you plan to file a motion for summary judgment on the issue of fair use. In the attached memo, both innocent infringement and fair use will be addressed in turn, in hopes that the roadblocks to additional discussions may be removed, and efforts for you to file a motion for summary judgment may be avoided.

**I.    Defendants will not be able to meet the high burden of establishing innocent infringement.**

To prove "innocent" infringement, the defendant has the burden of showing that he or she had a good faith belief that his or her infringing conduct did not amount to infringement, and that the good faith belief was reasonable. *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 853 (M.D. Tenn. 2006), citing 4 Nimmer on Copyright, § 14.04[B][2][a], at 14-74.

In other words, "innocent" intent is more than just the absence of willfulness. Courts have clarified that the defendant has a burden to establish facts which support a finding of innocence, rather than merely showing that the infringement was not intentional. *See, e.g., Eastern American Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 419 (S.D.N.Y. 2000) (an innocent infringer must "prove that it was not aware and had no reason to believe that his or her acts constituted

April 2, 2024
Page 2

infringement"); *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, 1998 U.S. Dist. LEXIS 14360, 48 U.S.P.Q.2D (BNA) 1315, 1318, 96 Civ. 7973, 1998 WL 603225 at *4 (S.D.N.Y. Sept. 11, 1998); *JBJ Fabrics Inc. v. India Garments, Inc.*, 1994 U.S. Dist. LEXIS 17, *2, 92 Civ. 8324, 1994 WL 4443 at *1 (S.D.N.Y. Jan. 4, 1994) ("A failure of a plaintiff in a copyright infringement action to prove willful infringement does not mean that the defendant has sustained the burden imposed by 17 U.S.C. § 504(c)(2) (second sentence): 17 U.S.C. § 504(c) rather plainly contemplates a middle ground in the statutory damage scheme when neither plaintiff nor defendant has sustained the burden of showing, respectively, willful or innocent infringement."); 4 Melville D. Nimmer & David Nimmer, Nimmer on Copyright §§ 13.08, 14.04[B][2]-[3] ("'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement because any infringement that was non willful would necessarily be innocent").

This also holds true in the Seventh Circuit. In *Boehm v. Svehla*, No. 15-cv-379-jdp, 2017 U.S. Dist. LEXIS 158530, at *49-50 (W.D. Wis. Sep. 27, 2017), the defendants claimed that the infringement asserted by the plaintiff was innocent because they had no reason to believe that the use of the images at issue was infringing as they obtained them from sources where they could assume the source was legitimate:

> Wredberg and AW contend that they had no reason to believe that the photos they copied, printed, and sold were infringing because they acquired the photos from the Zimpriches, Legends, Waukesha Sportscards, and Scooter G Sports, who Wredberg assumed would not have asked AW to print these photos without having the rights to reproduce them. Wredberg argues that he also **relied on these entities' affirmative statements implying that they had the right to reproduce plaintiffs' photos**: the Zimpriches told Wredberg that the photos they sent him were their own; Legends told Wredberg that it owned the images it sent him and asked him to sign a "Printer Agreement" requiring that he obtain approval for use of any of the images they sent him; Waukesha Sportscards and Scooter G Sports both represented to Wredberg that the images they sent him were their property. Finally, Wredberg and AW argue that **the fact that they immediately stopped** producing sports-related products upon receiving plaintiffs' cease-and-desist notice proves their innocent infringement.

April 2, 2024
Page 3

(emphasis added).  The defendants in *Boehm*, in other words, relied on direct assurances from third parties that they had the right to use the works, and immediately stopped using the works when they were told about the infringement.  The district court did not agree that this sufficed for innocent infringement, explaining that they "should have done more than rely on their assumptions and the implications of others," especially when their business involved the handling of copyrighted materials.  *Id*. at 50.  It wasn't enough for the defendants to assert that they did not infringe intentionally.  The court explained that the defendants failed to produce evidence that they had *no reason to believe* that the works were infringing, and granted the plaintiff's summary judgment against the defendants' assertion of innocent infringement.

Arguably the defendants did more to establish authority to use the works in *Boehm* than the Defendants in the present matter, who simply assumed that because the video had been re-tweeted by a large number of people on Twitter, it was free to use.  The Defendants here, in the news reporting business and despite knowing the identity of the author of the Work, made no effort to communicate with Mr. Gwinn, made no effort to determine whether they had authority to display or distribute the Work in any manner, and made no effort to later attribute the Video to the copyright owner when they widely distributed it to the public.

A defendant's burden of proving innocent infringement has been described by one commentator as "a heavy one." 2 William F. Patry, Copyright Law & Practice at 1175 (1994*); see also, e.g., D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) ("The burden is on the defendants to establish that any infringement was innocent. . . . It is not sufficient for a defendant merely to claim such innocence . . . ").  Nothing in the factual record or testimony provided in the depositions taken supports a claim by Defendants that either they had a good faith belief that the use of the Work was non-infringing, or that any such belief was reasonable.  Defendants have not met their heavy burden to establish innocent infringement.

## II.    Defendants' reproduction, display, and distribution of the Work will not constitute fair use.

You further assert that City of Chicago's reproduction, display, and distribution of the Video was a legitimate fair use as it was done for the sake of news reporting, pursuant to 17 U.S.C. § 107.  This argument will fail as well, as can be seen through even a cursory review of the four fair use factors.

April 2, 2024
Page 4

First and foremost, the fact that City of Chicago used the Video as news reporting is not enough alone to qualify for fair use protection under section 107. If that was the case, anybody reporting the news would have free range to use any copyrighted materials they wanted simply because it was considered "news." The Supreme Court has expressly rejected that line of thinking. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561, 105 S. Ct. 2218 (1985) (holding that "the fact that an article arguably is 'news' and therefore a productive use is simply one factor in a fair use analysis"); and *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994) (explaining that "[t]he task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis"). *See also Fitzgerald v. CBS Broadcasting, Inc.*, 491 F.Supp.2d 177, 184 (D.Mass. 2007) (holding that the fact that news reporting is listed in the preamble "does not by itself create a presumption of fair use. Rather, it is only one of the considerations that go into determining the first factor") (citations omitted).

Instead, the first factor considers how the defendant used the work. Here, the City's use of the Video was not transformative and did not add any new expression, meaning, or message to the Video. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citations omitted); *see also Ty, Inc. v. Publications Int'l*, 292 F.3d 512, 517 (7th Cir. 2002) (explaining that "copying that is complementary to the copyrighted work (in the sense that nails are complements of hammers) is fair use, but copying that is a substitute for the copyrighted work (in the sense that nails are substitutes for pegs or screws) ... is not fair use"). Here Mr. Gwinn created the Video to report on the protests that occurred in Chicago, and the City used the Video to report on the protests that occurred in Chicago, then distributed the Video to news organizations so that they could report on the protests that occurred in Chicago. The City didn't do anything complimentary with the Video and used it as free content in lieu of paying a license for its use or paying its own employees to create the same footage. The news story was not about the Video itself, but instead used the Video as an illustration of the topic it was reporting to the public. This is the same use for which Mr. Gwinn worked to charge a license fee.

The non-transformative nature of the City's use increases the importance of the non-commercial use of the work for a finding of fair use. But here, the use was commercial as courts have examined the term under the fair use factors. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562, 105 S. Ct. 2218 (1985) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material *without paying the customary price*") (emphasis added). In other words, as the City chose to display the Video rather than licensing other footage or spending resources to create its own video, it made a decision that saved it the

ATLANTA ● INDIANAPOLIS ● LOS ANGELES ● MEDELLIN ● NASHVILLE ● NEW YORK ● SOUTH FLORIDA

Main Phone: (561) 404-4350 ● info@sriplaw.com ● Main Office: 21301 Powerline Road Suite 100, Boca Raton, FL 33433

April 2, 2024
Page 5

customary price of obtaining another's work or exploiting its own content. The City profited unfairly by making that choice, and not paying any fees. Such use strikes at the heart of the commercial use analysis as described by the Supreme Court.

In *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997), the Ninth Circuit dealt with the unauthorized use of video tapes of the riots that occurred after the Rodney King verdict in 1992. KCAL asked for a license to use the footage, which was refused, but then used the footage anyways and claimed that it was a fair use because it was a "unique and newsworthy videotape of significant public interest and concern," which was enough to get the District Court to grant summary judgment based on the fair use defense. The Ninth Circuit reversed, however, explaining that KCAL's use of the footage without paying a licensing fee, or by using their own resources to also capture footage of the same event, was not fair as other alternatives were available and that the inherent newsworthiness of the footage was not alone sufficient to overcome the other four factors of the fair use analysis. "Although KCAL apparently ran its own voice-over, it does not appear to have added anything new or transformative to what made the LANS work valuable—a clear, visual recording of the beating itself." *Id.* at 1122.

In fact, the Northern District of Illinois has cited to *KCAL* as an example of when news footage is taken from one source and used as news footage in another source – explaining that this kind of re-use is not transformative. *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 WL 3368893, at *11 (N.D. Ill. July 8, 2014) ("the defendants in the cases Leveyfilm relies upon used the video and photo to report the news the plaintiffs had recorded, and by so doing, impermissibly usurped the plaintiffs' original intended uses"). The use in *Levyfilm* was found to be fair only because it was transformed from an art display into a news story. *Id.* Such is not the case here. The City's use was not transformative, added no creativity or commentary to the Video, and was commercial. The City had its own employees that could have been used to capture footage about the protests if needed. The City's display and distribution of the Video merely superseded Gwinn's object of the original creation. bAccordingly, the first element of the fair use analysis weighs heavily against fair use. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 143 S. Ct. 1258, 1277 (2023).

The second fair use factor examines "the nature of the copyrighted work." 17 U.S.C. § 107(2). As the footage was largely factual, as it shows an event that occurred, this factor likely weighs toward a finding of fair use. However, "the second factor typically has not been terribly

April 2, 2024
Page 6

significant in the overall fair use balancing," and so is certainly not dispositive. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 455–56 (9th Cir. 2020).

The third fair use factor weighs against fair use, as the City reproduced, displayed, and distributed the entire Video, in high quality. While it was possible for the City to use only a portion of the Video to make its point, the City decided to use the entire work to illustrate the violence that occurred during the protests in Chicago. Accordingly this factor weighs against fair use.

The fourth fair use factor requires courts to investigate whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the copyrighted work. *Maui Jim v. Smartbuy Guru Enters.*, 459 F. Supp. 3d 1058, 1103 (N.D. Ill. 2020). "The 'market' in fair use cases means the potential market for not only the original work, but also derivative uses and licensing rights." *Id.* For example, the *KCAL-TV* court held that "[w]ere this to happen more broadly, it no doubt would adversely affect [the plaintiff's] creative incentives" KCAL-TV, 108 F.3d at 1123. *See also L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir.1998) (holding that fourth factor weighed against fair use because "although LANS could not prove loss of subsequent sales of the works, and hence actual adverse effect on the market for videotape footage, defendants' actions should not go unpunished. Such actions if permitted would result in a substantially adverse impact on the potential market for the original works").

Here, the City's unauthorized display, reproduction, and distribution of the Video destroyed any opportunity for Mr. Gwinn to license the Video. Regardless of whether Mr. Gwinn had agreed to licensing terms with news companies prior to the infringement, those opportunities completely disappeared as soon as the City displayed and widely distributed the Video to Mr. Gwinn's potential customer base for free. The wide public distribution of the Video, in particular, resulted in a substantially adverse impact on Mr. Gwinn's potential market for the Video. This kind of behavior cannot and will not be condoned by any court of law. The fourth factor weighs heavily against fair use.

As three of the four factors weigh heavily against fair use, and the remaining factor is generally not as significant as the other three, the City's unauthorized reproduction, display, and distribution of the Video will not be considered fair use by this or any court.

April 2, 2024
Page 7


Sincerely,
SRIPLAW

Evan A. Andersen

# Exhibit

# 7

# SRIPLAW, P.A.

21301 Powerline Road, Suite 100, Boca Raton, Florida 33433 Sales tax #:

## Sales Invoice

Dominic Gwinn

**RE:** Gwinn v. City of Chicago (1936)

| | |
|---|---|
| **Date:** | 10/08/2025 |
| **Matter number:** | 1936 |
| **Invoice number:** | 40517 |

## Fees

| Date | Lwyr. | Services | Duration | Amount |
|------|-------|----------|----------|--------|
| 07/22/2020 | EAA | Review email, docs, t/c with client re: claims | 2.30 | $920.00 |
| 07/23/2020 | EAA | Email to, discussion with client re: claims, intake | 0.40 | $160.00 |
| 07/24/2020 | EAA | Reviewed finalized intake agreement, reviewed emails with client | 0.20 | $80.00 |
| 07/27/2020 | EAA | T/c and emails with client re: matter | 0.50 | $200.00 |
| 07/28/2020 | EAA | Emails with client re: claims | 0.90 | $360.00 |
| 08/12/2020 | EAA | Emails sent/reviewed with client | 0.20 | $80.00 |
| 08/14/2020 | EAA | Emails reviewed/sent with client | 0.20 | $80.00 |
| 08/16/2020 | EAA | Email reviewed from client | 0.10 | $40.00 |
| 09/08/2020 | EAA | Reviewed/sent emails with client. | 0.30 | $120.00 |
| 09/11/2020 | EAA | Reviewed/sent emails with client. | 0.20 | $80.00 |
| 09/15/2020 | EAA | Reviewed/sent emails with client, drafted initial letter to City of Chicago | 1.40 | $560.00 |
| 09/21/2020 | EAA | Reviewed/sent emails with client. | 0.20 | $80.00 |
| 09/22/2020 | EAA | Finalized/mailed/emailed initial letter to City, emails sent/reviewed with Client. | 2.50 | $1,000.00 |
| 10/01/2020 | EAA | Emails sent/reviewed with client | 0.20 | $80.00 |
| 10/02/2020 | EAA | Emails sent/reviewed with client. | 0.40 | $160.00 |
| 10/07/2020 | EAA | Emails sent/reviewed with client. | 0.10 | $40.00 |
| 10/15/2020 | EAA | Emails sent/reviewed with client | 0.30 | $120.00 |
| 10/27/2020 | EAA | Emails sent/reviewed with client. | 0.20 | $80.00 |
| 10/27/2020 | EAA | Received/reviewed email from Christina Chung (CC) of City of Chicago, emails sent/reviewed. | 0.20 | $80.00 |
| 10/28/2020 | EAA | Emails sent/reviewed, t/c with Client | 0.40 | $160.00 |
| 11/11/2020 | EAA | Follow up email to CC of City, emails sent/reviewed | 0.20 | $80.00 |
| 11/16/2020 | EAA | Reviewed email from CC of City, sent/reviewed emails | 0.20 | $80.00 |
| 11/24/2020 | EAA | Follow up email to CC of City regarding case | 0.10 | $40.00 |
| 11/30/2020 | EAA | Review email from CC of City, emails with client sent/reviewed | 0.20 | $80.00 |
| 12/11/2020 | EAA | Follow up email to CC, emails with client sent/reviewed | 0.20 | $80.00 |
| 12/16/2020 | EAA | Receipt of letter from CC, review content and law | 1.10 | $440.00 |
| 12/17/2020 | EAA | Sent/Reviewed emails with client and City | 0.60 | $240.00 |
| 12/18/2020 | EAA | Review of law for response | 0.60 | $240.00 |
| 01/06/2021 | EAA | Review of law, drafting of response to CC incl. fair | 2.80 | $1,120.00 |

| | | use, CMI, damages, emails to client sent/reviewed | | |
|---|---|---|---|---|
| 01/07/2021 | EAA | review of email from CC | 0.10 | $40.00 |
| 01/14/2021 | EAA | Follow up to CC, emails with client sent/reviewed | 0.20 | $80.00 |
| 01/20/2021 | EAA | Review email from CC of City, sent/reviewed emails to client | 0.20 | $80.00 |
| 02/16/2021 | EAA | Sent/reviewed emails with City and Client | 0.20 | $80.00 |
| 03/02/2021 | EAA | Follow up email to CC, review of files | 0.50 | $200.00 |
| 03/05/2021 | EAA | Review email from CC re: license rates | 0.10 | $40.00 |
| 03/09/2021 | EAA | Email to CC re license fees, sent/reviewed emails with client | 0.30 | $120.00 |
| 03/10/2021 | EAA | Review email from CC re: license fees, sent/reviewed emails with client, reviewed files | 0.40 | $160.00 |
| 03/12/2021 | EAA | Review emails and draft email to City | 0.40 | $160.00 |
| 03/18/2021 | EAA | Response email to CC re: license fees | 0.20 | $80.00 |
| 03/29/2021 | EAA | Follow up email to CC, review of response.  Review of file. | 0.50 | $200.00 |
| 04/16/2021 | EAA | Sent/reviewed emails with client, reviewed file and claims | 0.60 | $240.00 |
| 05/10/2021 | EAA | Rent/reviewed emails with City | 0.20 | $80.00 |
| 05/27/2021 | EAA | Email to CC from City re: license rates | 0.90 | $360.00 |
| 06/04/2021 | EAA | Follow up to CC of City | 0.10 | $40.00 |
| 06/07/2021 | EAA | Review of CC email, review file | 0.20 | $80.00 |
| 06/11/2021 | EAA | Follow up email to CC | 0.10 | $40.00 |
| 06/16/2021 | EAA | Follow up email to CC, review of CC response | 0.20 | $80.00 |
| 06/18/2021 | EAA | Emails sent/reviewed with Client, review file | 0.40 | $160.00 |
| 06/30/2021 | EAA | Review file, follow up email to CC | 0.30 | $120.00 |
| 07/02/2021 | EAA | Review email from CC | 0.10 | $40.00 |
| 07/27/2021 | EAA | Review email from CC, send/review emails | 0.20 | $80.00 |
| 07/29/2021 | EAA | Preparation for and t/c with CC of City re: settlement discussions, issues between parties | 1.00 | $400.00 |
| 09/20/2021 | EAA | Follow up t/c with CC of City and review of email | 0.20 | $80.00 |
| 10/15/2021 | EAA | Research of law and review file, response email to CC of City | 1.20 | $480.00 |
| 11/15/2021 | EAA | Follow up email to CC | 0.10 | $40.00 |
| 11/17/2021 | EAA | Review CC response email | 0.10 | $40.00 |
| 12/04/2021 | EAA | Sent/reviewed emails with City | 0.20 | $80.00 |
| 01/04/2022 | EAA | Emails reviewed, email to CC with settlement offer | 0.20 | $80.00 |
| 01/05/2022 | EAA | Emails sent/reviewed with City | 0.20 | $80.00 |
| 01/19/2022 | EAA | Follow up to CC of City by email | 0.10 | $40.00 |
| 01/27/2022 | EAA | Sent/reviewed emails with OC re: scheduling call with CC of City | 0.30 | $120.00 |
| 01/28/2022 | EAA | Prep for and call with CC of City, related emails sent/reviewed | 0.60 | $240.00 |
| 03/03/2022 | EAA | Sent/reviewed emails with Client | 0.10 | $45.00 |
| 03/16/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 03/22/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 03/29/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 03/31/2022 | EAA | sent/reviewed emails with client | 0.20 | $90.00 |
| 04/01/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 04/07/2022 | EAA | sent/reviewed emails with client | 0.20 | $90.00 |
| 04/11/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 04/21/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 05/06/2022 | EAA | sent/reviewed emails with client | 0.20 | $90.00 |
| 05/23/2022 | EAA | sent/reviewed emails with client | 0.30 | $135.00 |

| Date | Init | Description | Hrs | Amount |
|---|---|---|---|---|
| 06/28/2022 | EAA | sent/reviewed emails with client | 0.10 | $45.00 |
| 12/12/2022 | CT | Ruptly for Footage 07-17-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | AJ Plus Request For Footage 07-20-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | Video Leak Police Youtube 07-27-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | Ruptly for Footage 07-17-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | Presuit Legal Services Agreement-Contingency-Gwinn-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | US Copyright Office Acknowledgement of Upload Deposit created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | Daily Wire Request for Footage 07-17-2020 created and saved to file | 0.10 | $20.00 |
| 12/12/2022 | CT | 2 emails sent/reviewed | 0.30 | $60.00 |
| 12/13/2022 | CT | Gwinn v. Chicago Police Dept material reviewed and saved to file | 0.20 | $40.00 |
| 12/13/2022 | CT | Copyright Complaint - 2021 Version (Updated 8-22) created | 0.80 | $160.00 |
| 12/13/2022 | CT | Video Leak Police Youtube 07-27-2020 created and saved to file | 0.10 | $20.00 |
| 12/20/2022 | CT | 1 email sent/reviewed with client | 0.10 | $20.00 |
| 01/13/2023 | EAA | Copyright Complaint - 2021 Version (Updated 8-22) edited | 0.80 | $360.00 |
| 01/22/2023 | EAA | Copyright Complaint - 2021 Version (Updated 8-22) edited and reviewed | 3.10 | $1,395.00 |
| 01/22/2023 | EAA | 1 email sent/reviewed with client | 0.10 | $45.00 |
| 01/23/2023 | EAA | 3 emails sent/reviewed with client | 0.10 | $45.00 |
| 01/25/2023 | EAA | Summons - City of Chicago edited | 0.10 | $45.00 |
| 01/25/2023 | EAA | ILND Civil Cover Sheet edited and reviewed | 0.10 | $45.00 |
| 01/25/2023 | EAA | 3 client and local counsel emails sent/reviewed | 1.00 | $450.00 |
| 01/25/2023 | EAA | DRAFT Complaint -- Gwinn v. City of Chicago and Brown edited | 0.30 | $135.00 |
| 01/25/2023 | CT | AO 121 - Report on Filing of Copyright created, then edited and reviewed | 0.10 | $20.00 |
| 01/25/2023 | CT | File reviewed | 0.10 | $20.00 |
| 01/25/2023 | CT | Summons - David O'Neal Brown edited and reviewed | 0.10 | $20.00 |
| 01/25/2023 | CT | Summons - City of Chicago created, then edited and reviewed | 0.10 | $20.00 |
| 01/25/2023 | CT | ILND Civil Cover Sheet created, then edited and reviewed | 0.10 | $20.00 |
| 01/25/2023 | CT | DRAFT Complaint -- Gwinn v. City of Chicago and Brown reviewed | 0.80 | $160.00 |
| 01/25/2023 | CT | Exhibit 2 - Infringement created | 0.10 | $20.00 |
| 01/25/2023 | CT | Exhibit 1 - Certificate created | 0.10 | $20.00 |
| 01/25/2023 | EAA | Reviewed Complaint and initial filing docs | 0.70 | $315.00 |
| 01/25/2023 | JBR | Reviewing, revising and approving complaint | 1.00 | $595.00 |
| 01/25/2023 | JBR | Review File in preparation for revising complaint | 1.00 | $595.00 |
| 01/30/2023 | EAA | 2 emails sent/reviewed with local counsel regarding sovereign immunity | 0.50 | $225.00 |
| 01/31/2023 | EAA | 3 emails sent/reviewed with local counsel regarding sovereign immunity | 0.30 | $135.00 |

| 02/01/2023 | EAA | 2 emails sent/reviewed with local counsel and client | 0.10 | $45.00 |
|---|---|---|---|---|
| 02/01/2023 | CT | 2 emails sent/reviewed with EAA | 0.10 | $20.00 |
| 03/01/2023 | EAA | 4 emails sent/reviewed with local counsel and client | 0.50 | $225.00 |
| 03/02/2023 | EAA | 1 email sent/reviewed with client | 0.30 | $135.00 |
| 03/07/2023 | EAA | 3 emails sent/reviewed with local counsel and client | 0.20 | $90.00 |
| 03/08/2023 | EAA | 7 emails sent/reviewed with local counsel and client | 0.10 | $45.00 |
| 03/16/2023 | EAA | 3 emails sent/reviewed with local counsel and client | 0.10 | $45.00 |
| 03/17/2023 | EAA | 4 emails sent/reviewed with local counsel and client | 0.30 | $135.00 |
| 03/17/2023 | CT | DRAFT Complaint -- Gwinn v. City of Chicago and Brown  edited | 0.10 | $20.00 |
| 03/17/2023 | CT | 3 emails sent/reviewed with EAA and client | 0.20 | $40.00 |
| 03/20/2023 | EAA | 1 email sent/reviewed with client | 0.10 | $45.00 |
| 03/20/2023 | CT | 2 emails sent/reviewed with local counsel and client | 0.10 | $20.00 |
| 03/21/2023 | CT | DRAFT Complaint -- Gwinn v. City of Chicago and Brown  edited | 0.10 | $20.00 |
| 03/21/2023 | CT | 2 emails sent/reviewed with EAA | 0.10 | $20.00 |
| 03/22/2023 | CT | 1 email sent/reviewed with EAA | 0.10 | $20.00 |
| 03/23/2023 | EAA | DRAFT Complaint -- Gwinn v. City of Chicago and Brown  edited | 0.40 | $180.00 |
| 03/23/2023 | EAA | 2 emails with client sent/reviewed | 0.10 | $45.00 |
| 03/23/2023 | CT | ATTORNEY Appearance for Plaintiff Dominic Gwinn by Joel B. Rothman reviewed | 0.10 | $20.00 |
| 03/23/2023 | CT | Summons - City of Chicago edited and reviewed | 0.10 | $20.00 |
| 03/23/2023 | CT | AO 121 - Report on Filing of Copyright edited and reviewed | 0.10 | $20.00 |
| 03/23/2023 | CT | Summons - David O'Neal Brown edited and reviewed | 0.10 | $20.00 |
| 03/23/2023 | CT | ILND Civil Cover Sheet edited and reviewed | 0.10 | $20.00 |
| 03/23/2023 | CT | DRAFT Complaint -- Gwinn v. City of Chicago and Brown  edited and reviewed | 0.40 | $80.00 |
| 03/23/2023 | CT | 10 emails with EAA and Client sent/reviewed | 0.30 | $60.00 |
| 03/23/2023 | EAA | Review initial filings for confirmation and accuracy. | 0.20 | $90.00 |
| 03/24/2023 | EAA | 7 emails sent/reviewed from Court | 0.30 | $135.00 |
| 03/24/2023 | CT | Attorney Appearance Form for Plaintiff Dominic Gwinn by Joel B. Rothman edited | 0.20 | $40.00 |
| 03/24/2023 | CT | 6 emails with EAA and JBR sent/reviewed | 0.20 | $40.00 |
| 03/24/2023 | EAA | Reviewed DE 2-4. | 0.20 | $90.00 |
| 03/24/2023 | JBR | Approve filing of NOA for me | 0.10 | $59.50 |
| 03/27/2023 | CT | 2 emails sent/reviewed | 0.30 | $60.00 |
| 03/27/2023 | EAA | Review DE 5 -- Minute Entry. | 0.20 | $90.00 |
| 03/28/2023 | EAA | 1 email with client sent/reviewed | 0.20 | $90.00 |
| 03/28/2023 | CT | 4 emails with EAA sent/reviewed | 0.30 | $60.00 |
| 03/31/2023 | CT | 1 email with EAA sent/reviewed | 0.10 | $20.00 |
| 03/31/2023 | CT | Waiver of Service of Summons - City of Chicago created, then reviewed | 0.10 | $20.00 |
| 03/31/2023 | CT | Waiver of Service of Summons - David O'Neal Brown created | 0.10 | $20.00 |
| 03/31/2023 | CT | Waiver of Service of Summons - David O'Neal Brown created | 0.10 | $20.00 |
| 04/03/2023 | CT | 1 email sent/reviewed with EAA | 0.10 | $20.00 |
| 04/03/2023 | EAA | Reviewed email from Joseph Schmidt (JS) | 0.10 | $45.00 |
| 04/04/2023 | CT | Waiver of Service of Summons - David O'Neal Brown edited and reviewed | 0.20 | $40.00 |
| 04/04/2023 | CT | Waiver of Service of Summons - City of Chicago | 0.10 | $20.00 |

| | | | | |
|---|---|---|---|---|
| | | edited and reviewed | | |
| 04/04/2023 | CT | 3 emails sent/reviewed | 0.30 | $60.00 |
| 04/06/2023 | EAA | Waiver of Service of Summons - City of Chicago edited | 0.10 | $45.00 |
| 04/06/2023 | EAA | Waiver of Service of Summons - David O'Neal Brown edited and reviewed | 0.10 | $45.00 |
| 04/06/2023 | CT | Waiver of Service of Summons - City of Chicago edited and reviewed | 0.10 | $20.00 |
| 04/06/2023 | CT | Waiver of Service of Summons - David O'Neal Brown edited and reviewed | 0.10 | $20.00 |
| 04/06/2023 | CT | 3 emails sent/reviewed from Court | 0.10 | $20.00 |
| 04/10/2023 | CT | 7 emails sent/reviewed from Court | 0.40 | $80.00 |
| 04/10/2023 | CT | Waiver of the Service of Summons - Gwinn v City of Chicago - ONeal 23-cv-01823 - signed created | 0.10 | $20.00 |
| 04/10/2023 | CT | Waiver of Service of Summons - City of Chicago reviewed | 0.10 | $20.00 |
| 04/10/2023 | EAA | Reviewed DE 6-8. | 0.30 | $135.00 |
| 04/20/2023 | EAA | 2 emails sent/reviewed with client. | 0.10 | $45.00 |
| 04/20/2023 | CT | 1 email sent/reviewed with EAA | 0.20 | $40.00 |
| 04/24/2023 | EAA | 2 emails sent/reviewed with OC and Local Counsel | 0.30 | $135.00 |
| 05/23/2023 | EAA | Send/Review emails with JS re: initial conference | 0.30 | $135.00 |
| 05/25/2023 | EAA | Reviewed DE 9 | 0.10 | $45.00 |
| 05/25/2023 | EAA | Drafted/sent draft Initial Status Report, reviewed file, held t/c conference with JS.  Emails sent to OC. | 1.60 | $720.00 |
| 05/26/2023 | EAA | Prepared and filed Motion for Pro Hac Vice, reviewed DE 10 | 1.30 | $585.00 |
| 05/30/2023 | EAA | Reviewed DE 11-12 | 0.10 | $45.00 |
| 05/30/2023 | EAA | Revisions/review of Initial Status Report, filing. | 0.60 | $270.00 |
| 05/30/2023 | EAA | Reviewed revisions to Initial Status Report.  Filed. | 0.30 | $135.00 |
| 06/05/2023 | EAA | Reviewed DE 13 -- Answer, including review of claims and defenses, file, and law.  Internal discussions. | 1.40 | $630.00 |
| 06/06/2023 | JBR | File Review - review answer and affirmative defenses filed by CPD | 0.50 | $297.50 |
| 06/06/2023 | JBR | File Review - review docket entry with minute entry for status hearing | 0.30 | $178.50 |
| 06/06/2023 | EAA | Preparation for and attendance at status hearing. Internal discussions and calendaring. | 1.70 | $765.00 |
| 06/07/2023 | EAA | emails sent/received with OC | 0.30 | $135.00 |
| 06/27/2023 | EAA | Drafting/review of Initial Disclosures | 1.10 | $495.00 |
| 06/27/2023 | EAA | Receipt and review of Def's Initial Disclosures | 0.60 | $270.00 |
| 08/07/2023 | EAA | Emails sent/received with OC | 0.40 | $180.00 |
| 08/16/2023 | EAA | Receipt and review of Defs' First discovery requests.  Analysis of requests and preparation for review with DG. | 0.90 | $405.00 |
| 08/22/2023 | EAA | emails sent/reviewed with client and OC | 0.20 | $90.00 |
| 08/23/2023 | EAA | emails with client sent/reviewed.  Review DG responses to discovery requests, begin preparation for responses. | 2.10 | $945.00 |
| 08/29/2023 | EAA | Drafting of initial discovery requests. | 3.30 | $1,485.00 |
| 08/31/2023 | JBR | File Review and review of Joint Status Report ECF 20 and minute entry ECF 21; conf with E. Andersen on status | 0.50 | $297.50 |
| 08/31/2023 | EAA | Review of DE 15 | 0.10 | $45.00 |

| | | | | |
|---|---|---|---|---|
| 08/31/2023 | EAA | Finalization and service of initial discovery requests. Internal discussions re: discovery. | 2.60 | $1,170.00 |
| 09/01/2023 | EAA | Review of DE 16 | 0.20 | $90.00 |
| 09/08/2023 | EAA | Preparation and filing of Notice of Change of Address, Review of DE 17 | 0.80 | $360.00 |
| 09/25/2023 | EAA | emails with JS sent/received, extension of time for Def to respond to discovery | 0.30 | $135.00 |
| 10/07/2023 | EAA | emails with JS sent/reviewed, preparation of Joint Status Report, t/c with JS, finalizing and filing of joint status report. | 2.30 | $1,035.00 |
| 10/16/2023 | EAA | Receipt of Responses to first discovery requests. Review of responses, internal discussions re: discovery. | 3.50 | $1,575.00 |
| 10/19/2023 | EAA | Receipt and review of Defs' second discovery requests.  Preparation for responses. | 1.80 | $810.00 |
| 10/30/2023 | EAA | Review of DE 20 | 0.10 | $45.00 |
| 10/30/2023 | EAA | Preparation, circulation, and filing of Status report. | 1.40 | $630.00 |
| 10/31/2023 | EAA | Review of DE 21, calendaring dates, internal discussion | 0.60 | $270.00 |
| 10/31/2023 | JBR | File Review - review status report ECF 22, minute entry ECF 23, and conf with E. Andersen re: status | 0.30 | $178.50 |
| 11/15/2023 | EAA | emails with client sent and received, preparation of responses to discovery requests. | 2.10 | $945.00 |
| 11/17/2023 | EAA | Preparation, finalization, and service of P's responses to Defs' second discovery requests. | 4.10 | $1,845.00 |
| 12/20/2023 | EAA | Review of DE 22 | 0.10 | $45.00 |
| 12/20/2023 | EAA | Preparation of Joint Status Report.  Review of proposed changes, finalization and filing.  Incl. t/c with JS re: matter. | 3.00 | $1,350.00 |
| 12/21/2023 | JBR | File Review - review status report ECF 22, minute entry ECF 23, and conf with E. Andersen re: status | 0.50 | $297.50 |
| 12/21/2023 | EAA | Review of DE 23, calendaring of dates.  Internal discussions. | 0.70 | $315.00 |
| 12/28/2023 | EAA | Review of DE 24 | 0.10 | $45.00 |
| 01/07/2024 | EAA | Drafting/preparation of second discovery requests | 2.60 | $1,170.00 |
| 01/08/2024 | EAA | Preparation, finalizing, and service of Second discovery requests, incl. notices of depositions. Incl. review of files. | 4.10 | $1,845.00 |
| 01/17/2024 | EAA | receipt and review of email from JS.  Review of file | 0.20 | $90.00 |
| 01/18/2024 | EAA | Send/review emails with JS | 0.30 | $135.00 |
| 01/22/2024 | EAA | Review of DE 25 | 0.10 | $45.00 |
| 01/22/2024 | EAA | Preparation of Joint Status Report, review of proposed revisions, finalization and filing. | 2.70 | $1,215.00 |
| 01/23/2024 | JBR | File Review - review status report ECF 25, minute entry ECF 26, and conf with E. Andersen re: status | 0.50 | $297.50 |
| 01/23/2024 | EAA | Review of DE 26, calendaring of dates.  Internal Discussions | 0.60 | $270.00 |
| 01/30/2024 | EAA | Review of email from JS re: deposition scheduling. | 0.20 | $90.00 |
| 02/01/2024 | EAA | send/ review emails with JS | 0.50 | $225.00 |
| 02/02/2024 | EAA | t/c with JS, receive/sent emails and reviewed documents. | 1.30 | $585.00 |
| 02/05/2024 | JBR | Conference with EAA re: deposition of defendant's witness by 30b6 | 0.50 | $297.50 |
| 02/05/2024 | EAA | Scheduled court reporter for three depositions, | 1.20 | $540.00 |

| | | | | |
|---|---|---|---|---|
| | | emails sent/reviewed. | | |
| 02/05/2024 | EAA | Preparation for 30(b)(6) deposition of K. Bruno. Virtual Deposition, including review of notes and recap afterwards. Review of file. Emails sent/reviewed. Internal discussions. | 7.10 | $3,195.00 |
| 02/06/2024 | JBR | Conference with EAA about deposition of defendant Brown | 0.50 | $297.50 |
| 02/06/2024 | EAA | Preparation for deposition of Brown. Virtual Deposition, including review of notes and recap afterwards. Review of file. Emails sent/reviewed. Internal discussions. | 4.70 | $2,115.00 |
| 02/07/2024 | JBR | Conference with EAA re: deposition of CPD by Det. Terry | 0.50 | $297.50 |
| 02/07/2024 | EAA | Preparation for 30(b)(6) deposition of Terry. Virtual Deposition, including review of notes and recap afterwards. Review of file. Emails sent/reviewed. Internal discussions. | 5.80 | $2,610.00 |
| 02/07/2024 | EAA | Receipt and review of Defs' responses to second discovery requests and supplemental initial disclosures. | 1.80 | $810.00 |
| 02/12/2024 | EAA | emails sent/reviewed with JS, t/c with JS to discuss matter. Review of file and internal discussions. | 1.60 | $720.00 |
| 02/20/2024 | JBR | File Review - deposition transcript of Det. Terry | 3.00 | $1,785.00 |
| 02/20/2024 | JBR | File Review - deposition transcript of Brown | 1.00 | $595.00 |
| 02/20/2024 | JBR | File Review - Deposition transcript of Det. Bruno 30b6 | 2.00 | $1,190.00 |
| 04/01/2024 | EAA | Receipt and review of JS statement re: MSJ position. Review of law, internal discussions re OC's positions. | 1.50 | $675.00 |
| 04/02/2024 | EAA | Preparation and service of ltr to JS re: Plaintiff's position re: Fair use and innocent infringement. Review of law, internal discussions. | 6.30 | $2,835.00 |
| 04/03/2024 | EAA | Review of DE 27 | 0.10 | $45.00 |
| 04/05/2024 | EAA | Review of file, t/c with JS | 0.30 | $135.00 |
| 04/08/2024 | JBR | File Review to prepare to assist EAA with MSJ against CPD and Brown | 3.00 | $1,785.00 |
| 04/10/2024 | JBR | File Review | 3.50 | $2,082.50 |
| 04/11/2024 | EAA | Review of DE 28 | 0.10 | $45.00 |
| 04/11/2024 | EAA | Drafting Plaintiff position re: MSJ, emails sent/reviewed. Internal discussions re: matter | 2.70 | $1,215.00 |
| 04/12/2024 | EAA | Review of DE 29 | 0.10 | $45.00 |
| 04/15/2024 | EAA | Draft memo in support of MSJ, review file, internal discussions re: memo. | 3.00 | $1,350.00 |
| 04/16/2024 | EAA | Review of DE 30 | 0.10 | $45.00 |
| 04/16/2024 | EAA | Draft memo in support of MSJ, review file, internal discussions re: MSJ. | 2.10 | $945.00 |
| 04/17/2024 | EAA | Draft memo in support of MSJ, review file, internal discussions re MSJ filings. Initial draft Rule 56 statement | 4.00 | $1,800.00 |
| 04/17/2024 | JBR | File Review | 2.50 | $1,487.50 |
| 04/18/2024 | EAA | Draft memo in support of MSJ, review file, internal discussions re: MSJ memo. | 1.10 | $495.00 |
| 04/19/2024 | EAA | Draft memo in support of MSJ, review file, internal discussions re: MSJ. | 3.30 | $1,485.00 |

| 04/22/2024 | JBR | Review final draft of MSJ and approve filing | 2.00 | $1,190.00 |
| 04/24/2024 | EAA | Final drafting, preparation, and filing of Motion for Summary Judgment, Memo, and Rule 56.1 Statement and evidence. Review of local and court rules, internal discussions. | 10.80 | $4,860.00 |
| 04/25/2024 | EAA | Review of DE 31 through 35, including review of law and files. Emails sent and reviewed. Internal discussions re: MSJ. | 3.70 | $1,665.00 |
| 04/25/2024 | JBR | File Review - Review Defendants' MSJ, Memo of Law, Rule 56 statement and 18 exhibits | 3.00 | $1,785.00 |
| 04/26/2024 | EAA | Review of DE 37, calendaring of dates. FIling of Digital Exhibit and Review of DE 38. | 0.50 | $225.00 |
| 05/20/2024 | JBR | Legal Research on 1202 issues to assist with opposition to SJ | 2.00 | $1,190.00 |
| 05/20/2024 | EAA | Draft Response memo in Opp to Defs' MSJ, review file, internal discussions re: response. | 1.70 | $765.00 |
| 05/21/2024 | EAA | Draft Response memo in Opp to Defs' MSJ, review file, internal discussions re: response memo. | 4.40 | $1,980.00 |
| 05/22/2024 | EAA | Review and approve proposed extension of time to brief MSJs. Emails with OC sent/reviewed. | 0.60 | $270.00 |
| 05/22/2024 | EAA | Review DE 40 | 0.10 | $45.00 |
| 05/23/2024 | EAA | Draft Response memo in Opp to Defs' MSJ, review file, internal discussions re: response memo. | 1.50 | $675.00 |
| 05/23/2024 | EAA | Review DE 41 | 0.10 | $45.00 |
| 05/24/2024 | EAA | Draft Response memo in Opp to Defs' MSJ, review file and law, internal discussions re: response memo. | 4.60 | $2,070.00 |
| 05/27/2024 | JBR | Review and Analyze draft opposition to SJ, Rule 56 statement, and additional facts; suggest revisions to EAA | 3.00 | $1,785.00 |
| 05/27/2024 | EAA | Internal discussions re: response to MSJ. Drafting memo, preparation of additional evidence. | 1.70 | $765.00 |
| 05/30/2024 | JBR | Final review of Opposition to MSJ and supporting documents | 1.50 | $892.50 |
| 05/31/2024 | EAA | Finish drafting, preparing, and filing Response in Opposition to Defs' MSJ, and response to Rule 56.1 Statement. | 10.90 | $4,905.00 |
| 06/03/2024 | JBR | Review and Analyze CPD and Brown Rule 56 Responses, Additional Material Facts, and Opposition to SJ | 3.50 | $2,082.50 |
| 06/03/2024 | EAA | Review DE 42-48, including review of law and files. Internal discussions. | 2.90 | $1,305.00 |
| 06/06/2024 | EAA | Draft Reply memo in support of P's MSJ, review file, internal discussions. | 1.00 | $450.00 |
| 06/07/2024 | EAA | Draft Reply memo in Supp of P's MSJ, review file, review of law, internal discussions re: reply memo. | 2.30 | $1,035.00 |
| 06/12/2024 | EAA | Internal discussions re: reply brief | 1.10 | $495.00 |
| 06/12/2024 | JBR | Analyze draft reply; discuss reply points with EAA | 1.00 | $595.00 |
| 06/13/2024 | EAA | Draft Reply brief to MSJ, review file and law, internal discussions re: MSJ. | 4.10 | $1,845.00 |
| 06/14/2024 | EAA | Finalize drafting, preparation, and filing of Reply in Support of P's MSJ. Internal Discussions re: reply. | 8.00 | $3,600.00 |
| 06/14/2024 | JBR | Final review of draft reply | 0.50 | $297.50 |
| 06/17/2024 | EAA | Review of DE 49-52. Internal Discussions. | 2.80 | $1,260.00 |

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 06/17/2024 | JBR | Review defendants' reply on MSJ | 1.00 | $595.00 |
| 07/10/2024 | EAA | Review of DE 53. Internal discussions and review. | 0.40 | $180.00 |
| 11/13/2024 | JBR | File Review - check file status no decision | 0.10 | $59.50 |
| 12/27/2024 | EAA | Reviewed DE 54 | 0.10 | $45.00 |
| 03/31/2025 | EAA | Reviewed and analyzed DE 55. Internal discussions. | 3.80 | $2,090.00 |
| 03/31/2025 | JBR | Review and Analyze order ECF 55 granting SJ to Gwinn and denying SJ to defendants; discuss with EAA damages | 2.00 | $1,300.00 |
| 04/17/2025 | EAA | Drafting Notice of Damages, internal discussions re: matter and damages. | 3.30 | $1,815.00 |
| 04/17/2025 | JBR | Review and revise notice of election of statutory damages | 1.00 | $650.00 |
| 04/18/2025 | EAA | Reviewed file, finish drafting and filing notice of damages. | 5.60 | $3,080.00 |
| 05/09/2025 | EAA | Review DE 57-58, including review of file and law. Internal discussions. | 2.00 | $1,100.00 |
| 05/12/2025 | EAA | Initial Draft of Reply in support of damages election | 1.90 | $1,045.00 |
| 05/12/2025 | JBR | Review response to damages election filed by CPD | 0.50 | $325.00 |
| 05/16/2025 | EAA | Review file, drafting reply to notice of damages | 3.00 | $1,650.00 |
| 05/16/2025 | JBR | Review proposed reply before filing | 1.00 | $650.00 |
| 07/09/2025 | EAA | Review of DE 61, calendar of dates, internal discussions. | 0.70 | $385.00 |
| 07/09/2025 | JBR | Review minute entry ECF 61 | 0.30 | $195.00 |
| 07/15/2025 | EAA | Review DE 62-64, including research. Internal discussions. | 2.10 | $1,155.00 |
| 07/15/2025 | JBR | Review and Analyze document filed in case Rule 60b2 motion and discuss with EAA | 1.00 | $650.00 |
| 07/16/2025 | EAA | Review DE 65 | 0.10 | $55.00 |
| 07/16/2025 | JBR | Review status report ECF 65 | 0.30 | $195.00 |
| 07/17/2025 | EAA | Review DE 66. Calendaring and internal discussions. | 0.90 | $495.00 |
| 07/23/2025 | EAA | Review DE 67, internal discussions re: trial. Calendar dates. | 0.40 | $220.00 |
| 07/23/2025 | AJU | Research CMI attribution in 7th Circuit and other circuit courts to find case law that supports CMI attribution that is near an image | 0.50 | $187.50 |
| 07/23/2025 | AJU | Research CMI attribution in 7th Circuit and other circuit courts to find case law that supports CMI attribution that is near an image | 1.50 | $562.50 |
| 07/23/2025 | JBR | File Review of minute entry ECF 66 and 67 | 0.30 | $195.00 |
| 07/24/2025 | EAA | Internal discussions re: trial prep | 2.00 | $1,100.00 |
| 07/24/2025 | KED | Research into Local Rules, Judges Rules, and Pretrial Procedure | 1.00 | $250.00 |
| 07/24/2025 | JBR | Conf with EAA to prepare for trial | 2.00 | $1,300.00 |
| 07/29/2025 | KED | Made Local Rules/Judges Rules & Internal Schedule Document | 0.80 | $200.00 |
| 07/30/2025 | EAA | Investigation/discussion re: motions in limine | 0.70 | $385.00 |
| 07/31/2025 | EAA | File review | 0.60 | $330.00 |
| 08/01/2025 | EAA | review/preparation for motions in limine | 1.50 | $825.00 |
| 08/01/2025 | JBR | Prep for and attend M&C with opposing counsel regarding trial and pretrial order compliance | 0.50 | $325.00 |
| 08/04/2025 | JBR | Review and revise motions in limine | 3.00 | $1,950.00 |
| 08/04/2025 | EAA | research drafting and review of motions in limine | 6.80 | $3,740.00 |

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 08/05/2025 | EAA | Review DE 71-72 | 0.10 | $55.00 |
| 08/05/2025 | EAA | research for response in opposition to motion to vacate | 0.60 | $330.00 |
| 08/06/2025 | EAA | review, research, and draft response in opposition to motion to vacate.  Review DE 73 | 7.30 | $4,015.00 |
| 08/07/2025 | KED | File review | 0.60 | $150.00 |
| 08/07/2025 | KED | Research of other IP cases before Judge Daniel | 0.30 | $75.00 |
| 08/07/2025 | KED | Reviewing deposition transcript of Kevin Bruno dated February 5, 2024. | 0.50 | $125.00 |
| 08/08/2025 | KED | Made Witness List Document | 0.50 | $125.00 |
| 08/08/2025 | KED | Made Exhibit List Document | 0.50 | $125.00 |
| 08/10/2025 | EAA | Review of proposed exhibit list | 1.60 | $880.00 |
| 08/11/2025 | KED | Made deposition designations document | 0.50 | $125.00 |
| 08/11/2025 | EAA | Review of pretrial doc templates | 0.50 | $275.00 |
| 08/11/2025 | KED | Research on awards for DMCA Damages | 2.20 | $550.00 |
| 08/12/2025 | KED | Research for trial | 1.50 | $375.00 |
| 08/12/2025 | EAA | drafting of pretrial order documents | 0.90 | $495.00 |
| 08/12/2025 | KED | Drafting AJ's Entry of Appearance | 0.30 | $75.00 |
| 08/13/2025 | EAA | Continued drafting and review of pretrial order docs | 2.70 | $1,485.00 |
| 08/13/2025 | KED | Drafted Notice of Appearance | 0.10 | $25.00 |
| 08/13/2025 | KED | Filed Notice of Appearance | 0.10 | $25.00 |
| 08/13/2025 | KED | Creating Exhibit List Document | 0.40 | $100.00 |
| 08/13/2025 | JBR | Prep for and attend M&C with opposing counsel regarding trial and pretrial order compliance | 0.50 | $325.00 |
| 08/13/2025 | KED | Creating Pattern Jury Instructions from 7th Circuit website | 0.50 | $125.00 |
| 08/14/2025 | EAA | Revisions to documents and preparation of final pretrial order, filing, incl. conference with OC regarding pretrial order. | 5.00 | $2,750.00 |
| 08/14/2025 | AJU | M&C with OC re Pre-trial order | 0.50 | $187.50 |
| 08/14/2025 | AJU | Case review | 0.50 | $187.50 |
| 08/14/2025 | JBR | Prep for and attend M&C with opposing counsel regarding trial and pretrial order compliance | 0.50 | $325.00 |
| 08/14/2025 | AJU | Reviewed discovery docs and research in preparation of Exhibit List | 2.20 | $825.00 |
| 08/15/2025 | EAA | Drafting/revising pretrial order and documents | 2.70 | $1,485.00 |
| 08/17/2025 | JBR | Work on revisions to pre-trial order; discuss pre-trial order with EAA | 3.00 | $1,950.00 |
| 08/17/2025 | AJU | Draft Response to Defendant's Motion in Limine | 4.10 | $1,537.50 |
| 08/17/2025 | EAA | Review of response to D's motions in limine | 1.70 | $935.00 |
| 08/18/2025 | EAA | Revisions to documents and preparation of final pretrial order, filing, incl. discussions with OC regarding joint motion for additional time for certain exhibits. | 6.70 | $3,685.00 |
| 08/18/2025 | JBR | Further review of pre-trial order and revisions to order | 1.00 | $650.00 |
| 08/18/2025 | AJU | Confer with OC re: Pretrial Order, Drafted Motions for extension to file Deposition Designations and Voire Dire Questions, Reviewed and revised Response to D's MIL | 2.00 | $750.00 |
| 08/19/2025 | EAA | marking Plaintiff's depo designations | 1.70 | $935.00 |
| 08/19/2025 | AJU | Reviewing email regarding proposed pretrial order in Gwinn v. City of Chicago et al. | 0.10 | $37.50 |
| 08/19/2025 | KED | Entering Deposition Designations on Document | 1.30 | $325.00 |

| 08/20/2025 | KED | Attention to Deposition Designations | 2.00 | $500.00 |
|---|---|---|---|---|
| 08/20/2025 | EAA | marking Plaintiff's depo designations | 1.80 | $990.00 |
| 08/20/2025 | JBR | Review reply on Rule 60b2 motion | 0.50 | $325.00 |
| 08/20/2025 | AJU | Reviewing email regarding order on motion for extension of time to file in Gwinn v. City of Chicago et al. | 0.30 | $112.50 |
| 08/24/2025 | AJU | Reviewed Ds' response to MIL, researched, and drafted reply to their response | 3.10 | $1,162.50 |
| 08/24/2025 | KED | Drafted motion for AJ to be Excused from Final Pretrial Conference | 1.00 | $250.00 |
| 08/24/2025 | EAA | Reviewing and drafting jury instructions | 2.80 | $1,540.00 |
| 08/25/2025 | KED | Drafted Motion to Excuse Member of Plaintiff's Counsel from Final Pretrial Conference | 0.60 | $150.00 |
| 08/25/2025 | KED | Filed Motion to Excuse Member of Plaintiff's Counsel from Final Pretrial Conference | 0.10 | $25.00 |
| 08/25/2025 | EAA | Worked to finalize and file Supp. Pretrial Order and documents | 5.70 | $3,135.00 |
| 08/25/2025 | JBR | Review minute entry ECF 83 denying Rule 60b2 motion and discuss with EAA | 0.50 | $325.00 |
| 08/25/2025 | JBR | Review supplemental pretrial order and contribute to changes | 1.00 | $650.00 |
| 08/26/2025 | EAA | Preparation for Pretrial conference, including travel time ATL to CHI. | 6.30 | $3,465.00 |
| 08/26/2025 | JBR | Travel time to attend pretrial conference See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995)(travel time and expenses are compensable). | 6.00 | $3,900.00 |
| 08/26/2025 | JBR | Preparation for trial and pretrial conference | 5.00 | $3,250.00 |
| 08/26/2025 | AJU | Discussed pending Pre-trial conference and reviewed necessities in preparation for the Conference with EA | 0.40 | $150.00 |
| 08/27/2025 | EAA | Preparation for pretrial conference, attendance at pretrial conference, internal discussions re: result of pretrial conference and trial preparations. | 7.60 | $4,180.00 |
| 08/27/2025 | EAA | Return Travel from Pretrial Conference CHI to ATL | 4.50 | $2,475.00 |
| 08/27/2025 | JBR | Return travel time See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995) (travel time and expenses are compensable). | 8.00 | $5,200.00 |
| 08/27/2025 | JBR | Attend Pre-Trial Conference | 5.00 | $3,250.00 |
| 08/27/2025 | JBR | Trial preparation and strategy in view of decisions made at pre-trial conference | 3.00 | $1,950.00 |
| 08/28/2025 | AJU | Collaborating with Gwinn trial team, reviewing emails and case documents, researching trial subpoenas and evidence rules, and updating exhibit list. | 3.60 | $1,350.00 |
| 08/28/2025 | EAA | Internal discussions re: pretrial prep and team organization | 2.50 | $1,375.00 |
| 08/29/2025 | EAA | Discussions re: trial documents, review of Depo Designations | 2.30 | $1,265.00 |
| 08/29/2025 | AJU | Participating in chat discussions with the Gwinn Trial Team on Teams. | 0.10 | $37.50 |

| | | | | |
|---|---|---|---|---|
| 09/01/2025 | EAA | Initial drafting of direct examination of Plaintiff in preparation for trial. Review of file and internal discussions. | 4.20 | $2,310.00 |
| 09/01/2025 | KED | Drafting Trial Subpoena | 0.50 | $125.00 |
| 09/02/2025 | EAA | review of trial docs, internal discussions re: trial with team and strategy/preparation of trial documents. | 3.10 | $1,705.00 |
| 09/02/2025 | AJU | Participating in Teams discussions with Evan A. and Kelsey D., reviewing upcoming tasks in Outlook, and researching David Brown. | 0.40 | $150.00 |
| 09/02/2025 | AJU | Reviewing Gwinn v. City of Chicago case, created spreadsheet of videos for discussion of presentation at trial. | 1.90 | $712.50 |
| 09/02/2025 | AJU | Working on spreadsheet analysis in Excel. | 0.10 | $37.50 |
| 09/03/2025 | EAA | Internal discussions re: trial prep | 1.20 | $660.00 |
| 09/03/2025 | AJU | Discussed tasks for trial with EA | 0.50 | $187.50 |
| 09/03/2025 | AJU | Reviewing and editing documents, and reviewing new filing in Gwinn case via Outlook. | 0.40 | $150.00 |
| 09/03/2025 | JBR | Review exhibit list and witness list | 2.00 | $1,300.00 |
| 09/04/2025 | JBR | Trial preparation | 2.00 | $1,300.00 |
| 09/04/2025 | AJU | Participating in Gwinn Trial Team discussions and individual chats with Evan A. and Kelsey D. on Teams. | 0.40 | $150.00 |
| 09/05/2025 | AJU | Reviewing Gwinn v. City of Chicago, reviewed related caselaw, and corresponding via email and Teams. Spoke with Client | 4.60 | $1,725.00 |
| 09/05/2025 | EAA | Reviewing materials for DMCA claims and damages. | 0.70 | $385.00 |
| 09/05/2025 | AJU | Reviewing Stross v. Z Lifestyle LLC, Shepard's report, MDY Indus. case, and engaging in Teams discussions. | 1.00 | $375.00 |
| 09/08/2025 | AJU | Reviewing federal court dockets, conducting legal research, analyzing case law, and discussing matters with colleagues via Teams. | 0.80 | $300.00 |
| 09/08/2025 | EAA | Trial Prep | 5.90 | $3,245.00 |
| 09/08/2025 | KED | Creating Evidence Binder | 3.10 | $775.00 |
| 09/08/2025 | KED | Creating Docket Binder | 2.10 | $525.00 |
| 09/09/2025 | EAA | Trial Prep incl. gathering binder docs | 4.70 | $2,585.00 |
| 09/09/2025 | AJU | Reviewing Gwinn v. City of Chicago case, accessing court records, participating in Webex meeting, and collaborating via Teams chats with trial team. | 1.50 | $562.50 |
| 09/09/2025 | KED | Creating Docket Binder | 0.90 | $225.00 |
| 09/10/2025 | EAA | Trial prep and doc organization for trial | 1.90 | $1,045.00 |
| 09/10/2025 | AJU | Reviewed email regarding new filing and minute entry in Gwinn v. City of Chicago. | 0.10 | $37.50 |
| 09/11/2025 | EAA | Trial Prep | 3.00 | $1,650.00 |
| 09/11/2025 | KED | Evidence Binder | 0.30 | $75.00 |
| 09/11/2025 | KED | Docket Binder | 1.00 | $250.00 |
| 09/12/2025 | EAA | Travel to Trial -- ATL to CHI | 4.50 | $2,475.00 |
| 09/12/2025 | AJU | Travel to trial. See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995) (travel time and expenses are compensable). | 4.50 | $1,687.50 |

| 09/12/2025 | JBR | Travel to Chicago for trial prep. See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995) (travel time and expenses are compensable). | 5.00 | $3,250.00 |
|---|---|---|---|---|
| 09/13/2025 | JBR | Trial preparation | 12.00 | $7,800.00 |
| 09/13/2025 | EAA | Reviewing evidence notes, drafting opening statement, and collaborating on Gwinn v. City of Chicago trial. Preparation for trial. | 10.70 | $5,885.00 |
| 09/13/2025 | AJU | Organized Exhibits, assisted with additional research | 4.60 | $1,725.00 |
| 09/14/2025 | EAA | Drafting direct exam and opening statement for Gwinn trial, legal research, and team collaboration. Preparation for trial. | 13.30 | $7,315.00 |
| 09/14/2025 | AJU | Preparing and reviewing Gwinn v. City of Chicago exhibits, editing hyperlinks, and collaborating via Teams regarding Trial preparation, organization, and strategy | 9.70 | $3,637.50 |
| 09/14/2025 | JBR | Trial preparation | 12.00 | $7,800.00 |
| 09/15/2025 | EAA | Drafting opening statements, preparing direct exam, and reviewing trial materials for Gwinn case. Preparation for trial. | 12.70 | $6,985.00 |
| 09/15/2025 | AJU | Reviewing and editing exhibits, collaborating via Teams, and preparing deposition designations, exhibits for Gwinn v. City of Chicago. | 9.10 | $3,412.50 |
| 09/15/2025 | JBR | Trial preparation | 12.00 | $7,800.00 |
| 09/15/2025 | KD | Prepped for Trial | 3.00 | No charge |
| 09/16/2025 | AJU | Reviewing and preparing exhibits, deposition designations, and demonstrative maps for trial, including review of Plaintiff's exhibits and draft direct examination of Gwinn. | 11.00 | $4,125.00 |
| 09/16/2025 | KD | Attended jury selection and trial | 8.00 | No charge |
| 09/16/2025 | EAA | Preparation for trial, attend trial, internal discussions and preparations for second day of trial, including closing. | 12.00 | $6,600.00 |
| 09/16/2025 | AJU | Discuss voir dire strategy, participated in Voir Dire | 1.10 | $412.50 |
| 09/16/2025 | JBR | Attend trial | 12.00 | $7,800.00 |
| 09/17/2025 | AJU | Participating in trial | 6.00 | $2,250.00 |
| 09/17/2025 | KD | Attended trial | 6.00 | No charge |
| 09/17/2025 | EAA | Preparation for, attendance at second day of trial. Internal discussions after verdict. | 5.80 | $3,190.00 |
| 09/17/2025 | JBR | Attend and conduct trial | 5.00 | $3,250.00 |
| 09/17/2025 | JBR | Travel from trial. See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995) (travel time and expenses are compensable). | 12.00 | $7,800.00 |
| 09/18/2025 | AJU | Travel from trial. See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004); Maurice v. Kozel(In re Maurice, 69 F.3d 830 (7th Cir. 1995) (travel time and expenses are compensable). | 4.50 | $1,687.50 |
| 09/18/2025 | EAA | Travel from Trial -- CHI to ATL | 4.50 | $2,475.00 |
| 09/27/2025 | JBR | Work on motion for attorneys fees and costs; legal | 2.50 | $1,625.00 |

|  |  | research on pre-judgment interests |  |  |
|---|---|---|---|---|
| 09/28/2025 | JBR | Continue working on motion for attorneys fees; compute prejudgment interest | 1.00 | $650.00 |
| 09/29/2025 | JBR | Review time entries for motion for attorneys' fees | 1.50 | $975.00 |
| 09/30/2025 | AJU | Conducting legal research, drafting Gwinn motion for fees and costs | 5.80 | $2,175.00 |
| 10/01/2025 | JBR | Review time entries for motion for attorneys fees | 2.00 | $1,300.00 |
| 10/01/2025 | AJU | Review casefile - worked on draft of Mot. for attn'y fees | 1.20 | $450.00 |
| 10/02/2025 | AJU | Reviewed case docs, Worked on '2025_09_30_ Gwinn Motion for Attorney's Fees_ Costs_ and Prejudgment Interest (1)' | 1.20 | $450.00 |
| 10/03/2025 | AJU | Worked on draft of Motion for Att fees, costs, prejudgment interest, etc. | 1.50 | $562.50 |
| 10/06/2025 | AJU | Drafting Gwinn motion for attorney's fees, researching copyright infringement cases, draft declaration in support of Mot for Attny Fees | 6.30 | $2,362.50 |
| 10/06/2025 | AJU | Drafting Gwinn motion for attorney's fees, and researching related cases | 0.90 | $337.50 |
| 10/06/2025 | AJU | Updated document '2025_10_02_ Gwinn Motion for Attorney's Fees_ Costs_ and Prejudgment Interest (1)' | 0.50 | $187.50 |
| 10/06/2025 | AJU | reviewed and prepared exhibits for motion for attorney fees, organized emails for declaration | 2.90 | $1,087.50 |
| 10/06/2025 | AJU | worked on exhibits for motion for attorney fees | 0.40 | $150.00 |
| 10/06/2025 | JBR | Revise draft motion for attorneys' fees and declaration in support | 3.50 | $2,275.00 |
| 10/06/2025 | EAA | Review of time entry for motion for costs and fees. Discussion with AU re: motion law and strategy. | 3.20 | $1,760.00 |
| 10/07/2025 | EAA | Discussion with AU re: injunctive relief, motion for fees, and bill of costs. Internal discussions. | 1.30 | $715.00 |
| 10/07/2025 | AJU | Drafting memorandum and motion for attorney's fees in Gwinn v. City of Chicago, researching case law, and collaborating via Teams. | 4.60 | $1,725.00 |
| 10/07/2025 | AJU | Drafting motion for injunctive relief with supporting research. | 3.00 | $1,125.00 |
| 10/07/2025 | JBR | Review and revise cost bill issues with AJU and review and revise fees and final bill | 3.50 | $2,275.00 |
| 10/08/2025 | JBR | Revise and finalize motion for fees and related motions including motion for preliminary injunction | 4.00 | $2,600.00 |
|  |  | **Our Fee** | **731.60** | **$357,726.00** |

*Time summary*

| Lwyr. | Name | Rate | Hours | Amount |
|---|---|---|---|---|
| JBR | Joel Benjamin Rothman | $595.00 | 38.80 | $23,086.00 |
| JBR | Joel Benjamin Rothman | $650.00 | 137.90 | $89,635.00 |
| EAA | Evan A Andersen | $400.00 | 27.80 | $11,120.00 |
| EAA | Evan A Andersen | $450.00 | 176.00 | $79,200.00 |
| EAA | Evan A Andersen | $550.00 | 193.10 | $106,205.00 |
| CT | Christina Tcacisina | $200.00 | 8.90 | $1,780.00 |
| KD | Kelsey Dekshenieks | $0.00 | 17.00 | $0.00 |
| AJU | Anthony J. Underwood | $375.00 | 109.40 | $41,025.00 |

| KED | Kelsey Davis | $250.00 | 22.70 | $5,675.00 |

**Expenses**

| Description | Amount |
| --- | --- |
| Disbursement for fee for service of Courtesy Copies. | $214.00 |
| Disbursement for fee for service of Courtesy Copies to Court of MSJ package. | $188.65 |
| Disbursement for Hearing Transcript | $8.70 |
| Disbursement to Court Reporter for REALTIME ROUGH DRAFT heard before Judge Jeremy C. Daniel on Tuesday, 9/16/2025. Trial Day 1. | $777.00 |
| Disbursement to Court Reporter for REALTIME ROUGH DRAFT heard before Judge Jeremy C. Daniel on Tuesday, 9/17/2025. Trial Day 2. | $303.40 |
| Disbursement to Court Reporter for Transcript of Proceedings heard before Judge Jeremy C. Daniel on 8/27/25, 9/9/25 - Pre-Trial Conference I and II. | $116.00 |
| Disbursement to FedEx for printing Docket Binder | $144.75 |
| Disbursement to FedEx for printing for Evidence Binder | $326.37 |
| Disbursement to FedEx for Printing for Trial Binders | $30.05 |
| Disbursement to the United States District Court for the filing fee of new Complaint. | $402.00 |
| | |
| Veritext Invoice #7181548 | $645.75 |
| Veritext Invoice #7182869 | $955.75 |
| Veritext Invoice #7184919 | $1,091.25 |
| **Total expenses** | **$5,203.67** |

| | |
| --- | --- |
| Total fees | $357,726.00 |
| Total expenses | $5,203.67 |
| **Total New Charges** | $362,929.67 |
| **Net amount owing on this bill** | $362,929.67 |

Evan A Andersen

**Statement of account**

| | |
|---|---|
| Current fees | $357.726.00 |
| Current expenses | $5,203.67 |
| **Net amount owing on this bill** | **$362,929.67** |