**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CASE NO.:  1:23-CV-01823-JD**

DOMINIC GWINN,

                    Plaintiff,

v.

CITY OF CHICAGO AND DAVID O'NEAL
BROWN,

                    Defendants.

_____

**<u>PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS POST-TRIAL
MOTION FOR ATTORNEY'S FEES AND COSTS OF LITIGATION PURSUANT TO 17
U.S.C. §§ 505 AND 1203 AND PRE-JUDGMENT INTEREST</u>**

# TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................................... 1

    a.    The *Fogerty* Factors Favor Gwinn not the City. ................................................ 1

        1.    The City's Motivation in Contesting the Action was Unreasonable. ............................ 1

        2.    The City's Positions were Not Reasonable ................................................................... 4

        3.    Fees Should Be Awarded to Satisfy the Goals of Compensation and Deterrence .......... 4

    b.    The Hourly Rates Plaintiff's Counsel Charged are Reasonable and Substantiated. ........... 6

    c.    Disproportionality is not Determinative; Awarding Fees Furthers the Purposes of the Copyright Act. ................................................................................................................ 8

    d.    The Time Entries Objected to by the City are Reasonable, Compensable, and Not Excessive. ...................................................................................................................... 9

        1.    The time billed for preparation of the motion for attorneys' fees was not excessive and justified in view of the defendants' past history of vigorous opposition to plaintiff's motions. ........................................................................................................................ 9

        2.    The paralegal time entries submitted were reasonably expended by paralegals and the work was sufficiently complex to justify the efforts of paralegals. ..................................... 11

    e.    The Court should award the Costs Enumerated in Plaintiff's Bill of Costs ..................... 14

II.    Conclusion ........................................................................................................... 15

# I.     ARGUMENT

### a. The *Fogerty* Factors Favor Gwinn not the City.

In opposition, the City argues that its motivation was "proper and well supported," that its "claims were reasonable," and that the "jury's damages award already accounted for deterrence." (ECF 111 at 2-3). The City's arguments against each point are no more than a paragraph long and offer no evidence in support. Contrast this with the evidence and argument submitted by plaintiff in support of the motion which included over **sixty-five pages of correspondence** between the City and plaintiff's counsel. (ECF 105-1 at 16-88). This correspondence demonstrated that at the earliest stage of this case years before it was filed, and while this case was pending before the Court entered summary judgment against the City, the City was making the same unreasonable arguments they made to this Court, and that those arguments were rebutted and demonstrated to be unreasonable and invalid over and over again, but the City would not listen or reconsider its unreasonable positions.

### 1. The City's Motivation in Contesting the Action was Unreasonable.

The City argues that its motivation was "based in good faith." (ECF 111 at 2). **That is not what the Jury determined.** The Jury found the City to be a willful infringer and willful remover of copyright management information. The Jury rejected the City's innocence defense. The City's arguments are counterfactual. The City argues that its fair use defense was a "legitimate question of law." (ECF 111 at 2). The City argues that the inclusion of Gwinn's name and username next to his display of the Work presented an issue of first impression, thereby supporting its motivation. *Id.* Both arguments ignore context. Both arguments ignore history.

While it is certainly true that on the purpose and character of the use factor, the Court's Opinion and Order characterized the City's use as "non-commercial" and noted "there is no evidence to suggest the defendants were not acting in good faith *at the June 20 press*

*conference.*" (ECF 55 at 8) (emphasis added). However, the Court explained that "these are at best, marginal factors useful in close calls… This factor is not a close call." These are the Court's words: "This factor is not a close call. Gwinn created the Work as news footage, to document the events in Grant Park; the defendants used the Work for precisely the same reason. Marginal factors are not needed here." (ECF 55 at 8-9).

The nature and character of the use factor "dominates the fair use analysis." (ECF 55 at 12). The City failed to come to terms with this dominating factor throughout this dispute as the correspondence attached to the declaration of Evan Andersen shows. (ECF 105-1 at 16-88). The fair use analysis was never a close call. The City's motivation to continue this litigation to obtain vindication based on fair use was improper since its arguments were tenuous. The detailed legal analysis provided by plaintiff's counsel prior to litigation and again before summary judgment demonstrated to the City that it was wrong over and over again.[1]

The same is true for plaintiff's CMI claim. Plaintiff showed the City that Gwinn's name and username constituted copyright management information ("CMI"). Gwinn's counsel provided the City with nationwide authority explaining that a name conveyed near a work, such as a gutter credit, qualifies as CMI even if it did not appear on the work itself. (ECF 105 at 35, 40). Gwinn explained to the City that attributions described in that caselaw are functionally analogous to the facts here, and that any reasonable observer would recognize that the appearance of Gwinn's name and username immediately above the Work identified him as the author, and that his name was conveyed in connection with the Work. *Id*. The City nevertheless refused to acknowledge this well-established analysis and persisted in an unreasonable position,

---

[1] Page and space limits prevent plaintiff from quoting all the relevant correspondence. Plaintiff refers the court to the fair use discussions at ECF 105-1 at 36, 40, 59, 62, and 67-70.

while never providing any legal authority whatsoever stating or suggesting the opposite. Ultimately, the City simply chose not to believe the case law provided to it, leading to the Court's holding along those same logical conclusions that the name and username, conveyed in connection with the Work, was CMI.

Without any law supporting its positions, the City's motivation to litigate this matter prior to summary judgment was suspect. Then, once the Opinion and Order was issued, and liability was firmly established on all claims, any potential reasonable motivation to contest Gwinn's claims disintegrated. The City's subsequent actions only unnecessarily prolonged and expanded the litigation process, including the City's filing of a wasteful Motion to Vacate, its non-existent case to the jury during trial, and its refusal to engage in any reasonable settlement efforts until the eve of trial. *See T-Peg, Inc. v. Vt. Timber Works, Inc.*, 669 F.3d 59, 62 (1st Cir. 2012) ("courts have specifically held that a district court…may fashion a fee award for the purpose of discouraging 'overly aggressive litigation tactics' and encouraging parties 'to litigate in a more responsible, realistic manner'"), citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 (6th Cir. 2008); See 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10[D][3][b] (2011) (noting that "hard-ball litigation tactics . . . merit an award of fees").

A significant amount of Gwinn's fees was incurred after the Court's ruling on the motions for summary judgment. Trial preparation and trial were necessitated by the City's intractable and unreasonable positions including that it was innocent. After losing the motion for summary judgment there was no reasonable motivation to continue contesting the action. *See Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2022 U.S. Dist. LEXIS 79444, at *6–7 (S.D.N.Y. May 2, 2022) ("'[I]mproper motive and bad faith' may be found where the record indicates a lack of… 'efforts' that run counter to a goal of 'efficiently and inexpensively

resolv[ing] a dispute'"), citing *Hughes v. Benjamin,* No. 17-cv-6493 (RJS), 2020 U.S. Dist. LEXIS 139698, at *4 (S.D.N.Y. Aug. 4, 2020). *See also Walsh*, 2022 U.S. Dist. LEXIS 79444, at *6 ("One example of improper motivation is 'gambl[ing] on an unreasonable legal theory in order to achieve a secondary gain,' such as 'the leveraging of a settlement'").

Like the losing party in *Walsh*, the City clung to an untenable legal theory rather than realistically assessing its case in light of the governing authorities and settling. The City refused to engage in any settlement discussions throughout the litigation, convinced that its legal reasoning was sound. Even after the Order and Opinion were issued, the City made no efforts whatsoever to settle. The City's first settlement offer since before the Complaint was filed was sent to Gwinn less than a week before trial was set to begin, after Plaintiff's counsel had already spent a significant amount of time preparing for the upcoming trial.

### 2. The City's Positions were Not Reasonable

Substantial case law contradicted the City's fair use arguments. By contrast, the cases cited by Gwinn's counsel were directly on point, and the Court agreed, finding that the question of fair use was "not a close call." (ECF 55 at 8). Yet the City maintains without support that "Defendants' fair use defense was objectively reasonable and well-argued." (ECF 111 at 3). That is just not true. There is no point repeating here what this Court previously held in its decision and order on summary judgment (ECF 55), what the jury determined after trial, or what plaintiff argued here in his motion. (ECF 105).

### 3. Fees Should Be Awarded to Satisfy the Goals of Compensation and Deterrence

"Compensation and deterrence… exist for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation." *Hughes*, 2020 U.S. Dist. LEXIS 139698, at *4. Here, both goals are served by awarding Gwinn his fees. Gwinn brought a meritorious claim that his counsel repeatedly and

4

consistently substantiated, yet the City continued to advance baseless defenses, forcing Gwinn to incur substantial costs over the course of several years.

The City contends that deterrence was already accounted for in the jury's damages award. (ECF 111 at 3). The record shows otherwise: the jury calculated damages by multiplying Gwinn's reasonable licensing fee ($250 per use) by the number of outlets to which the Work was distributed – an approach aligned with actual damages, not deterrence. A fee award is therefore necessary to fully effectuate the Copyright Act's objectives. *See T-Peg, Inc. v. Vt. Timber Works, Inc.*, Civil No. 03-cv-462-SM, 2010 U.S. Dist. LEXIS 120320, at *12–13 (D.N.H. Sept. 30, 2010) ("provide[s] an incentive to copyright owners to seek protection even when economic realities might otherwise counsel abandonment").

The fact that Gwinn agreed to engage his lawyers on contingency is irrelevant and should not be considered. Gwinn's declaration, submitted contemporaneously, affirms that he could not afford any other arrangement besides contingency and that this fee structure was essential to obtaining qualified representation. (Gwinn Decl. ¶¶ 3–6). As Mr. Gwinn explains, he retained counsel based on their deep knowledge of copyright law and their independence from local pressures, and he understood from the outset that his attorneys would need to recover their fees from the City if he prevailed. *Id.* ¶¶ 3, 6. He further confirms that the contingency agreement does not make his counsel whole, as their time and fees far exceed the contingency portion of the outcome. *Id.* ¶ 5.

The use of a contingency fee agreement is often disregarded and certainly not conclusive as to the amount of attorney's fees that shall be awarded. *City of Burlington v. Dague*, 505 U.S. 557, 562–66 (1992) (disregarding contingency agreement); *Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 (1989) (noting that the existence of a contingency fee agreement is only one factor in

determining reasonableness of an attorney's fee award, and that a reasonable fee "contemplates reasonable compensation . . . for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less").

### b. The Hourly Rates Plaintiff's Counsel Charged are Reasonable and Substantiated.

The City argues that Gwinn failed to provide sufficient evidence that his counsel's hourly rates were reasonable. (ECF 111 at 4). The City cites *Smith v. Rosebud Farm, Inc.*, No. 11-cv-9147, 2018 WL 4030591, at *3, 2018 U.S. Dist. LEXIS 143372 (N.D. Ill. Aug. 23, 2018). But *Smith* is readily distinguishable: there, the attorney's competence had been questioned in prior cases, and the record contained no substantiation for the claimed rates. *Id.* at *9 –12.

Evan Andersen's affidavit more than adequately establishes the reasonableness of Gwinn's counsel's hourly rates, listing each attorney and paralegal involved and supporting those rates with detailed evidence. *See Burberry Ltd. v. Yarbrough*, No. 20-cv-6909, 2021 U.S. Dist. LEXIS 221912, at *6 (N.D. Ill. Nov. 17, 2021). Courts regularly accept such affidavits as competent evidence of prevailing market rates. *See Philips Med. Sys. Cleveland, Inc. v. Buan*, No. 1:19-cv-02648, 2023 U.S. Dist. LEXIS 192022, at *19–21 (N.D. Ill. Oct. 26, 2023); *Perdue v. Kenny A.*, 559 U.S. 542, 551–52 (2010).

The declaration of Joel B. Rothman submitted contemporaneously confirms that the rates charged by plaintiff's attorneys are in line with both the rates for IP lawyers as reported in the American Intellectual Property Law Association ("AIPLA") 2023 survey, and the rates for Chicago attorneys specifically. Mr. Rothman founded SRIPLAW in 2012, a firm that specializes in intellectual property litigation and transactions. He explains that the fees charged by IP lawyers are typically higher than those of general practitioners due to the technical and specialized nature of the field. (Rothman Decl. ¶ 5.) Mr. Rothman has practiced intellectual property law for over twenty-five years and has been Board Certified in Intellectual Property

6

Law by the Florida Bar since 2009 – an advanced credential that requires significant experience, a rigorous written examination, extensive CLE requirements, and peer review to assess competence, professionalism, and ethics. *Id.* at ¶ 6. He has been recertified twice, reflecting his continued substantial involvement in the field. *Id.*

Mr. Rothman's current billable rate is $650 per hour, having increased from $595 per hour prior to 2025. He spent 176.7 hours on this case, as detailed in the billing statements submitted to the Court. *Id.* at ¶ 7. He also confirms familiarity with SRIPLAW's billing practices, noting that the rates charged in this matter are identical to those routinely charged to and paid by other clients for similar IP litigation services. *Id.* at ¶ 8. These rates are not inflated for this case and are regularly accepted by paying clients. *Id.*

Mr. Rothman further attests that the hourly rates charged by Gwinn's counsel are consistent with the prevailing market rates for attorneys and paralegals with similar experience and expertise in intellectual property law, and are either below or at the median average for similarly experienced IP practitioners. *Id.* at ¶ 9. As a member of the AIPLA, he has reviewed its biennial Economic Survey, which compiles data on hourly rates charged by IP attorneys nationwide, including the Chicago metropolitan area. *Id.* at ¶ 10. According to the 2023 AIPLA Survey, the mean rate charged for IP lawyers with 35 years or more experience is $694 per hour, for those with 15–24 years of experience is $545 per hour, and for those with fewer than 5 years of experience is $331 per hour. The mean rate for all IP lawyers in the Chicago area is $630 per hour. *Id.* at ¶ 11.

The rates charged by Gwinn's counsel – $650 per hour for Mr. Rothman, $550 per hour for Mr. Andersen, and $375 per hour for Mr. Underwood – are therefore at or below the mean for attorneys practicing intellectual property law in the Chicago market, as reflected in the

AIPLA data. *Id.* ¶ 12. Based on his extensive experience, knowledge of the IP legal market, and review of the AIPLA Survey, Mr. Rothman affirms that these rates are reasonable, customary, and reflective of the skill, experience, and specialization of the professionals involved. *Id.* at ¶¶ 5–12.

Courts routinely rely on AIPLA data when assessing IP-related fee awards. *Apollo Petro. Sols., LLC v. Nano Gas Techs., Inc.,* Case No. 20 C 2311, 2022 U.S. Dist. LEXIS 151052, at *4–*6 (N.D. Ill. May 3, 2022) (relying upon on the AIPLA Economic Survey to establish reasonable market rates for attorney's fees award); *Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2015 U.S. Dist. LEXIS 2864, at *21 (N.D. Ill. Jan. 8, 2015).

Although Defendant spends much time arguing that paralegal fees should not be more than $100 per hour, courts in this Circuit have upheld rates up to $305 per hour for paralegal work. *See Doxtator v. O'Brien*, Case No. 19-C-137, 2021 U.S. Dist. LEXIS 94898, at *3 (E.D. Wis. May 19, 2021); *Downing v. SMC Corp. of Am.*, No. 1:20-cv-01954-JPH-MKK, 2023 U.S. Dist. LEXIS 43300, at *7 (S.D. Ind. Mar. 14, 2023) (affirming paralegal hourly rate of $240 per hour). Moreover, under *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743–44 (7th Cir. 2003), out-of-town attorneys' higher rates should generally be honored.

### c. Disproportionality is not Determinative; Awarding Fees Furthers the Purposes of the Copyright Act.

Gwinn never demanded more than $150,000 from the City in settlement. Having gambled and lost, the City cannot now evade the consequences of its own decisions. Nor is the amount requested disproportionate. (ECF 111 at 6). "[D]isproportionality is not determinative and [the Seventh Circuit] has approved attorney's fees many times the amount of damages recovered[.]" *Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000).

This principle is especially true in copyright cases involving willful infringement. *See*

*Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 714 (N.D. Ill. 2014); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991); *Little Mole Music v. Bengimina*, 720 F. Supp. 751, 757 (W.D. Mo. 1989); *Emi April Music, Inc. v. Lanes, Inc.*, NO. CV-08-162-EFS, 2009 U.S. Dist. LEXIS 141318, at *14 (E.D. Wash. Mar. 20, 2009). As in *Moriarty*, Gwinn offered a pre-litigation settlement nearly identical to the eventual award. *Moriarty*, 233 F.3d at 967. The City declined, forcing unnecessary litigation and fees.

### d. The Time Entries Objected to by the City are Reasonable, Compensable, and Not Excessive.

The City used most of its opposition to object to plaintiff's billing entries as administrative, duplicative, vague, or excessive. (ECF 111 at 7-14). The City also added a spreadsheet with specific objections to certain time entries. (ECF 111-1).

### 1. The time billed for preparation of the motion for attorneys' fees was not excessive and justified in view of the defendants' past history of vigorous opposition to plaintiff's motions.

The amount of time billed for the instant motion for attorneys' fees was reasonable and compensable. What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise," and courts have "wide latitude" in awarding attorney's fees. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). Courts in this Circuit routinely assess the reasonableness of time entries by considering the specific work performed and the complexity of the case. *Morjal v. City of Chi.*, No. 12 CV 185, 2013 U.S. Dist. LEXIS 75023, at *4 (N.D. Ill. May 29, 2013).

Briefing the four Fogerty factors required time and attention to the legal and factual issues presented. Submitting and explaining the time expended on this case which spans over five years required the time billed. Mr. Andersen needed to review the file from the beginning to find and explain in his declaration the history of this dispute from the beginning. That took time and accounts for a considerable amount of the time expended on the motion for attorneys' fees.

Plaintiff had no way of knowing in advance how hard the defendants would fight the motion when it was prepared by plaintiff's counsel. The Court deserves a full analysis of the Fogerty factors with reference to evidence and case law.

Defendants do not explain the basis for their objection. They simply intone the conclusory term "excessive" without any factual or legal basis. (ECF 111 at 12). The defendants do the same thing in their spreadsheet. (ECF 111-1 at entries 96-114). The defendants cite *Fields v. City of Chi.,* 2018 WL 253716, 2018 U.S. Dist. LEXIS 2 (N.D. Ill. Jan. 1, 2018), but the objection to the fees billed in *Fields* was not to the entirety of the fee motion. Rather, the objection was to the 45 hours spent by one attorney "preparing her affidavit in support of the current fee petition and putting together her time records." *Fields*, 2018 U.S. Dist. LEXIS 2, at *18-19. The court reduced the amount of time billed by this one lawyer for preparing her affidavit and putting together her records by half, not the amount billed for the entire motion. *Id.*

While courts scrutinize time spent on fee petitions to ensure reasonableness, this Court has "wide latitude" in awarding attorney's fees and should consider the context and complexity of the work performed. *Sottoriva*, 617 F.3d at 975; *Morjal*, 2013 U.S. Dist. LEXIS 75023, at *4. In *Spegon v. Catholic Bishop*, the Seventh Circuit reviewed a challenge to hours spent preparing a fee petition and emphasized that reasonableness is assessed in relation to the total work on the merits. *Spegon*, 175 F.3d 544, 554 (7th Cir. 1999). In *Ustrak v. Fairman*, the court disallowed two-thirds of the hours devoted to a fee petition where the plaintiff spent fifteen minutes preparing the petition for every hour spent litigating the merits – a ratio deemed excessive. *Ustrak,* 851 F.2d 983, 987-88 (7th Cir. 1988).

By contrast, the fee motion here accounts for only approximately 6% of the total billable hours for this case, a fraction far below the disproportional time at issue in *Ustrak*.

**2. The paralegal time entries submitted were reasonably expended by paralegals and the work was sufficiently complex to justify the efforts of paralegals.**

The relevant inquiry for requested paralegal fees is "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the payscale ladder." *Spegon*, 175 F.3d at 553, quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996).

Plaintiff's attorneys work at a small law firm with a limited number of support staff who are specially trained in the complex work of litigating in the federal courts. Plaintiff's counsel do not employ secretaries. Rothman Decl. ¶ 15. Paralegals at plaintiff's attorneys' firm typically prepare and edit civil cover sheets, summonses, waivers of service, and attorney appearances because these documents are filed with the Court and the Court requires accurate and complete filings submitted in compliance with the Federal and Local Rules. *Id.* Complying with the Federal and Local Rules requires the exercise of discretion and judgment. *Id.* While not all tasks requiring the exercise of discretion and judgment require lawyers, the tasks that paralegals can perform are delegated to them so that the tasks are done correctly, efficiently and in compliance with the rules. *Id.*

Preparing, revising, and editing civil cover sheets, summonses, waivers of service, and attorney notices of appearance, and docketing critical dates, are such tasks. *Id.* at ¶ 16. Preparing a civil cover sheet accurately requires judgment concerning the type of case, the statutes sued upon, and other details necessary for accurate submission to the Court so the document is not rejected. *Id.* Summonses, notices of appearance, waivers of service, and other documents paralegals prepare require care and attention to details of the case, caption, and Court. *Id.*

The relevant inquiry for determining "the number of hours 'reasonably expended' by a paralegal . . . is 'whether the work was sufficiently complex to justify the efforts of a paralegal,

as opposed to an employee at the next rung lower on the pay-scale ladder.'" *Burberry Ltd. v. Yarbrough*, No. 20-cv-6909, 2021 U.S. Dist. LEXIS 221912, at *14 (N.D. Ill. Nov. 17, 2021). Plaintiff contends that review of the time entries demonstrates that they are not administrative and compensable for paralegals.

Exhibit 2 to the Declaration of Joel Rothman provides itemized responses to each of the City's objections and demonstrates that the challenged entries were necessary, properly delegated, or appropriately categorized, reasonable and therefore compensable.

Defendant's reliance on *Burberry* and *Brzowski* is misplaced, as those cases merely stand for the uncontroversial principle that purely clerical tasks – such as photocopying, mailing, or docketing – are noncompensable. See *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 U.S. Dist. LEXIS 80284, at *5–6 (N.D. Ill. Oct. 31, 2006). While the court in *Burberry* may have disallowed fees for certain administrative documents, other courts in this Circuit have clarified that drafting and preparing court documents are typically tasks delegated to paralegals and are therefore properly recoverable at paralegal rates. See *Spegon*, 175 F.3d at 553; *Williams v. Z.D. Masonry Corp.*, Case No. 07 C 6207, 2009 U.S. Dist. LEXIS 11554, at *15 (N.D. Ill. Feb. 17, 2009).

Specifically, courts have recognized that "time spent preparing service documents or ensuring compliance with local rules" is compensable because such tasks require legal knowledge and judgment. *Morjal*, 2013 U.S. Dist. LEXIS 75023, at *4–5; see also *People Who Care*, 90 F.3d at 1315 (factual investigation, preparing court documents, and serving process are compensable). Moreover, to the extent any time was devoted to filing or other less strenuous legal work, Gwinn's counel has already exercised "billing judgment" by applying paralegal rates consistent with the above authorities.

The City's reliance on *Nichols* is also misplaced; the court there did not find paralegal work to be noncompensable, but merely reclassified certain filing-related tasks from attorney time to paralegal time. *Nichols v. Ill. DOT*, No. 12-cv-1789, 2019 U.S. Dist. LEXIS 4633, at *24 (N.D. Ill. Jan. 10, 2019). Gwinn's counsel has done precisely that here.

The City also challenges fees for time spent saving, serving, and filing documents (ECF 111-1 at Nos. 1–9, 34–36, 38–41, 43–44, 46–47, 50, 53–56, 58, 75, 78, 80, 84–85) and for scheduling a court reporter (ECF 111-1 at No. 49), contending these tasks are purely clerical. These entries are properly included or billed at paralegal rates. Courts routinely allow recovery for work that, while delegable, requires supervision or involves legal judgment. See *Spegon*, 175 F.3d at 552–53; *Williams*, 2009 U.S. Dist. LEXIS 11554, at *15; *Nichols*, 2019 U.S. Dist. LEXIS 4633, at *24.

Courts distinguish purely clerical work, like copying, mailing, or simple docketing, from tasks that involve legal judgment, such as assembling filings, ensuring compliance with local rules, or coordinating service. *Morjal*, 2013 U.S. Dist. LEXIS 75023, at *4–5; *Delgado*, 2006 U.S. Dist. LEXIS 80284, at *5–6; *People Who Care*, 90 F.3d at 1315. Scheduling a court reporter similarly involves understanding deposition timing, case strategy, and coordination with counsel and opposing parties, and is therefore not purely clerical.

The City also challenges fees for time spent preparing and reviewing exhibits and trial binders (ECF 111-1 at Nos. 1–4, 7–9, 16–17, 69–71, 76, 81, 89–93, 107–108), contending that these tasks were neither complex nor numerous and therefore noncompensable. This argument mischaracterizes the work performed. Preparing exhibits and trial binders required reviewing documents for accuracy, relevance, and organization, tasks that involve legal judgment and understanding of case facts. See *Spegon*, 175 F.3d at 553 (hours that require understanding of

13

legal issues are compensable even if delegated to paralegals); *Morjal*, 2013 U.S. Dist. LEXIS 75023, at *4–5; *People Who Care*, 90 F.3d at 1315.

Moreover, courts have recognized that work involving assembling, labeling, and reviewing exhibits can be delegated to paralegals and billed at paralegal rates without being excluded as clerical. See *Williams*, 2009 U.S. Dist. LEXIS 11554, at *15; *Nichols*, 2019 U.S. Dist. LEXIS 4633, at *24. Even seemingly routine tasks – like organizing binders or reviewing documents – require contextual knowledge of the case and trial strategy, and are therefore distinguishable from purely clerical work. See *Delgado*, 2006 U.S. Dist. LEXIS 80284, at *7–8; *Bamber v. Elkhart Cmty. Sch.*, CAUSE NO. 3:01-CV-10 RM, 2005 U.S. Dist. LEXIS 5883, at *17–18 (N.D. Ind. Mar. 28, 2005).

Plaintiff has exercised appropriate billing judgment by assigning such tasks to paralegals or attorneys at rates consistent with prevailing practice. See *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Spegon*, 175 F.3d at 552–53. These entries are therefore reasonable, necessary, and fully compensable.

### e. The Court should award the Costs Enumerated in Plaintiff's Bill of Costs

Plaintiff's bill of costs filed at ECF 106 attaches a detailed breakdown of the costs incurred at page 3 of ECF 106. The "fees and disbursements for printing" in the amount of $501.17 all pertain either to the Court's requirement that "[f]or trials and evidentiary hearings, the parties shall provide the Court Reporter with one hard copy set of exhibits," or prior requirements of Judge Nancy L. Maldonado who was assigned to this case before Judge Daniel. The dates for the disbursement for courtesy copies are all before reassignment to Judge Daniel on July 10, 2024. (ECF 53). The dates for printing the evidence binders and other trial binders were all in September of 2025. These costs should be allowed.

## II.       CONCLUSION

The City's arguments in opposition are not based on facts or the history of this case. The

City's arguments are conclusory. The City's motivation to contest this suit was unreasonable.

The City's fair use arguments were unreasonable. The Jury's award of damages was insufficient

to compensate the plaintiff for his attorneys' fees caused by the City's unreasonable defense of

this case. This Court should grant Plaintiff's Post-Trial Motions for Attorney's Fees and Costs,

and Prejudgment Interest (ECF 105).

DATED: November 12, 2025          Respectfully submitted,


*/s/  Evan A. Andersen*
EVAN A. ANDERSEN
Bar Number: GA 377422
evan.andersen@sriplaw.com
ANTHONY J. UNDERWOOD
Bar Number: 1056640 (FL) 041350 (TN)
anthony.underwood@sriplaw.com

**SRIPLAW, P. A.**
3355 Lenox Road NE, Suite 750
Atlanta, GA 30326
470.598.0800 – Telephone
561.404.4353 – Facsimile

and
JOEL B. ROTHMAN
Bar Number: FL 98220
joel@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road, Suite 100
Boca Raton, GA 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile


*Counsel for Plaintiff Dominic Gwinn*